FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/10/2024 2:26 PM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN; SCOTTIE SPILLMAN**

**Plaintiffs,**

**v.**                                              **No.** __D-101-CV-2024-02973__

Case assigned to Sanchez-Gagne, Maria

**CHILDREN, YOUTH, AND FAMILES DEPARTMENT**
**OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.**

**Defendants.**

## COMPLAINT

COME NOW Plaintiffs Valerie Dentman and Scottie Spillman Sr., by and through their attorneys of record, Bridget Hazen and Sarah K. Jaeger, Weems Hazen Law, and for their Complaint against Defendant states:

## PARTIES, JURISDICTION, AND VENUE

1. At all material times, Plaintiffs Valerie Dentman and Scottie Spillman Sr., married, are residents of Curry County in the state of New Mexico.

2. Defendant Children, Youth, and Families Department of the State of Mexico —hereinafter "CYFD"— is a public body with multiple branches throughout the state.

3. Defendant Children, Youth, and Families Department of the State of Mexico ("CYFD") is a New Mexico agency that administers the foster placement program in New Mexico and has exclusive authority under New Mexico law to determine proper placements of foster children in the legal and physical custody of the state and to operate, monitor, supervise, regulate, and otherwise manage the locations where foster children in state custody are placed.

4. Because CYFD is a state agency, jurisdiction and venue are proper under NMSA 1978, § 38-3-1(G) (1988).

1

5.  At all material times, Defendant Employee Does were acting within the course and scope of their employment with CYFD, and their actions and omissions were performed under the authority and direction of the agency. As such, CYFD is vicariously liable for the acts and omissions of its employees.

6.  At all material times, upon information and belief, Defendant Employees Does were residents of Curry and or Lea County, New Mexico.

7.  Plaintiff will move to amend her complaint to include the identities of Defendants Does once they are ascertained.

8.  Notice of tort and civil rights claims was provided pursuant to NMSA 1978, § 41-4-16 on January 5, 2022.

9.  Defendant CYFD was initially notified of potential claims against it via letter to the Cabinet Secretary alleging discriminatory practices in December 2021.

**FACTUAL ALLEGATIONS**

10. Plaintiffs incorporate all paragraphs herein.

11. Plaintiff Valerie Dentman is the first cousin of Daniel Lamont Harrison Sr.

12. Plaintiff Valerie Dentman and her husband, Scottie Spillman Sr., took Daniel Harrison Sr. into their care and custody after his mother passed away when he was approximately sixteen years old.

13. Daniel Harrison Sr. has five children, including Daniel Lamont Harrison III, herein "D.H.," a minor child.

14. Plaintiffs and D.H. are black.

15. In 2018, D.H. was removed from the custody of his parents and placed in the custody of Defendant CYFD.

2

16. At the time of removal, D.H. was only a couple of months old, having been born in April 2018.

17. Upon information and belief, in June 2018, Defendant CYFD placed D.H. with a non-black foster family without first attempting to place D.H with blood relatives.

18. Upon information and belief, all of D.H.'s minor siblings were placed with blood relatives.

19. Upon information and belief, Plaintiffs' daughter attempted to become D.H.'s foster parent in October of 2018 but was denied.

20. Upon information and belief, this denial was made without reason.

21. In January 2019, Plaintiffs began attempting to adopt D.H.

22. In or around March 2019, a Curry County CYFD employee inspected Plaintiffs' home, and commented that a pile of clothing on the floor of the master bedroom might delay Plaintiffs' foster parent application.

23. In November 2019, Plaintiffs were informed by Curry County CYFD employees that they would not be able to complete the Relative, Adoptive, Foster Parent Training ("RAFT") in 2019 and would have to reapply as foster parents in 2020.

24. Shortly thereafter, Plaintiff Dentman contacted a Lea County CYFD employee to inquire about enrolling for RAFT classes in Lea County, and was told that CYFD should allow individuals the accommodation of enrolling in RAFT classes in other counties when the courses in their own county are full.

25. Upon information and belief, Defendant CYFD allowed Plaintiffs this accommodation after the Lea County CYFD employee contacted the Curry County CYFD office.

26. Plaintiffs' attempts to foster and adopt D.H. were denied by Defendant CYFD's Curry County office in 2020.

3

27. In January 2021, Defendant CYFD allowed Plaintiffs to reapply to become foster parents in Lea County.

28. Upon information and belief, Plaintiffs were approved to be foster parents by Defendant CYFD's Lea County office in or around October 2021.

29. In or around October 2021, Plaintiffs were notified by the Clovis Children's Court that D.H.'s adoption was close to being finalized.

30. Upon information and belief, an employee of Defendant CYFD attempted to communicate with Curry County employees regarding D.H.'s adoption case and Plaintiffs' desire to foster D.H.

31. Moreover, multiple CYFD caseworkers informed Plaintiffs about the racial discrimination within the department, further indicating that such practices were known or should have been known.

32. In December 2021, Defendant CYFD notified Plaintiffs that it consented to D.H.'s foster parents' petition to adopt D.H.

33. D.H. was adopted in 2022 by Robert and Jessie Stockwell, a non-black family.

34. Throughout the process of Plaintiffs attempting to become D.H.'s foster parents, CYFD limited Dentman and Spillman's access to D.H., granting them only minimal visitation rights, limited to Halloween 2021 and one Thanksgiving dinner through Zoom, during which they experienced significant delays in accessing a private virtual room with their family member.

35. Throughout the process of Plaintiffs attempting to become D.H.'s foster parents, Plaintiff Dentman contacted at least four Defendant CYFD Lea and Curry County employees and put them on notice of allegations of discriminatory conduct.

4

36. In December 2021, Plaintiff Dentman notified Defendant CYFD through Cabinet Secretary, Barbara Vigil, of its discriminatory practices.

37. Defendant CYFD's Office of Inspector General launched an investigation in response to Plaintiffs' letter in 2022. In a letter response from Ms. Vigil dated January 25, 2023, Defendant CYFD stated that due to the investigation raised by Plaintiffs' letter, the Department was implementing a series of improvements, such as training programs on "racial inequity and bias", identification of "ways to attract more racial and ethnic minority adults to become foster and adoptive parents", reexamination of "data of overall placements and relative placements both statewide and by county, as well was by racial and ethnic groups", and the creation of a new position within the Department for "Director of Diversity, Equity, and Inclusion".

38. On February 3, 2023, Defendant CYFD sent a letter to Plaintiffs notifying them of a substantiated finding of discrimination. The letter explicitly acknowledged that Defendant's actions were discriminatory in nature and adversely impacted Plaintiffs.

39. By issuing the letter on February 3, 2023, acknowledging a substantiated finding of discrimination against Plaintiffs, Defendant CYFD was aware of the facts and circumstances underlying Plaintiffs' tort claim. The letter demonstrates Defendant's awareness of its own conduct and the resulting harm to Plaintiffs.

40. Defendant CYFD fostered an environment conducive to racial discrimination by systematically favoring non-black foster families over black families in the foster and adoption process and failing to keep D.H. in placements with family members.

41. Through policies and practices that lacked equality, transparency and accountability, CYFD effectively marginalized black families, such as the Plaintiffs, by denying them opportunities to foster and adopt children, despite their qualifications and familial connections.

42. Defendant CYFD created a scenario where racial discrimination was not only allowed but institutionalized, causing significant harm to black families seeking to adopt and failing to uphold the best interests of the children involved.

**COUNT I: DUE PROCESS VIOLATION UNDER THE NEW MEXICO CIVIL RIGHTS ACT**

43. Plaintiffs incorporate all preceding paragraphs herein.

44. NMSA 1978 § 41-4A-3 (2021) prescribes the prohibition of the violation of rights established by the bill of rights of the constitution of New Mexico:

A. A public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall not subject or cause to be subjected any resident of New Mexico or person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico.

B. A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

C. Claims brought pursuant to the New Mexico Civil Rights Act shall be brought exclusively against a public body. Any public body named in an action filed pursuant to the New Mexico Civil Rights Act shall be held liable for conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body.

D. Individuals employed by a public body shall be prohibited from using the New Mexico Civil Rights Act to pursue a claim arising from the individual's employment by the public body.

E. The remedies provided for in the New Mexico Civil Rights Act are not exclusive and shall be in addition to any other remedies prescribed by law or available pursuant to common law.

45. N.M. Const. art. II §18 grants and ensures the right of equality, including but not limited to racial equality, to the citizenry of the state of New Mexico:

No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws. Equality of rights under law shall not be denied on account of the sex of any person. The effective date of this amendment shall be July 1, 1973. (As amended November 7, 1972, effective July 1, 1973).

46. Defendant CYFD violated NMSA 1978 § 41-4A-3 (2021) by engaging in racially discriminatory practices that deprived Plaintiffs of their rights to racial equality and fairness as guaranteed by Article II, Section 18 of the New Mexico Constitution. Specifically, Defendant CYFD fostered and perpetuated a policy and practice of systematically favoring non-Black foster families over Black families, including Plaintiffs, in the adoption process, even when Plaintiffs, as blood relatives, were available and qualified to provide care and a stable home.

47. In doing so, Defendant CYFD, as a public body acting within the course and scope of its authority, violated its legal duty of impartiality and subjected Plaintiffs to a deprivation of their constitutional rights to equal protection and racial equality under New Mexico law. This conduct represents a direct violation of NMSA 1978 § 41-4A-3(A), which prohibits any public body from subjecting a resident of New Mexico to the deprivation of any rights, privileges, or immunities secured under the Bill of Rights of the New Mexico Constitution.

48. Defendant CYFD's conduct breached its legal duty under NMSA 1978 § 41-4A-3 to uphold the constitutional rights of all residents, including Plaintiffs, without discrimination based on race. By engaging in practices that excluded and marginalized Plaintiffs on the basis of their race, Defendant CYFD caused significant harm, including emotional distress, familial exclusion, and deprivation of equal treatment in the adoption process. These harms undermined Plaintiffs' rights to equality and due process as guaranteed by Article II, Section 18 of the New Mexico Constitution.

49. Under NMSA 1978 § 41-4A-3(B) and (C), Plaintiffs are entitled to maintain an action against Defendant CYFD as the responsible public body for the discriminatory acts and omissions of its employees acting within the course and scope of their authority. Plaintiffs seek to establish liability and recover damages for the harm they suffered as a result of racial discrimination.

7

50. Defendant CYFD's actions were not only contrary to its obligations under NMSA 1978 § 41-4A-3, but also reflective of a willful disregard for the rights, privileges, and immunities guaranteed by the New Mexico Constitution. As such, Plaintiffs request the Court to hold Defendant CYFD accountable for its unlawful practices and to ensure the enforcement of racial equality and fairness within the adoption process.

51. Plaintiffs are of the class of persons that the legislature sought to protect in enacting the statute.

52. The injuries and harm to Plaintiffs as described in the statement of facts is the harm that the legislature specifically sought to prevent.

53. Defendant CYFD's violation of N.M. Const. art. II §18 and of NMSA 1978 § 41-4A-3 (2021) was the direct and proximate cause of the harms to Plaintiffs as set forth herein, and Plaintiffs are entitled to damages as a matter of law.

## COUNT II: VIOLATION OF NEW MEXICO HUMAN RIGHTS ACT

54. Plaintiffs incorporate all preceding paragraphs herein.

55. NMSA 1978 § 28-1-7 (2006) prescribes of prohibition of racial discrimination:

It is an unlawful discriminatory practice for:

F. any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any person because of race, religion, color, national origin, ancestry, sex, sexual orientation, gender identity, spousal affiliation or physical or mental handicap, provided that the physical or mental handicap is unrelated to a person's ability to acquire or rent and maintain particular real property or housing accommodation;

56. Defendant CYFD violated NMSA 1978 § 28-1-7 (2006) by engaging in unlawful discriminatory practices during the adoption process, wherein it made distinctions, directly or indirectly, in offering its services and accommodations based on race. Specifically, Defendant CYFD systematically favored non-Black foster families over Black families, including

8

Plaintiffs, in the adoption process, even when Plaintiffs, as blood relatives, were fully qualified to adopt and provide a stable and loving home.

57. In favoring non-Black foster families over Black families, Defendant CYFD unlawfully excluded Plaintiffs from full and fair access to its services and accommodations, including the opportunity to maintain and grow their familial relationships with the child. Such conduct constitutes a direct violation of NMSA 1978 § 28-1-7(F), which prohibits public accommodations from making distinctions in the provision of services or facilities based on race.

58. As a public agency offering services related to foster care and adoption, Defendant CYFD is bound by its legal duty to provide those services in a fair and impartial manner, without racial discrimination. By violating this duty, Defendant CYFD caused significant harm to Plaintiffs, including emotional distress, familial alienation, and exclusion from opportunities to serve as adoptive parents due to racial bias in the adoption process. Defendant CYFD's conduct deprived Plaintiffs of the equality and fairness guaranteed by NMSA 1978 § 28-1-7.

59. By favoring non-Black foster families over Black families in the foster and adoption process, Defendant CYFD demonstrated a pattern of discriminatory practices that contravenes the intent and purpose of NMSA 1978 § 28-1-7 to promote equality and prohibit racial bias in public accommodations. Plaintiffs respectfully request that this Court hold Defendant CYFD accountable for its violations and grant appropriate relief to address the harm caused and prevent further discrimination.

60. The violation of human rights enshrined within New Mexico Human Rights Act by Defendant CYFD assumes heightened gravity and severity, as these rights are inherent and inalienable to every human person, and must not and cannot be violated by anyone, much less by a public

9

body. Defendant CYFD's violation of NMSA 1978 § 41-4A-3 (2021) was the direct and proximate cause of the harms to Plaintiffs as set forth herein, and Plaintiffs are entitled to damages as a matter of law.

61. Plaintiff alleges that an administrative process was duly initiated and conducted regarding the racial discrimination in the adoption process by Defendant CYFD. This process, conducted by a relevant government entity, culminated in a substantiated finding of racial discrimination in February 2023, as outlined in the letter sent by the entity to Plaintiffs. This finding confirmed that Defendant CYFD's actions, specifically its preferential treatment of non-Black foster families over Black families, including Plaintiffs, violated the principles of racial equality and fairness as protected under New Mexico law.

62. Given the substantiated finding and the thoroughness of the investigation, Plaintiff asserts that further administrative processes, including filing with the New Mexico Human Rights Bureau, would be an unnecessary redundancy. The Human Rights Bureau is similarly situated in terms of governmental oversight and authority as Defendant CYFD, and its involvement would serve no additional purpose in light of the established finding of discrimination by the relevant government entity.

63. Plaintiff contends that pursuing an additional administrative remedy through the Human Rights Bureau would impose unnecessary delay and would be contrary to the interests of justice. Therefore, Plaintiffs respectfully assert that the substantiated finding by the investigating entity satisfies the requirements for pursuing claims under the New Mexico Human Rights Act and that the filing of an additional complaint with the Human Rights Bureau is not required in this case.

64. Plaintiffs are of the class of persons that the legislature sought to protect in enacting the statute.

65. The injuries and harm to Plaintiffs are described in the statement of facts is the harm that the legislature specifically sought to prevent.

66. Defendant CYFD's violation of NMSA 1978 § 41-4A-3 (2021) was the direct and proximate cause of the harms to Plaintiffs as set forth herein, and Plaintiffs are entitled to damages as a matter of law.

## COUNT III: VIOLATION OF NEW MEXICO ADOPTION ACT
## NEGLIGENCE PER SE

67. Plaintiffs incorporate all preceding paragraphs herein.

68. NMSA 1978 § 32A-5-2 establishes the fundamental principle of the adoption process, i.e., the best interest of the child:

The purpose of the Adoption Act [ 32A-5-1 NMSA 1978] is to:
A.     establish procedures to effect a legal relationship between a parent and adopted child that is identical to that of a parent and biological child;
B.     provide for family relationships that will give the adopted child protection and economic security and that will enable the child to develop physically, mentally and emotionally to the maximum extent possible; and
C.     ensure due process protections.

69. In the adoption process, grandparents "are recognized as playing an important role in the raising of their grandchildren" (*Ridenour v. Ridenour*, 1995-NMSC-072, ¶ 120, N.M. 352). Plaintiffs, as the grandparents of D.H., have long been dedicated to the well-being of their grandchild and have consistently expressed their desire to adopt him to provide a stable, loving home.[1]

---

[1] While Plaintiffs are not the biological grandparents of D.H., they are blood relatives who raised D.H.'s father as their own child, effectively filling the role of parental figures in his life. Given this close familial bond and the fact that Plaintiffs have served as surrogate parental figures to D.H.'s father, Plaintiffs are essentially in the position of grandparents and should be afforded the same considerations in the adoption process. At certain stages of the foster application process, Defendant CYFD even thought of Plaintiff's as D.H.'s grandparents. Under **NMSA 1978 § 32A-5-2**, the adoption law prioritizes the **best interests of the child**, which includes placing children with family members whenever possible. The Plaintiffs' close familial relationship with D.H. and their demonstrated capacity to provide a stable and loving home make them highly suitable for adoption, and their exclusion undermines the fundamental principles of family preservation and the child's best interests.

70. NMSA 1978 § 32A-5-2 establishes that the best interests of the child is the central purpose of the adoption process. The statute provides the following guiding principles for adoption proceedings:

**A.** To establish a legal relationship between a parent and an adopted child that is equivalent to the relationship between a biological parent and child;

**B.** To provide for family relationships that ensure the child's protection, economic security, and maximum development of physical, mental, and emotional well-being;

**C.** To ensure due process protections in the adoption process.

71. Plaintiffs, as the biological relatives of D.H., are within the class of persons the New Mexico legislature sought to protect when enacting the Adoption Act. The statute's protections are intended to safeguard the interests of family members who are well-positioned to offer a stable and loving home for children in need of adoption.

72. Defendants engaged in intentional discrimination against Plaintiffs by:

I.   Creating barriers to Plaintiffs' ability to adopt D.H., based on Plaintiffs' race. These barriers included failing to inform the Plaintiffs of necessary steps, required documents, or timelines, thus hindering their ability to pursue adoption in a timely manner.

II.  Delaying responses to Plaintiffs' inquiries and applications, intentionally causing prolonged uncertainty, and depriving them of the opportunity to meaningfully participate in the adoption process.

III. Failing to communicate developments related to D.H.'s placement or any updates that would have allowed Plaintiffs to take timely action to adopt D.H. before it was too late.

73. Defendants violated NMSA 1978 § 32A-5-2 by failing to prioritize the best interests of the child in their adoption decision-making process. In doing so, CYFD improperly favored non-Black foster families over Plaintiffs, disregarding their established familial relationship with D.H., and ignoring their qualifications as caregivers. This failure constitutes a breach of the fundamental adoption principles outlined in the Adoption Act.

74. Defendants' actions in denying Plaintiffs' attempts to adopt D.H. — despite their demonstrated interest in providing a stable and loving home, and despite the significant biological and emotional connection to D.H. — violated the protections and processes set forth in NMSA 1978 § 32A-5-2. Plaintiffs' rights under the Adoption Act were ignored, and they were unjustly excluded from consideration based on discriminatory practices rather than the child's best interests.

75. Defendants' violation of NMSA 1978 § 32A-5-2 was the direct and proximate cause of the harms and injuries suffered by Plaintiffs, as described in the statement of facts. Plaintiffs were harmed by their exclusion from the adoption process, resulting in the disruption of their relationship with D.H. and the denial of their right to adopt him, which was a violation of their rights under New Mexico law. As a result, Plaintiffs are entitled to recover damages as a matter of law, including any emotional and psychological harm caused by Defendant CYFD's discriminatory actions.

76. The injuries and harm to Plaintiffs are described in the statement of facts is the harm that the legislature specifically sought to prevent.

## IV: VIOLATION OF NEW MEXICO TORT CLAIMS ACT

77. Plaintiff incorporates all preceding paragraphs herein.

78. The New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 et seq., waives the state's sovereign immunity for certain torts, including those involving the deprivation of rights secured under the laws and constitutions of the United States and New Mexico.

79. Under NMSA 1978, § 41-4-6, NMTCA permits claims against public entities and public employees for damages resulting from bodily injury, wrongful death, or property damage caused by the negligence of public employees acting within the scope of their duties.

80. Defendant CYFD, as a state agency, is a public entity under the NMTCA and is responsible for the actions of its employees.

81. Defendant employees, as agents and employees of CYFD were charged with the statutory and professional duty to diligently investigate and consider fit family members as placement options before seeking alternative custodial arrangements. These duties were performed within the course and scope of their employment.

82. Despite being aware of the availability of fit family members willing and able to provide care for the minor child, Defendant employees failed to conduct the necessary due diligence, improperly disregarded familial placement options, and pursued alternative placements in violation of their duties and applicable statutory mandates.

83. Defendant employees acted in contravention of NMSA 1978 § 32A-5-2 which mandates that placement with fit and willing family members be prioritized to promote the child's best interests and familial connections.

84. As the employer of Defendant employees, CYFD is responsible for the negligent and wrongful acts of its employees committed within the course and scope of their employment. The acts and omissions of Defendant employees are therefore attributable to CYFD under the doctrine of respondeat superior.

85.    Plaintiffs are the biological family of D.H and were willing and able to provide a safe, stable, and loving home for the child when CYFD assumed custody.

86.    Defendant CYFD and its employees were statutorily and professionally obligated to prioritize placement of D.H. with fit and willing family members to maintain the child's familial relationships and connection.

87.    Despite the availability of fit and willing family members, Defendants failed to make reasonable efforts to identify, assess, or place D.H with Plaintiffs and instead pursued alternative custodial arrangements without just cause or explanation.

88.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs have suffered substantial harm, including but not limited to emotional distress, anguish, and the deprivation of their familial relationship and connection with D.H. Plaintiffs have lost the opportunity to provide care, guidance, and support to the child, as well as the natural bond and joy inherent in familial relationships.

89.    Defendants' failure to prioritize placement of D.H. with Plaintiffs deprived Plaintiffs of their fundamental right to maintain familial relationships and to participate in the upbringing and care of their biological kin, in violation of NMSA 1978 § 32A-5-2 and other statutes as set forth herein.

90. Defendants acted within the scope of their duties when they engaged in racially discriminatory practices, violating Plaintiffs' rights.

91. Defendant CYFD, as an organization responsible for the welfare and protection of children, including oversight of the adoption process, should have known about the discriminatory practices within its ranks, particularly as these practices were pervasive and systemic.

92. Moreover, CYFD caseworkers informed Plaintiffs about the racial discrimination within the department, further indicating that such practices were known or should have been known by the higher echelons of CYFD.

93. Despite having both actual and constructive notice of the civil rights and tort violations, Defendant CYFD failed to take appropriate corrective actions to prevent discrimination against Plaintiffs.

94. This failure constitutes negligence under the NMTCA, as Defendant CYFD had a duty to ensure non-discriminatory and fair practices within its adoption procedures.

95. Defendant CYFD's negligent actions and omissions directly and proximately caused Plaintiffs to suffer significant emotional distress, loss of companionship, and other damages. These harms were foreseeable and avoidable had Defendant CYFD adhered to its duty of care and legal obligations under the law.

96. Plaintiffs are members of the class of individuals that the NMTCA aims to protect from negligent actions by public entities and their employees.

97. The injuries suffered by Plaintiffs are the type of harm that the NMTCA seeks to prevent, specifically the deprivation of civil rights and the resulting emotional and psychological damage.

98. As a result of Defendant CYFD's negligent conduct and violations of Plaintiffs' civil rights, Plaintiffs are entitled to recover damages under the NMTCA.

**COUNT VII: NEGLIGENCE**

99. All previous paragraphs are incorporated herein.

100. Defendant CYFD, as a state agency responsible for the welfare of children and the administration of foster care and adoption processes, owed a duty of care to Plaintiffs.

101. This duty included: (a) Ensuring that all actions and decisions regarding foster care and adoption placements were made impartially and in the best interest of the child; (b) Refraining from engaging in discriminatory practices based on race, ethnicity, or any other unlawful criteria; (c) Providing fair and equal opportunities for relatives, including grandparents, to participate in the adoption process; (d) Offering accurate and complete information about the adoption process and ensuring transparency in decision-making.

102. Defendants breached their duty of care to Plaintiffs in several ways, including by: (a) engaging in and permitting racially discriminatory practices that favored non-black foster families over black families, including Plaintiffs, in the foster and adoption process, thereby violating Plaintiffs' rights to due process; (b) unjustifiably delaying Plaintiffs' attempts to become RAFT certified; (c) limiting Plaintiffs' access to their family member through minimal visitation rights; (d) creating additional hurdles to certification that other CYFD county offices did not have in place; (e) consenting to D.H.'s adoption with a non-black family while knowing that Plaintiffs had just become approved foster parents and had been attempting to foster and adopt D.H. for years; and (f) disregarding the best interests of D.H. by placing him with a non-black foster family, thereby separating him from his biological heritage and his willing and capable family members.

103. Defendants' breaches of duty were the direct and proximate cause of the injuries and damages suffered by Plaintiffs.

104. The discriminatory and negligent actions taken by CYFD prevented Plaintiffs from participating meaningfully in their loved one's life and the adoption process, resulting in emotional distress and loss of companionship.

105. As a result of Defendants' negligence, Plaintiffs suffered and continue to suffer: (a) severe emotional distress and mental anguish due to being unfairly excluded from the adoption process and the upbringing of their grandson; (b) loss of companionship, as Plaintiffs were unjustly deprived of the opportunity to foster a meaningful relationship with their grandson; (c) loss of enjoyment of life and other hedonic damages due to the wrongful actions and omissions of Defendants; (d) and psychological harm.

106. As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered severe emotional injury and are entitled to damages as a matter of law.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

I. An award of compensatory damages for the emotional distress, psychological harm, loss of familial connection, loss of enjoyment of life, and all other harm caused by Defendants' unlawful conduct.

II. An award of pre- and post-judgment interest at the highest statutory rates allowed under New Mexico law.

III. An award of reasonable attorney fees and costs permitted under New Mexico law.

IV. For such other and further relief as the Court deems just and proper.

Respectfully Submitted,

**WEEMS HAZEN LAW**

By: _/s/ **Bridget Hazen**_
Bridget Hazen
Sarah K. Jaeger
*Attorneys for Plaintiffs*
106 Wellesley Dr. SE

Albuquerque, NM 87106
Phone: (505) 247-4700
sarah@weemshazenlaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
1/31/2025 10:46 AM
KATHLEEN VIGIL CLERK OF THE COURT
Mariah Gonzales

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN; SCOTTIE SPILLMAN**

**Plaintiffs,**

v.

**No. D-101-CV-2024-002973**

**CHILDREN, YOUTH, AND FAMILES DEPARTMENT**
**OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.**

**Defendants.**

## FIRST AMENDED COMPLAINT FOR COMPENSATORY AND DECLARATORY RELIEF

COME NOW Plaintiffs Valerie Dentman and Scottie Spillman Sr., by and through their attorneys of record, Bridget Hazen and Sarah K. Jaeger, Weems Hazen Law, and for their Complaint against Defendant states:

## PARTIES, JURISDICTION, AND VENUE

1. At all material times, Plaintiffs Valerie Dentman and Scottie Spillman Sr., married, are residents of Curry County in the state of New Mexico.

2. Defendant Children, Youth, and Families Department of the State of Mexico —hereinafter "CYFD"— is a public body with multiple branches throughout the state.

3. Defendant Children, Youth, and Families Department of the State of Mexico ("CYFD") is a New Mexico agency that administers the foster placement program in New Mexico and has exclusive authority under New Mexico law to determine proper placements of foster children in the legal and physical custody of the state and to operate, monitor, supervise, regulate, and otherwise manage the locations where foster children in state custody are placed.

1

4. Because CYFD is a state agency, jurisdiction and venue are proper under NMSA 1978, § 38-3-1(G) (1988).

5. At all material times, Defendant Employee Does were acting within the course and scope of their employment with CYFD, and their actions and omissions were performed under the authority and direction of the agency. As such, CYFD is vicariously liable for the acts and omissions of its employees.

6. At all material times, upon information and belief, Defendant Employees Does were residents of Curry and or Lea County, New Mexico.

7. Plaintiff will move to amend her complaint to include the identities of Defendants Does once they are ascertained.

8. Notice of tort and civil rights claims was provided pursuant to NMSA 1978, § 41-4-16 on January 5, 2022.

9. Defendant CYFD was initially notified of potential claims against it via letter to the Cabinet Secretary alleging discriminatory practices in December 2021.

## FACTUAL ALLEGATIONS

10. Plaintiffs incorporate all paragraphs herein.

11. Plaintiff Valerie Dentman is the first cousin of Daniel Lamont Harrison Sr.

12. Plaintiff Valerie Dentman and her husband, Scottie Spillman Sr., took Daniel Harrison Sr. into their care and custody after his mother passed away when he was approximately sixteen years old.

13. Daniel Harrison Sr. has five children, including Daniel Lamont Harrison III, herein "D.H.," a minor child.

14. Plaintiffs and D.H. are black.

2

15. In 2018, D.H. was removed from the custody of his parents and placed in the custody of Defendant CYFD.

16. At the time of removal, D.H. was only a couple of months old, having been born in April 2018.

17. Upon information and belief, in June 2018, Defendant CYFD placed D.H. with a non-black foster family without first attempting to place D.H with blood relatives.

18. Upon information and belief, all of D.H.'s minor siblings were placed with blood relatives.

19. Upon information and belief, Plaintiffs' daughter attempted to become D.H.'s foster parent in October of 2018 but was denied.

20. Upon information and belief, this denial was made without reason.

21. In January 2019, Plaintiffs began attempting to adopt D.H.

22. In or around March 2019, a Curry County CYFD employee inspected Plaintiffs' home, and commented that a pile of clothing on the floor of the master bedroom might delay Plaintiffs' foster parent application.

23. In November 2019, Plaintiffs were informed by Curry County CYFD employees that they would not be able to complete the Relative, Adoptive, Foster Parent Training ("RAFT") in 2019 and would have to reapply as foster parents in 2020.

24. Shortly thereafter, Plaintiff Dentman contacted a Lea County CYFD employee to inquire about enrolling for RAFT classes in Lea County, and was told that CYFD should allow individuals the accommodation of enrolling in RAFT classes in other counties when the courses in their own county are full.

25. Upon information and belief, Defendant CYFD allowed Plaintiffs this accommodation after the Lea County CYFD employee contacted the Curry County CYFD office.

3

26. Plaintiffs' attempts to foster and adopt D.H. were denied by Defendant CYFD's Curry County office in 2020.

27. In January 2021, Defendant CYFD allowed Plaintiffs to reapply to become foster parents in Lea County.

28. Upon information and belief, Plaintiffs were approved to be foster parents by Defendant CYFD's Lea County office in or around October 2021.

29. In or around October 2021, Plaintiffs were notified by the Clovis Children's Court that D.H.'s adoption was close to being finalized.

30. Upon information and belief, an employee of Defendant CYFD attempted to communicate with Curry County employees regarding D.H.'s adoption case and Plaintiffs' desire to foster D.H.

31. Moreover, multiple CYFD caseworkers informed Plaintiffs about the racial discrimination within the department, further indicating that such practices were known or should have been known.

32. In December 2021, Defendant CYFD notified Plaintiffs that it consented to D.H.'s foster parents' petition to adopt D.H.

33. D.H. was adopted in 2022 by Robert and Jessie Stockwell, a non-black family.

34. Throughout the process of Plaintiffs attempting to become D.H.'s foster parents, CYFD limited Dentman and Spillman's access to D.H., granting them only minimal visitation rights, limited to Halloween 2021 and one Thanksgiving dinner through Zoom, during which they experienced significant delays in accessing a private virtual room with their family member.

4

35. Throughout the process of Plaintiffs attempting to become D.H.'s foster parents, Plaintiff Dentman contacted at least four Defendant CYFD Lea and Curry County employees and put them on notice of allegations of discriminatory conduct.

36. In December 2021, Plaintiff Dentman notified Defendant CYFD through Cabinet Secretary, Barbara Vigil, of its discriminatory practices.

37. Defendant CYFD's Office of Inspector General launched an investigation in response to Plaintiffs' letter in 2022. In a letter response from Ms. Vigil dated January 25, 2023, Defendant CYFD stated that due to the investigation raised by Plaintiffs' letter, the Department was implementing a series of improvements, such as training programs on "racial inequity and bias", identification of "ways to attract more racial and ethnic minority adults to become foster and adoptive parents", reexamination of "data of overall placements and relative placements both statewide and by county, as well was by racial and ethnic groups", and the creation of a new position within the Department for "Director of Diversity, Equity, and Inclusion".

38. On February 3, 2023, Defendant CYFD sent a letter to Plaintiffs notifying them of a substantiated finding of discrimination. The letter explicitly acknowledged that Defendant's actions were discriminatory in nature and adversely impacted Plaintiffs.

39. By issuing the letter on February 3, 2023, acknowledging a substantiated finding of discrimination against Plaintiffs, Defendant CYFD was aware of the facts and circumstances underlying Plaintiffs' tort claim. The letter demonstrates Defendant's awareness of its own conduct and the resulting harm to Plaintiffs.

40. Defendant CYFD fostered an environment conducive to racial discrimination by systematically favoring non-black foster families over black families in the foster and adoption process and failing to keep D.H. in placements with family members.

5

41. Through policies and practices that lacked equality, transparency and accountability, CYFD effectively marginalized black families, such as the Plaintiffs, by denying them opportunities to foster and adopt children, despite their qualifications and familial connections.

42. Defendant CYFD created a scenario where racial discrimination was not only allowed but institutionalized, causing significant harm to black families seeking to adopt and failing to uphold the best interests of the children involved.

## COUNT I: DUE PROCESS VIOLATION UNDER THE NEW MEXICO CIVIL RIGHTS ACT

43. Plaintiffs incorporate all preceding paragraphs herein.

44. NMSA 1978 § 41-4A-3 (2021) prescribes the prohibition of the violation of rights established by the bill of rights of the constitution of New Mexico:

A. A public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body shall not subject or cause to be subjected any resident of New Mexico or person within the state to deprivation of any rights, privileges or immunities secured pursuant to the bill of rights of the constitution of New Mexico.

B. A person who claims to have suffered a deprivation of any rights, privileges or immunities pursuant to the bill of rights of the constitution of New Mexico due to acts or omissions of a public body or person acting on behalf of, under color of or within the course and scope of the authority of a public body may maintain an action to establish liability and recover actual damages and equitable or injunctive relief in any New Mexico district court.

C. Claims brought pursuant to the New Mexico Civil Rights Act shall be brought exclusively against a public body. Any public body named in an action filed pursuant to the New Mexico Civil Rights Act shall be held liable for conduct of individuals acting on behalf of, under color of or within the course and scope of the authority of the public body.

D. Individuals employed by a public body shall be prohibited from using the New Mexico Civil Rights Act to pursue a claim arising from the individual's employment by the public body.

E. The remedies provided for in the New Mexico Civil Rights Act are not exclusive and shall be in addition to any other remedies prescribed by law or available pursuant to common law.

45. N.M. Const. art. II §18 grants and ensures the right of equality, including but not limited to racial equality, to the citizenry of the state of New Mexico:

6

No person shall be deprived of life, liberty or property without due process of law; nor shall any person be denied equal protection of the laws. Equality of rights under law shall not be denied on account of the sex of any person. The effective date of this amendment shall be July 1, 1973. (As amended November 7, 1972, effective July 1, 1973).

46. Defendant CYFD violated NMSA 1978 § 41-4A-3 (2021) by engaging in racially discriminatory practices that deprived Plaintiffs of their rights to racial equality and fairness as guaranteed by Article II, Section 18 of the New Mexico Constitution. Specifically, Defendant CYFD fostered and perpetuated a policy and practice of systematically favoring non-Black foster families over Black families, including Plaintiffs, in the adoption process, even when Plaintiffs, as blood relatives, were available and qualified to provide care and a stable home.

47. In doing so, Defendant CYFD, as a public body acting within the course and scope of its authority, violated its legal duty of impartiality and subjected Plaintiffs to a deprivation of their constitutional rights to equal protection and racial equality under New Mexico law. This conduct represents a direct violation of NMSA 1978 § 41-4A-3(A), which prohibits any public body from subjecting a resident of New Mexico to the deprivation of any rights, privileges, or immunities secured under the Bill of Rights of the New Mexico Constitution.

48. Defendant CYFD's conduct breached its legal duty under NMSA 1978 § 41-4A-3 to uphold the constitutional rights of all residents, including Plaintiffs, without discrimination based on race. By engaging in practices that excluded and marginalized Plaintiffs on the basis of their race, Defendant CYFD caused significant harm, including emotional distress, familial exclusion, and deprivation of equal treatment in the adoption process. These harms undermined Plaintiffs' rights to equality and due process as guaranteed by Article II, Section 18 of the New Mexico Constitution.

49. Under NMSA 1978 § 41-4A-3(B) and (C), Plaintiffs are entitled to maintain an action against Defendant CYFD as the responsible public body for the discriminatory acts and omissions of

7

its employees acting within the course and scope of their authority. Plaintiffs seek to establish liability and recover damages for the harm they suffered as a result of racial discrimination.

50. Defendant CYFD's actions were not only contrary to its obligations under NMSA 1978 § 41-4A-3, but also reflective of a willful disregard for the rights, privileges, and immunities guaranteed by the New Mexico Constitution. As such, Plaintiffs request the Court to hold Defendant CYFD accountable for its unlawful practices and to ensure the enforcement of racial equality and fairness within the adoption process.

51. Plaintiffs are of the class of persons that the legislature sought to protect in enacting the statute.

52. The injuries and harm to Plaintiffs as described in the statement of facts is the harm that the legislature specifically sought to prevent.

53. Defendant CYFD's violation of N.M. Const. art. II §18 and of NMSA 1978 § 41-4A-3 (2021) was the direct and proximate cause of the harms to Plaintiffs as set forth herein, and Plaintiffs are entitled to damages as a matter of law.

## COUNT II: VIOLATION OF NEW MEXICO HUMAN RIGHTS ACT

54. Plaintiffs incorporate all preceding paragraphs herein.

55. NMSA 1978 § 28-1-7 (2006) prescribes of prohibition of racial discrimination:

It is an unlawful discriminatory practice for:

F. any person in any public accommodation to make a distinction, directly or indirectly, in offering or refusing to offer its services, facilities, accommodations or goods to any person because of race, religion, color, national origin, ancestry, sex, sexual orientation, gender identity, spousal affiliation or physical or mental handicap, provided that the physical or mental handicap is unrelated to a person's ability to acquire or rent and maintain particular real property or housing accommodation;

56. Defendant CYFD violated NMSA 1978 § 28-1-7 (2006) by engaging in unlawful discriminatory practices during the adoption process, wherein it made distinctions, directly or indirectly, in offering its services and accommodations based on race. Specifically, Defendant

8

CYFD systematically favored non-Black foster families over Black families, including Plaintiffs, in the adoption process, even when Plaintiffs, as blood relatives, were fully qualified to adopt and provide a stable and loving home.

57. In favoring non-Black foster families over Black families, Defendant CYFD unlawfully excluded Plaintiffs from full and fair access to its services and accommodations, including the opportunity to maintain and grow their familial relationships with the child. Such conduct constitutes a direct violation of NMSA 1978 § 28-1-7(F), which prohibits public accommodations from making distinctions in the provision of services or facilities based on race.

58. As a public agency offering services related to foster care and adoption, Defendant CYFD is bound by its legal duty to provide those services in a fair and impartial manner, without racial discrimination. By violating this duty, Defendant CYFD caused significant harm to Plaintiffs, including emotional distress, familial alienation, and exclusion from opportunities to serve as adoptive parents due to racial bias in the adoption process. Defendant CYFD's conduct deprived Plaintiffs of the equality and fairness guaranteed by NMSA 1978 § 28-1-7.

59. By favoring non-Black foster families over Black families in the foster and adoption process, Defendant CYFD demonstrated a pattern of discriminatory practices that contravenes the intent and purpose of NMSA 1978 § 28-1-7 to promote equality and prohibit racial bias in public accommodations. Plaintiffs respectfully request that this Court hold Defendant CYFD accountable for its violations and grant appropriate relief to address the harm caused and prevent further discrimination.

60. The violation of human rights enshrined within New Mexico Human Rights Act by Defendant CYFD assumes heightened gravity and severity, as these rights are inherent and inalienable to

9

every human person, and must not and cannot be violated by anyone, much less by a public body. Defendant CYFD's violation of NMSA 1978 § 41-4A-3 (2021) was the direct and proximate cause of the harms to Plaintiffs as set forth herein, and Plaintiffs are entitled to damages as a matter of law.

61. Plaintiff alleges that an administrative process was duly initiated and conducted regarding the racial discrimination in the adoption process by Defendant CYFD. This process, conducted by a relevant government entity, culminated in a substantiated finding of racial discrimination in February 2023, as outlined in the letter sent by the entity to Plaintiffs. This finding confirmed that Defendant CYFD's actions, specifically its preferential treatment of non-Black foster families over Black families, including Plaintiffs, violated the principles of racial equality and fairness as protected under New Mexico law.

62. Given the substantiated finding and the thoroughness of the investigation, Plaintiff asserts that further administrative processes, including filing with the New Mexico Human Rights Bureau, would be an unnecessary redundancy. The Human Rights Bureau is similarly situated in terms of governmental oversight and authority as Defendant CYFD, and its involvement would serve no additional purpose in light of the established finding of discrimination by the relevant government entity.

63. Plaintiff contends that pursuing an additional administrative remedy through the Human Rights Bureau would impose unnecessary delay and would be contrary to the interests of justice. Therefore, Plaintiffs respectfully assert that the substantiated finding by the investigating entity satisfies the requirements for pursuing claims under the New Mexico Human Rights Act and that the filing of an additional complaint with the Human Rights Bureau is not required in this case.

64. Plaintiffs are of the class of persons that the legislature sought to protect in enacting the statute.

65. The injuries and harm to Plaintiffs are described in the statement of facts is the harm that the legislature specifically sought to prevent.

66. Defendant CYFD's violation of NMSA 1978 § 41-4A-3 (2021) was the direct and proximate cause of the harms to Plaintiffs as set forth herein, and Plaintiffs are entitled to damages as a matter of law.

### COUNT III: VIOLATION OF NEW MEXICO ADOPTION ACT NEGLIGENCE PER SE

67. Plaintiffs incorporate all preceding paragraphs herein.

68. NMSA 1978 § 32A-5-2 establishes the fundamental principle of the adoption process, i.e., the best interest of the child:

The purpose of the Adoption Act [ 32A-5-1 NMSA 1978] is to:
A.   establish procedures to effect a legal relationship between a parent and adopted child that is identical to that of a parent and biological child;
B.   provide for family relationships that will give the adopted child protection and economic security and that will enable the child to develop physically, mentally and emotionally to the maximum extent possible; and
C.   ensure due process protections.

69. In the adoption process, grandparents "are recognized as playing an important role in the raising of their grandchildren" (*Ridenour v. Ridenour*, 1995-NMSC-072, ¶ 120, N.M. 352). Plaintiffs, as the grandparents of D.H., have long been dedicated to the well-being of their grandchild and have consistently expressed their desire to adopt him to provide a stable, loving home.[1]

---

[1] While Plaintiffs are not the biological grandparents of D.H., they are blood relatives who raised D.H.'s father as their own child, effectively filling the role of parental figures in his life. Given this close familial bond and the fact that Plaintiffs have served as surrogate parental figures to D.H.'s father, Plaintiffs are essentially in the position of grandparents and should be afforded the same considerations in the adoption process. At certain stages of the foster application process, Defendant CYFD even thought of Plaintiff's as D.H.'s grandparents. Under **NMSA 1978 § 32A-5-2**, the adoption law prioritizes the **best interests of the child**, which includes placing children with family

11

70. NMSA 1978 § 32A-5-2 establishes that the best interests of the child is the central purpose of the adoption process. The statute provides the following guiding principles for adoption proceedings:

**A.** To establish a legal relationship between a parent and an adopted child that is equivalent to the relationship between a biological parent and child;

**B.** To provide for family relationships that ensure the child's protection, economic security, and maximum development of physical, mental, and emotional well-being;

**C.** To ensure due process protections in the adoption process.

71. Plaintiffs, as the biological relatives of D.H., are within the class of persons the New Mexico legislature sought to protect when enacting the Adoption Act. The statute's protections are intended to safeguard the interests of family members who are well-positioned to offer a stable and loving home for children in need of adoption.

72. Defendants engaged in intentional discrimination against Plaintiffs by:

I. Creating barriers to Plaintiffs' ability to adopt D.H., based on Plaintiffs' race. These barriers included failing to inform the Plaintiffs of necessary steps, required documents, or timelines, thus hindering their ability to pursue adoption in a timely manner.

II. Delaying responses to Plaintiffs' inquiries and applications, intentionally causing prolonged uncertainty, and depriving them of the opportunity to meaningfully participate in the adoption process.

---

members whenever possible. The Plaintiffs' close familial relationship with D.H. and their demonstrated capacity to provide a stable and loving home make them highly suitable for adoption, and their exclusion undermines the fundamental principles of family preservation and the child's best interests.

III.   Failing to communicate developments related to D.H.'s placement or any updates that would have allowed Plaintiffs to take timely action to adopt D.H. before it was too late.

73. Defendants violated NMSA 1978 § 32A-5-2 by failing to prioritize the best interests of the child in their adoption decision-making process. In doing so, CYFD improperly favored non-Black foster families over Plaintiffs, disregarding their established familial relationship with D.H., and ignoring their qualifications as caregivers. This failure constitutes a breach of the fundamental adoption principles outlined in the Adoption Act.

74. Defendants' actions in denying Plaintiffs' attempts to adopt D.H. — despite their demonstrated interest in providing a stable and loving home, and despite the significant biological and emotional connection to D.H. — violated the protections and processes set forth in NMSA 1978 § 32A-5-2. Plaintiffs' rights under the Adoption Act were ignored, and they were unjustly excluded from consideration based on discriminatory practices rather than the child's best interests.

75. Defendants' violation of NMSA 1978 § 32A-5-2 was the direct and proximate cause of the harms and injuries suffered by Plaintiffs, as described in the statement of facts. Plaintiffs were harmed by their exclusion from the adoption process, resulting in the disruption of their relationship with D.H. and the denial of their right to adopt him, which was a violation of their rights under New Mexico law. As a result, Plaintiffs are entitled to recover damages as a matter of law, including any emotional and psychological harm caused by Defendant CYFD's discriminatory actions.

76. The injuries and harm to Plaintiffs are described in the statement of facts is the harm that the legislature specifically sought to prevent.

13

## IV: VIOLATION OF NEW MEXICO TORT CLAIMS ACT

77. Plaintiff incorporates all preceding paragraphs herein.

78. The New Mexico Tort Claims Act (NMTCA), NMSA 1978, § 41-4-1 et seq., waives the state's sovereign immunity for certain torts, including those involving the deprivation of rights secured under the laws and constitutions of the United States and New Mexico.

79. Under NMSA 1978, § 41-4-6, NMTCA permits claims against public entities and public employees for damages resulting from bodily injury, wrongful death, or property damage caused by the negligence of public employees acting within the scope of their duties.

80. Defendant CYFD, as a state agency, is a public entity under the NMTCA and is responsible for the actions of its employees.

81. Defendant employees, as agents and employees of CYFD were charged with the statutory and professional duty to diligently investigate and consider fit family members as placement options before seeking alternative custodial arrangements. These duties were performed within the course and scope of their employment.

82. Despite being aware of the availability of fit family members willing and able to provide care for the minor child, Defendant employees failed to conduct the necessary due diligence, improperly disregarded familial placement options, and pursued alternative placements in violation of their duties and applicable statutory mandates.

83. Defendant employees acted in contravention of NMSA 1978 § 32A-5-2 which mandates that placement with fit and willing family members be prioritized to promote the child's best interests and familial connections.

84. As the employer of Defendant employees, CYFD is responsible for the negligent and wrongful acts of its employees committed within the course and scope of their employment.

The acts and omissions of Defendant employees are therefore attributable to CYFD under the doctrine of respondeat superior.

85. Plaintiffs are the biological family of D.H and were willing and able to provide a safe, stable, and loving home for the child when CYFD assumed custody.

86. Defendant CYFD and its employees were statutorily and professionally obligated to prioritize placement of D.H. with fit and willing family members to maintain the child's familial relationships and connection.

87. Despite the availability of fit and willing family members, Defendants failed to make reasonable efforts to identify, assess, or place D.H with Plaintiffs and instead pursued alternative custodial arrangements without just cause or explanation.

88. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs have suffered substantial harm, including but not limited to emotional distress, anguish, and the deprivation of their familial relationship and connection with D.H. Plaintiffs have lost the opportunity to provide care, guidance, and support to the child, as well as the natural bond and joy inherent in familial relationships.

89. Defendants' failure to prioritize placement of D.H. with Plaintiffs deprived Plaintiffs of their fundamental right to maintain familial relationships and to participate in the upbringing and care of their biological kin, in violation of NMSA 1978 § 32A-5-2 and other statutes as set forth herein.

90. Defendants acted within the scope of their duties when they engaged in racially discriminatory practices, violating Plaintiffs' rights.

15

91. Defendant CYFD, as an organization responsible for the welfare and protection of children, including oversight of the adoption process, should have known about the discriminatory practices within its ranks, particularly as these practices were pervasive and systemic.

92. Moreover, CYFD caseworkers informed Plaintiffs about the racial discrimination within the department, further indicating that such practices were known or should have been known by the higher echelons of CYFD.

93. Despite having both actual and constructive notice of the civil rights and tort violations, Defendant CYFD failed to take appropriate corrective actions to prevent discrimination against Plaintiffs.

94. This failure constitutes negligence under the NMTCA, as Defendant CYFD had a duty to ensure non-discriminatory and fair practices within its adoption procedures.

95. Defendant CYFD's negligent actions and omissions directly and proximately caused Plaintiffs to suffer significant emotional distress, loss of companionship, and other damages. These harms were foreseeable and avoidable had Defendant CYFD adhered to its duty of care and legal obligations under the law.

96. Plaintiffs are members of the class of individuals that the NMTCA aims to protect from negligent actions by public entities and their employees.

97. The injuries suffered by Plaintiffs are the type of harm that the NMTCA seeks to prevent, specifically the deprivation of civil rights and the resulting emotional and psychological damage.

98. As a result of Defendant CYFD's negligent conduct and violations of Plaintiffs' civil rights, Plaintiffs are entitled to recover damages under the NMTCA.

### COUNT VII: NEGLIGENCE

16

99. All previous paragraphs are incorporated herein.

100. Defendant CYFD, as a state agency responsible for the welfare of children and the administration of foster care and adoption processes, owed a duty of care to Plaintiffs.

101. This duty included: (a) Ensuring that all actions and decisions regarding foster care and adoption placements were made impartially and in the best interest of the child; (b) Refraining from engaging in discriminatory practices based on race, ethnicity, or any other unlawful criteria; (c) Providing fair and equal opportunities for relatives, including grandparents, to participate in the adoption process; (d) Offering accurate and complete information about the adoption process and ensuring transparency in decision-making.

102. Defendants breached their duty of care to Plaintiffs in several ways, including by: (a) engaging in and permitting racially discriminatory practices that favored non-black foster families over black families, including Plaintiffs, in the foster and adoption process, thereby violating Plaintiffs' rights to due process; (b) unjustifiably delaying Plaintiffs' attempts to become RAFT certified; (c) limiting Plaintiffs' access to their family member through minimal visitation rights; (d) creating additional hurdles to certification that other CYFD county offices did not have in place; (e) consenting to D.H.'s adoption with a non-black family while knowing that Plaintiffs had just become approved foster parents and had been attempting to foster and adopt D.H. for years; and (f) disregarding the best interests of D.H. by placing him with a non-black foster family, thereby separating him from his biological heritage and his willing and capable family members.

103. Defendants' breaches of duty were the direct and proximate cause of the injuries and damages suffered by Plaintiffs.

17

104. The discriminatory and negligent actions taken by CYFD prevented Plaintiffs from participating meaningfully in their loved one's life and the adoption process, resulting in emotional distress and loss of companionship.

105. As a result of Defendants' negligence, Plaintiffs suffered and continue to suffer: (a) severe emotional distress and mental anguish due to being unfairly excluded from the adoption process and the upbringing of their grandson; (b) loss of companionship, as Plaintiffs were unjustly deprived of the opportunity to foster a meaningful relationship with their grandson; (c) loss of enjoyment of life and other hedonic damages due to the wrongful actions and omissions of Defendants; (d) and psychological harm.

106. As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered severe emotional injury and are entitled to damages as a matter of law.

## COUNT IIX: DECLARATORY JUDGMENT

107. All previous paragraphs are incorporated herein.

108. The Declaratory Judgment Act grants district courts the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed." NMSA 1978, § 44-6-2 (1975).

109. A judiciable controversy exists between the Plaintiffs and Defendant, and Plaintiffs have a legally protectable interest in the controversy. The issue is ripe for judicial determination.

110. In 2022, Defendant CYFD's Office of Inspector General investigated allegations of racial discrimination made by Plaintiffs and their family members.

111. Cabinet Secretary wrote Plaintiffs via letter in January 2023 and disclosed that as a result of the internal investigation and Plaintiffs' complaints, the department was in the process of instituting "many improvements," including but not limited to developing cultural humility

18

training, racial inequity and bias training, "micro-learnings" on discrimination, and studying data on the disproportionality of minority children in CYFD care.

112. In February 2023, investigator Molly Widdop sent Plaintiffs a letter stating, "there is sufficient evidence to substantiate your allegation of discrimination."

113. For the reasons set forth herein, Plaintiffs are entitled to a determination and declaration from this Court pursuant to NMSA 1978, § 44-6-2 (1975), that Defendant CYFD engaged in discriminatory conduct when working with the Spillman and Dentman families regarding the placements of the minor child D.H.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and grant the following relief:

I. An award of compensatory damages for the emotional distress, psychological harm, loss of familial connection, loss of enjoyment of life, and all other harm caused by Defendants' unlawful conduct.

II. Declaratory relief that Defendant CYFD (1) failed to abide by CYFD policy and guidelines regarding foster parent applications; (2) created additional roadblocks in the foster care approval process for the Spillman and Dentman families; and (3) engaged in discriminatory conduct when working with the Spillman and Dentman families regarding the placements of the minor child D.H.

III. An award of pre- and post-judgment interest at the highest statutory rates allowed under New Mexico law.

IV. An award of reasonable attorney fees and costs permitted under New Mexico law.

V. For such other and further relief as the Court deems just and proper.

19

Respectfully Submitted,

**WEEMS HAZEN LAW**


By: _/s/ **Bridget Hazen**_
Bridget Hazen
Sarah K. Jaeger
*Attorneys for Plaintiffs*
106 Wellesley Dr. SE
Albuquerque, NM 87106
Phone: (505) 247-4700
sarah@weemshazenlaw.com

20

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/24/2025 12:13 PM
KATHLEEN VIGIL CLERK OF THE COURT
Michael A Sena

## RETURN SUMMONS

| District Court: First Judicial District<br>Santa Fe County, New Mexico<br>Court Address:<br>P.O. Box 2268<br>Santa Fe, NM 2268<br>Court Telephone No.: 505- 455-8250 | Case Number: D-101-CV-2024-002973<br><br>Assigned Judge: Maria Gagne-Sanchez |
|---|---|
| VALERIE DENTMAN; SCOTTIE SPILLMAN<br>Plaintiff(s)<br><br>v.<br><br>CHILDREN,   YOUTH   AND   FAMILIES<br>DEPARTMENT  OF  THE  STATE  OF  NEW<br>MEXICO    and    EMPLOYEES    DOES<br>Defendant(s) | Defendant Name:<br><br>Children Youth and Families Department of the State of New Mexico<br><br>Address:<br>c/o Secretary Teresa Casados<br>1120 Paseo De Peralta<br>Santa Fe, NM 87501 |

## TO THE ABOVE NAMED RESPONDENT(S):  Take notice that

1.      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

2.      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

3.      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

4.      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

5.      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

6.      If you need an interpreter, you must ask for one in writing.

7.      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at _____Santa Fe_____, New Mexico, this 11th day of _February_, 2025.

CLERK OF DISTRICT COURT
Kathleen Vigil

By _____
                Deputy

/s/ Sarah K. Jaeger
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
Attorney for Plaintiffs

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**RETURN**[1]

STATE OF NEW MEXICO )
)ss
COUNTY OF *Bernalillo*

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in *Santa Fe* county on the 18th day of *February*, 2025, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ] to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[X] to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ] to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

[ ] to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ] to _____, an agent authorized to receive service of process for defendant _____.

[ ] to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]    to _____ *(name of person)*, _____,
*(title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees: _____

~~Signature of person making service~~

Paralegal

Title *(if any)*

Subscribed and sworn to before me this 24th day of February , 2025 ³

Notary Public

Judge, notary or other officer
authorized to administer oaths

Notary Public

Official title

> KEVIN ALEXANDER KREISEL
> Notary Public
> State of New Mexico
> Comm. # 2001009
> My Comm. Exp. Oct 29, 2027

## USE NOTE

1.    Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.    If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Teresa Casados
CYFD
1120 Paseo De Peralta
Santa Fe, NM 87501

9590 9402 8999 4122 1323 65

2. Article Number *(Transfer from service label)*

9589 0710 5270 0747 3083 81

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

x MARIANO ROMERO   ☐ Agent
                    ☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

FEB 18 2025

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053      Domestic Return Receipt

**USPS TRACKING #**

9590 9402 8999 4122 1323 65

**United States
Postal Service**



First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Weems Hazen Law
106 Wellesley Dr. SE
Albuquerque. NM 87106

Dentman

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/18/2025 8:46 AM
KATHLEEN VIGIL CLERK OF THE COURT
Jill Nohl

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                                         No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## ENTRY OF APPEARANCE

      The law firm of Melendres & Melendres P.C. hereby enters its appearance of record on

behalf of Defendant, Children, Youth, and Families Department of New Mexico ("CYFD"), in

the above-captioned matter.

                                         Respectfully Submitted,

                                         /s/ Melissa Calderon
                                         Melendres & Melendres P.C.
                                         Paul Melendres
                                         Melissa Calderon
                                         *Attorneys for Defendant CYFD*
                                         1017 5th St NW
                                         Albuquerque, NM  87102
                                         (505) 243-8310 / fax 243-9271
                                         paul@melendreslaw.com
                                         melissa@melendreslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing ENTRY OF

APPEARANCE, along with a copy of this Certificate of Service, were delivered to counsel of

record via the Odyssey E-File and Serve System on the 18th day of March, 2025.


/s/ Melissa Calderon


*Attorneys for Plaintiffs*

WEEMS HAZEN LAW
Bridget Hazen
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
sarah@weemshazenlaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/18/2025 8:46 AM
KATHLEEN VIGIL CLERK OF THE COURT
Jill Nohl

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                              No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## NOTICE OF EXCUSAL

Defendant, Children, Youth, and Families Department of New Mexico ("CYFD"), by and

through its counsel of record, Melendres and Melendres, P.C., and pursuant to the provisions of

Rule 1-088.1 of the New Mexico Rules of Civil Procedure, hereby exercises its right to excuse

the Honorable Maria Sanchez-Gagne from hearing the above-captioned case.


                          Respectfully Submitted,

                          /s/ Melissa Calderon
                          Melendres & Melendres P.C.
                          Paul Melendres
                          Melissa Calderon
                          *Attorneys for Defendant CYFD*
                          1017 5th St NW
                          Albuquerque, NM  87102
                          (505) 243-8310 / fax 243-9271
                          paul@melendreslaw.com
                          melissa@melendreslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing NOTICE OF

EXCUSAL, along with a copy of this Certificate of Service, were delivered to counsel of record

via the Odyssey E-File and Serve System on the 18th day of March, 2025.


/s/ Melissa Calderon


*Attorneys for Plaintiffs*

WEEMS HAZEN LAW
Bridget Hazen
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
sarah@weemshazenlaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
3/20/2025 3:56 PM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

**FIRST JUDICIAL DISTRICT COURT**
**COUNTY OF SANTA FE/RIO ARRIBA/LOS ALAMOS**
**STATE OF NEW MEXICO**

**VALERIE DENTMAN, SCOTTIE SPILLMAN**

      **Plaintiffs,**

**V.**                                                      **D-101-CV-2024-002973**

**CHILDREN, YOUTH, AND FAMILIES DEPARTMENT**
**OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.**

      **Defendants**

## NOTICE OF JUDGE ASSIGNMENT

The above referenced cause has been reassigned to District Judge **Bryan Biedscheid, Division VI,** effective **March 18, 2025** due to the **excusal** of the District Judge **Sanchez-Gagne, Maria, Division II.**

                                          **KATHLEEN VIGIL**
                                          **CLERK OF THE DISTRICT COURT**

                                          **BY:** _____

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was e-filed & electronically served to all counsel registered for electronic service and mailed to prose party's address on file this 20th day of March, 2025.

                                          **KATHLEEN VIGIL**
                                          **CLERK OF THE DISTRICT COURT**

                                          **BY:** _____

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
5/12/2025 3:13 PM
KATHLEEN VIGIL CLERK OF THE COURT
Shana Stewart

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                        No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant, Children, Youth, and Families Department of the State of New Mexico

("CYFD") by and through its attorneys Melendres & Melendres, P.C., hereby moves this Court

to dismiss Plaintiffs' Complaint pursuant to New Mexico Rule of Civil Procedure 12(b)(6) and

submits this memorandum of law in support thereof.

## PRELIMINARY STATEMENT

The Complaint in this matter concerns allegations of racial discrimination and the denial

of an attempted adoption/fostering of a minor child, all of which occurred more than four (4)

years prior to Plaintiffs' filing this lawsuit. While Plaintiffs' Complaint sets forth a number of

allegations concerning Plaintiffs' notification of CYFD's alleged racially discriminatory

practices, the crux of each and every claim set forth therein is the allegation that CYFD denied

Plaintiffs' attempts to foster and/or adopt their minor relative, Baby D.H., **in 2020**. For the

reasons set forth below, all claims set forth in the Complaint are barred, either (a) by the statutes

of limitation and the lack of retroactive application, or (b) due to Plaintiffs' mere failure to

exhaust their administrative remedies under the same. In addition, the claims as pled are not

1

subject to declaratory relief. For these reasons and as set forth below, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

## STATEMENT OF RELEVANT FACTS

1. Plaintiffs filed their original Complaint on December 10, 2024. *See* Complaint filed on Dec. 10, 2024.

2. Plaintiffs filed their First Amended Complaint for Compensatory and Declaratory Relief on January 31, 2025. *See* First Amended Complaint filed on Jan. 31, 2025.

3. Plaintiffs allege CYFD is a public body, governmental entity, and state agency. *See id*. at ¶¶ 2-4.

4. Plaintiffs allege that in 2020, Defendant CYFD denied their attempts to foster and adopt Baby D.H. *Id*. at ¶ 26.

5. Plaintiffs allege that Defendant CYFD committed racial discrimination, denying families like them the opportunity to foster and adopt and thereby causing them harm. *Id*. at ¶¶ 40-42.

6. Plaintiffs allege that pursuing an administrative process was initiated and conducted by CYFD. *Id*. at. ¶ 61.

7. Plaintiffs allege that pursuing any additional administrative process would be redundant, impose unnecessary delay and be contrary to the interests of justice. *Id*. at. ¶¶ 62-63.

## LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim under Rule 1-012(B)(6) NMRA, the court takes the well-pleaded facts alleged in the complaint as true and tests the legal sufficiency of the claims. *Envtl. Control, Inc. v. City of Santa Fe*, 2002-NMCA-3, ¶ 6, 131 N.M. 450. Additionally, New Mexico Courts "disregard conclusions of law and unwarranted factual deductions" when determining the sufficiency of a Complaint. *Tarin's, Inc. v. Tinley*, 2000-NMCA-48, ¶ 11, 129 N.M. 185.

**ARGUMENTS**

**I.      COUNT I OF PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AS WELL AS NON-RETROACTIVE APPLICATION OF THE NMCRA**

Count I of Plaintiffs' Complaint alleges that CYFD violated the New Mexico Civil Rights Act ("NMCRA"). *See* Amended Complaint at ¶¶44-53. However, Plaintiffs failed to pursue litigation against CYFD within the three (3) year requirement as set forth in the Act, which specifically states that, "[a] claim made pursuant to the New Mexico Civil Rights Act [Chapter 41, Article 4A NMSA 1978] shall be commenced **no later than three years** from the date a claim can be brought for the deprivation of a right, privilege or immunity pursuant to the bill of rights of the constitution of New Mexico unless a longer statute of limitations is otherwise provided by state law." *See* NMSA §41-4A-7 (emphasis added). Moreover, "[c]laims arising solely from acts or omissions that occurred prior to July 1, 2021[,] may not be brought pursuant to the New Mexico Civil Rights Act." *See* NMSA §41-4A-12. Plaintiffs allege that in 2020, CYFD denied their attempts to adopt and/or foster their minor family member, Baby D.H. *See* Amended Complaint at ¶ 26. Four (4) years later, on December 10, 2024, Plaintiffs instituted this lawsuit by filing their original complaint. *See* original complaint. The complaint was filed more than three (3) years after CYFD allegedly denied Plaintiffs' attempts to foster and/or adopt Baby D.H. Further, Plaintiffs' allegations arising under their NMCRA claim stem from CYFD's conduct in 2020, and prior to July 1, 2021, the date the Act became applicable. Because Plaintiffs filed their complaint well-beyond the Act's three (3) year statute of limitation, and because the Act does not apply retroactively to the 2020 acts and/or omissions pled therein, Count I of the Complaint should be dismissed with prejudice.

## II.    COUNT III OF PLAINTIFFS' COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS PURSUANT TO THE NEW MEXICO ADOPTION ACT

Count III of Plaintiffs' Complaint alleges that CYFD violated of the New Mexico Adoption Act ("NMAA"). *See* Amended Complaint at ¶¶ 67-76. Pursuant to the Act, "[a] decree of adoption may not be attacked **upon the expiration of one year** from the entry of the decree." *See* NMSA §32A-5-36(K) (emphasis added). Plaintiffs specifically allege that Baby D.H. was adopted in 2022. *See* Amended Complaint at ¶ 33. Even assuming Baby D.H. was adopted at the very end of 2022 (i.e. on December 31, 2022), Plaintiffs did not file their original complaint in this matter until the end of 2024, well-beyond the one (1) year time frame in which Plaintiffs could have protested the adoption. Plaintiffs have therefore failed to file claims within the statute of limitations for attacking Baby D.H.'s adoption under the NMAA and for this reason, Count III of the Complaint should be dismissed with prejudice.

## III.   THE NMTCA IS AN EXCLUSIVE REMEDY BARRING PLAINTIFFS' CLAIMS UNDER BROUGHT UNDER NEGLIGENCE PER SE AND ORDINARY NEGLIGENCE

Plaintiffs claim that in addition to violating the NMTCA, CYFD is further liable under theories of negligence *per se* and ordinary negligence. *See* Amended Complaint at Counts III and VII, respectively. However, the NMTCA  specifically states that "[t]he Tort Claims Act [41-4-1 NMSA 1978] **shall be the exclusive remedy** against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim. *See* NMSA § 41-4-17(A) (emphasis added). CYFD is a governmental entity, as specifically acknowledged and pled by Plaintiffs. For this reason, Counts

4

III and VII of Plaintiffs' Complaint should be dismissed with prejudice, as they are pled outside the confines of the NMTCA.

IV.    **PLAINTIFFS' CLAIMS FOR VIOLATION OF THE NEW MEXICO TORT CLAIMS ACT IS BARRED BY THE STATUTE OF LIMITATIONS**

Count IV of Plaintiffs' Complaint alleges that CYFD violated the New Mexico Tort Claims Act ("TCA"). *See* Amended Complaint at ¶¶ 77-98. Pursuant to the TCA, "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced **within two years** after the date of occurrence resulting in loss, injury or death…" *See* NMSA § 41-4-15 (emphasis added). Plaintiffs' claims originate from CYFD's alleged denial of Plaintiffs' attempts to adopt and/or foster Baby D.H. in 2020. *See* Amended Complaint at ¶26. However, Plaintiffs failed to file their original complaint until four (4) years later. To the extent Plaintiffs allege that their ordinary negligence and negligence per se claims are somehow pled within the confines of the NMTCA, these claims would additionally be barred by the statute of limitations. Because Plaintiffs failed to pursue litigation against CYFD within the two (2) year requirement of the NMTCA, the statute of limitations bars Plaintiffs' claims and for this reason, Count IV of the Complaint should be dismissed with prejudice.

V.    **PLAINTIFFS' CLAIMS FOR VIOLATION OF THE NEW MEXICO HUMAN RIGHTS ACT SHOULD BE DISMISSED FOR PLAINTIFFS' FAILURE TO EXHAUST STATUTORY REMEDIES AND FAILURE TO PLEAD SUFFICIENT FACTS DEMONSTRATING A SERVICE OR ACCOMODATION**

    a.    Plaintiffs Failed to Exhaust Administrative Remedies Under the New Mexico Human Rights Act

Count II of Plaintiffs' Complaint alleges that CYFD violated the New Mexico Human Rights Act ("NMHRA"). *See* Amended Complaint at ¶¶ 54-66. Pursuant to the Act, "[a] person claiming to be aggrieved by an unlawful discriminatory practice and a member of the

5

commission who has reason to believe that discrimination has occurred may file with the human rights division of the labor department a written complaint that shall state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required by the commission. All complaints shall be filed with the division **within three hundred days** after the alleged act was committed." *See* NMSA § 28-1-10(A) (emphasis added). Alternatively, "[t]he complainant may seek a trial de novo in the district court in lieu of a hearing before the commission, provided the complainant requests from the director, in writing, a waiver of complainant's right to hearing **within sixty days** of service of written notice of a probable cause determination by the director." *See* NMSA § 28-1-10(J) (emphasis added).

Plaintiffs' Complaint alleges that CYFD denied them the ability to adopt and/or foster Baby D.H. in 2020, but fails to plead any facts demonstrating (a) Plaintiffs' filing of a written complaint with the human rights division of the labor department within 300 days of said denial, or (b) Plaintiffs' written request from director for a waiver of their right to a hearing within 60 days of service of written notice of a probable cause determination thereby. *See generally* Amended Complaint. Plaintiffs' Complaint fails to plead any facts indicating Plaintiffs followed the mandatory grievance procedure as set forth in the NMHRA, either with respect to the 300day and/or 60-day time frames set forth in the Act.

Specifically, Plaintiffs allege that CYFD initiated and conducted an administrative process review regarding the racial discrimination in their attempted adoption of Baby D.H. *See* Amended Complaint at ¶ 61. They further allege that any additional administrative process review would be redundant, cause undue delay, and be contrary to the interests of justice. *See id.* at ¶¶ 62-63. Despite Plaintiffs' allegations, the exhaustion of administrative remedies is

6

explicitly required by the NMHRA with no exceptions afforded thereunder. The time period to exhaust the Acts' administrative remedies has passed. Moreover, the NMHRA does not provide any alternative method to exhaust administrative remedies, and acceptance of the Plaintiffs' position as to why said remedies should not be exhausted would essentially render the New Mexico Human Rights Commission superfluous. Because Plaintiffs failed to exhaust their administrative remedies as required by the Act, Count II of Plaintiffs' Complaint should be dismissed with prejudice.

b.  Plaintiffs Failed to Plead Sufficient Facts Demonstrating They Received "Services" or "Accommodations" Under the New Mexico Human Rights Act

Even if the Court finds that Plaintiffs could resolve the failure to exhaust their administrative remedies under the NMHRA, there is no indication per Plaintiffs' Complaint that CYFD was offering Plaintiffs services or accommodations as defined by the Act. Plaintiffs' Complaint specifically alleges that CYFD "engag[ed] in unlawful discriminatory practices" in violation of NMSA 28-1-7," and specifically that "CYFD violated [the NMHRA] by unlawfully excluding Plaintiffs from full and fair access to its services and accommodations[]" in violation of NMSA § 28-1-7(F). *See* Amended Complaint at ¶ 56 and 57, respectively. While CYFD could reasonably be deemed a *public accommodation*, there are no allegations that CYFD was offering any of its "services" to the Plaintiffs, specifically because the target of CYFD's services was Baby D.H. Because Plaintiffs' Complaint does not sufficiently plead the denial of any services or accommodations that apply to Plaintiffs themselves or as defined by the NMHRA, Count IV of Plaintiffs' Complaint should be dismissed with prejudice.

7

## VI. PLAINTIFFS' CLAIM FOR DECLARATORY RELIEF SHOULD BE DIMISSED FOR LACK OF CONTROVERSEY UNDER THE DECLARATORY JUDGMENT ACT

Count VI of Plaintiffs' Complaint seeks a declaration from the Court as to CYFD's alleged engagement in discriminatory conduct under the Declaratory Judgment Act ("DJA"). *See* Amended Complaint at ¶¶107-113. Per the Act, district courts within their respective jurisdictions have the power to declare rights, "[i]n cases of **actual controversy**." *See* NMSA § 44-6-2 (emphasis added). "Under both the federal and state declaratory judgment acts, in order to sustain a declaratory judgment action, it is necessary to establish that an actual controversy between the parties exists." *See Yount v. Millington*, 1993-NMCA-143, ¶ 35, 117 N.M. 95 (*citing* 28 U.S.C. § 2201 (1982) and NMSA § 44-6-2 (1978)) (internal quotations omitted). "In the context of a declaratory judgment, the test for what constitutes an actual controversy is whether there is a controversy between the parties **having adverse legal interests of sufficient immediacy and reality** to warrant issuance of declaratory judgment." *See id*. (*citing Norvell v. Sangre de Cristo Dev. Co.,* 519 F.2d at 378 (10th cir.) (emphasis added). Specifically, "[t]he likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy." *Id.*

Plaintiffs' Complaint fails set forth any allegations demonstrating the likelihood of Plaintiffs' alleged injury(ies) recurring or that future repetition of the alleged wrongful acts by CYFD would affect *these Plaintiffs*. Plaintiffs specifically pled that they were denied of the ability to foster or adopt one specific individual, Baby D.H., and per their Complaint, Baby "D.H. was adopted in 2022 by Robert and Jessie Stockwell."[1]  Plaintiffs do not allege that the

---

[1] *See* Amended Complaint at ¶ 33.

8

ability to foster and/or adopt Baby D.H. would present itself in the future and for this reason, Count VI should be dismissed with prejudice.

Moreover, despite Plaintiffs attempts extend their alleged injuries to other individuals attempting to foster and/or adopt through CYFD, "[t]he mere possibility or even probability that a person may be adversely affected in the future by official acts fails to satisfy the actual controversy requirement. *See Yount v. Millington (supra)*(internal citations omitted). Moreover, "[t]he court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." *See* NMSA § 44-6-7. Plaintiffs have brought five (5) other causes of actions against CYFD, demonstrating that any determinations that may be made with respect to Count VI for declaratory relief would not terminate the controversy giving rise to Plaintiffs' Complaint. For these reasons, Count VI of Plaintiffs' Complaint should be dismissed with prejudice.

Plaintiffs' Complaint fails to plead sufficient facts demonstrating actual controversy as required by the DJA and because any declaratory judgement rendered with respect to Plaintiffs' request for relief would not terminate the controversy underlying Plaintiffs' claims against Defendant, Count VI should be dismissed with prejudice.

### CONCLUSION

WHEREFORE, for all of the foregoing reasons, Defendant CYFD respectfully requests that the Court grant its Motion to Dismiss and grant other relief that it deems proper.

9

Respectfully Submitted,


/s/ Melissa Calderon
Melendres & Melendres P.C.
Paul Melendres
Melissa Calderon
1017 5th St NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
paul@melendreslaw.com
melissa@melendreslaw.com
*Attorneys for Defendant CYFD*

10

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing MOTION TO

DISMISS, along with a copy of this Certificate of Service, were delivered to counsel of record

via the E-File and Serve System on the 12th day of May, 2025.


/s/ Melissa Calderon


*Attorney for Plaintiffs*

WEEMS HAZEN LAW
Bridget Hazen
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
sarah@weemshazenlaw.com

11

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
5/23/2025 11:25 AM
KATHLEEN VIGIL CLERK OF THE COURT
Mayra Mendoza-Gutierrez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**FIRST JUDICIAL DISTRICT COURT**

VALERIE DENTMAN; SCOTTIE SPILLMAN;

    Plaintiffs,

v.                      No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

    Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANT CHILDREN, YOUTH, AND FAMILES**
**DEPARTMENT OF THE STATE OF NEW MEXICO'S MOTION TO DISMISS**

    COME NOW Plaintiffs Valerie Dentman and Scottie Spillman, Sr., by and through their attorneys of record, Bridget Hazen and Sarah K. Jaeger, Weems Hazen Law, and for their Response to Defendant Children, Youth, and Families Department of the State of New Mexico states as follows:

**INTRODUCTION**

    While Plaintiffs concede that certain claims—specifically those under the New Mexico Civil Rights Act (NMCRA), Human Rights Act (NMHRA), Adoption Act (NMAA), and negligence theories—are both time-barred, their core claims under the New Mexico Tort Claims Act (NMTCA) and Declaratory Judgment Act (DJA) remain viable. The crux of Plaintiffs' case is not the 2020 denial of their foster/adoption application itself, but rather CYFD's later-confirmed discriminatory conduct, which constitutes the true injury and triggers the statute of limitations. A 2023 letter from CYFD substantiated racial bias in their process, making the violation discoverable at that time—not in 2020. *See* Plaintiffs' First Amended Complaint, at 37-38. Additionally, the

1

DJA claim presents an actual controversy given CYFD's own findings of systemic discrimination, which continue to impact Plaintiffs and similarly situated families. Dismissal of these remaining claims would prematurely shut the door on accountability for CYFD's misconduct.

## ARGUMENT AND AUTHORITIES

**I.  Plaintiffs Acknowledge that Certain Claims Cannot Proceed Under the Applicable Legal Standards.**

Plaintiffs concede certain claims are procedurally barred but maintain that CYFD's discrimination—formally acknowledged in 2023—preserves their timely NMTCA and declaratory relief actions. Specifically, Plaintiffs concede that:

1. The NMCRA claim (Count I) is barred by the statute of limitations and the Act's non-retroactivity, as the alleged conduct occurred before July 1, 2021.

2. The NMHRA claim (Count II) fails due to Plaintiffs' inability to exhaust administrative remedies within the required 300-day window.

3. The Adoption Act claim (Count III) is time-barred, as challenges to an adoption decree must be brought within one year, and D.H.'s adoption was finalized in 2022.

4. Negligence per se and ordinary negligence claims (Counts V & VII) are precluded by the NMTCA's exclusivity provision, which bars standalone negligence claims against governmental entities.

By narrowing the case to the NMTCA (Count IV) and declaratory judgment (Count VI) claims, Plaintiffs seek to resolve this matter on its most legally tenable grounds while preserving their right to challenge CYFD's discriminatory practices.

2

## II. NMTCA Claim is Timely Because Plaintiff's Injury Lies in the Discrimination, Not the Adoption Denial.

CYFD erroneously frames the statute of limitations as running from the 2020 adoption denial, but the true injury is the discrimination, which Plaintiffs could not have reasonably discovered until CYFD's 2023 letter confirmed racial bias in its process. The NMTCA's two-year clock begins at the time of the discovered harm, not the initial adverse action. Here, the discriminatory basis for CYFD's decision was concealed until 2023, placing Plaintiffs' 2024 filing well within the window. Plaintiffs' thesis is that the limitations periods for the discriminatory injury violations accrue upon discovery of the discriminatory motive because only then CYFD "had actual notice of the occurrence." *See Dutton v. McKinley Cty. Bd. of Comm'rs*, 1991-NMCA-130, ¶ 1, 113 N.M. 51, 822 P.2d 1134 (holding that both *written* and *actual* notice categories are applicable under the NMTCA). Plaintiffs' Complaint expressly alleges that CYFD's discrimination was only confirmed years later, making the NMTCA claim timely.

## III. Actual Controversy Exists Under DJA.

CYFD's 2023 letter not only confirmed discrimination against Plaintiffs but also revealed a broader pattern of bias in its foster/adoption system. This creates a live controversy under the DJA, as Plaintiffs—and others like them—remain at risk of repeated harm. The adoption of Baby D.H. does not moot the issue, as CYFD's discriminatory policies continue to affect families similarly situated to Plaintiffs' ability to foster/adopt other children. *See Yount v. Millington*, 1993-NMCA-143, ¶ 35, 117 N.M. 95, 869 P.2d 283 (holding that "[i]n the context of a declaratory judgment, the test for what constitutes an actual controversy is whether there is a controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment." Here, declaratory relief is appropriate as the Plaintiffs postulate

3

that the government entity's ongoing practices perpetuate systemic harm, while the latter deny

such "adverse legal interests of sufficient immediacy and reality." *Id*.

**CONCLUSION**

While Plaintiffs do not contest dismissal of the NMCRA, NMHRA, NMAA, and

negligence claims, the NMTCA and DJA claims survive. The NMTCA claim is timely because

the injury—confirmed discrimination—arose in 2023, and the DJA claim addresses an ongoing

controversy. The Court should deny dismissal as to these counts.

WHEREFORE, Plaintiffs request that the Court deny Defendant's Motion to Dismiss as to

Counts IV (NMTCA) and VI (Declaratory Judgment Act), while acknowledging the concessions

made herein regarding the remaining claims, and for any other relief the Court deems just and

proper.

Respectfully Submitted,

**WEEMS HAZEN LAW**

By: */s/ Sarah K. Jaeger*
Bridget Hazen
Sarah K. Jaeger
*Attorney for Plaintiffs*
106 Wellesley Dr. SE
Albuquerque, NM 87106
Phone: (505) 247-4700
sarah@weemshazenlaw.com

4

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
6/12/2025 3:00 PM
KATHLEEN VIGIL CLERK OF THE COURT
Miquella M Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

        Plaintiffs,

v.                                No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

        Defendants.

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant, Children, Youth, and Families Department of the State of New Mexico ("CYFD") by and through its attorneys Melendres & Melendres, P.C., hereby submits this Reply in support of its Motion to Dismiss Plaintiffs' Complaint pursuant to New Mexico Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiffs, in their Response to Defendant's Motion to Dismiss (the "Response"), concede to the dismissal of Counts I, II, III, V, and VII of their Complaint pursuant to the applicable statutes of limitations. Their Response argues solely for the preservation of Counts IV, for negligence under the New Mexico Tort Claims Act ("NMTCA") and Count VI, for declaratory relief. Specifically, Plaintiffs state that Count IV is not time barred because the date of injury was in 2023, when they allegedly received a letter confirming their claims of discrimination. However, this argument fails because the statute of limitations pursuant to the NMTCA begins running on the date of an injury's *occurrence* and not on the date of its purported discovery. Plaintiffs further argue that Count VI should proceed because an actual controversy still exists

under the Declaratory Judgement Act ("DJA"). Again, this argument fails because no actual controversy exists between these parties sufficient for the Court to issue such relief. For these reasons and as set forth below, Counts IV and VI of Plaintiffs' Complaint should be dismissed and Defendants' Motion should be granted.

## I. THE NMTCA'S STATUTE OF LIMITATIONS BEGINS UPON THE INJURY'S OCCURRENCE

Plaintiffs argue their claim for negligence under the NMTCA (Count IV) is not time barred because their injury was not Baby D.H.'s adoption in 2019, but when CYFD allegedly substantiated their claims of racial discrimination in 2023. Plaintiffs erroneously assert that "the NMTCA's two-year clock begins at the time of the discovered harm"[1] This argument directly contradicts the clear language of the NMTCA, which specifically sets forth that "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the **date of occurrence** resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file[.]" *See* N.M. Stat. Ann. § 41-4-15 (emphasis added). For this reason, Count IV of Plaintiffs' Complaint is time barred and should be dismissed.

Plaintiffs further state that Defendant's alleged discrimination "was concealed until 2023." This argument is unpersuasive and has no bearing on the NMTCA's time limitations in this matter. First, Plaintiffs' Complaint is devoid of any allegations concerning Defendant "concealing" alleged discriminatory practices. Second, Plaintiffs' argument that the statute of limitations under the NMTCA does not begin running, "until discovery of the discriminatory motive" because "only then [did] CYFD ha[ve] actual notice of the occurrence" lacks any reasonable basis in law or fact. The "discovery rule" is applied particularly in cases of medical

---

[1] *See* Plaintiffs' Response to Defendant's Motion at p.3.

malpractice where, "[t]he victim of medical malpractice is in a vulnerable position and should not be punished for his or her lack of medical expertise." *Maestas v. Zager*, 2007-NMSC-003, ¶ 19, 141 N.M. 154. For example, in *Emery v. Univ. of NM Medical Ctr.*, a premature infant suffered a brain injury following a failure to properly intubate the child. 1981-NMCA-059, ¶ 18-20, 96 N.M. 144. The *Emery* court held that determination needed to be made about when the infant's parents learned of possible brain damage and its cause in order to properly determine when the injury was ascertainable. *Id*. at ¶ 29. Plaintiff has failed to plead any facts demonstrating that they were not aware of their injuries or their cause at the time they occurred or shortly thereafter. In fact, Plaintiffs specifically alleged that, "[i]n December 2021, Plaintiff Dentman notified Defendant CYFD….of its discriminatory practices," Demonstrating that Plaintiffs were entirely aware of their alleged injuries as of December 2021. *See* Complaint at ¶ 36.

In addition, there is absolutely no legal basis for the premise that the statute of limitations begins to run **when the state entity has received notice of the injury**, as the NMTCA clearly states the statute begins to run on the date of occurrence. However, even if the Court were to accept Plaintiffs' contention that the clock begins running on the date that Defendant received notice of instances of discrimination, Plaintiffs own allegations undermine this argument, as they have alleged that they notified CYFD of its discriminatory practices in December 2021. If the statute of limitations began running on the date CYFD received notice of Plaintiff's alleged claims, it would have expired in December of 2023. For these reasons, Count IV of Plaintiffs' Complaint should be dismissed as time barred and Defendant's Motion should be granted.

II.    **NO ACTUAL CONTROVERSY EXISTS UNDER THE SJA**

Plaintiffs argue that a live controversy exists in this matter because, "Plaintiffs – and others like them - remain at risk of repeated harm." *See* Plaintiffs' Response at p. 3. *Yount v. Milligan* makes it clear that for an issuance of declaratory judgment to be warranted, there must exist a controversy **between the parties** and that the parties' adverse legal interests **must be of sufficient immediacy**. *See Yount v. Milligan*, 1993-NMCA-143, ¶ 35, 117 N.M. 95 (emphasis added); *see also* NMSA § 44-6-2 (1978). Any argument as to *potential* controversies that *may* arise between Defendant and *other* unidentified, undeterminable individuals in the future is not sufficient for an issuance of declaratory judgement under the law. Moreover, looking to the allegations as pled in Plaintiffs' Complaint, any controversy between the parties ceased to exist upon Baby D.H.'s adoption being finalized, thereby eliminating any argument that Plaintiffs could surmise concerning sufficient immediacy of their legal interest. For these reasons, Plaintiffs request for declaratory relief pursuant to Count VI of the Complaint should be dismiss and Defendant's Motion should be granted.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendant CYFD respectfully requests that the Court grant its Motion to Dismiss and grant other relief that it deems proper.

Respectfully Submitted,

/s/ Melissa Calderon
Melendres & Melendres P.C.
Paul Melendres
Melissa Calderon
1017 5th St NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271

paul@melendreslaw.com
melissa@melendreslaw.com
*Attorneys for Defendant CYFD*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing REPLY, along with a copy of this Certificate of Service, were delivered to counsel of record via the E-File and Serve System on the 12th day of June, 2025.

/s/ Melissa Calderon

*Attorney for Plaintiffs*

WEEMS HAZEN LAW
Bridget Hazen
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
sarah@weemshazenlaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
10/21/2025 11:31 AM
KATHLEEN VIGIL CLERK OF THE COURT
Michael A Sena

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

        Plaintiffs,

v.                                 No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

        Defendants.

## NOTICE OF HEARING

    A hearing in this case is set before the Honorable Bryan Biedscheid as follows:

| | |
|---|---|
| Date of Hearing: | November 17, 2025 |
| Time of Hearing: | 3:30pm |
| Length of Hearing: | 1 hour |
| Place of Hearing: | GoogleMeet[1] |

**Remote Access** by Google Meet. The court requires counsel and parties to participate by video at https://meet.google.com/hdc-wqjx-wes

Matter to be Heard:    DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

HONORABLE BRYAN BIEDSCHEID
FIRST JUDICIAL DISTRICT COURT JUDGE

By_____
      Monserrath Rodríguez, CCM

NOTICE MAILED OR DELIVERED ON DATE OF FILING TO PARTIES LISTED ON
ATTACHED SHEET.

---

[1] If the parties agree that this hearing should take place in person, please email Division 6 and request that the hearing be moved to an in-person hearing.

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/5/2025 8:37 AM
KATHLEEN VIGIL CLERK OF THE COURT
Marina Sisneros

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                                               No. D-101-CV-2024-02973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## AMENDED NOTICE OF HEARING

A hearing in this case is set before the Honorable Bryan Biedscheid as follows:

Date of Hearing:    November 19, 2025

Time of Hearing:    4:15 PM

Length of Hearing:    1 hour

Place of Hearing:    GoogleMeet[1]

**Remote Access** by Google Meet. The court requires counsel and parties to participate by video at https://meet.google.com/hdc-wqjx-wes

Matter to be Heard:    DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

HONORABLE BRYAN BIEDSCHEID
FIRST JUDICIAL DISTRICT COURT JUDGE

By_____
      Monserrath Rodriguez, CCM

NOTICE MAILED OR DELIVERED ON DATE OF FILING TO PARTIES LISTED ON ATTACHED SHEET.

---

[1] If the parties agree that this hearing should take place in person, please email Division 6 and request that the hearing be moved to an in-person hearing.

## PARTIES ENTITLED TO NOTICE

*Attorney for Plaintiffs*
WEEMS HAZEN LAW
Bridget Hazen
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
sarah@weemshazenlaw.com


*Attorneys for Defendant CYFD*
Melendres & Melendres P.C.
Melissa Calderon
Paul Melendres
1017 5th St NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
melissa@melendreslaw.com
paul@melendreslaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
8/26/2025 10:00 AM
KATHLEEN VIGIL CLERK OF THE COURT
Mayra Mendoza-Gutierrez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN; SCOTTIE SPILLMAN**

    **Plaintiffs,**

**v.**            **No. D-101-CV-2024-002973**

**CHILDREN, YOUTH, AND FAMILIES DEPARTMENT**
**OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.**

    **Defendants.**

### MOTION OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL

COMES NOW Plaintiff's, Valerie Denton and Scottie Spillman, and moves the Court to allow Sarah K. Jaeger, Weems Hazen Law to withdraw as counsel of record and substitute Benjamin Gubernick as Plaintiff's counsel of record. As grounds for this Motion, Plaintiff states as follows:

1. Sarah K. Jaeger is no longer the active attorney on this file.

2. Benjamin Gubernick, Waldo Gubernick Law Advocates, LLP has taken over as attorney for Plaintiff.

3. Melissa Calderon, Melendres & Melendres P.C. Attorney for Defendant, has been contacted and does/does not oppose the granting of this motion.

WHEREFORE, Plaintiff's respectfully requests that the Court enter an order allowing Sarah K. Jaeger to withdraw and substitute Benjamin Gubernick, Waldo Gubernick Law Advocates, LLP, as counsel of record for Plaintiff's.

Respectfully Submitted,

WEEMS HAZEN LAW

/s/ Sarah K. Jaeger
Sarah K. Jaeger
106 Wellesley Dr SE
Albuquerque NM  87106
(505) 247-4700

Approved by:

_____
Melissa Calderon
Melendres & Melendres P.C.
1017 5th St. NW
Albuquerque, NM 87102
(505) 243-8310
Attorney for Defendant

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
9/10/2025 3:32 PM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN; SCOTTIE SPILLMAN**

            **Plaintiffs,**

**v.**                                                   **No. D-101-CV-2024-02973**

**CHILDREN, YOUTH, AND FAMILIES DEPARTMENT**
**OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.**

            **Defendants.**

### ORDER ALLOWING WITHDRAWAL AND SUBSTITUTION OF COUNSEL AND ENTRY OF APPEARANCE

THIS MATTER, having come before the Court upon Plaintiff's  Motion of Withdrawal and Substitution of Counsel, the Court having reviewed the pleadings and being otherwise advised on the premises FINDS:

•        The court has jurisdiction over the parties and the subject matter hereto.

•        Sarah K. Jaeger, attorney for Plaintiff's is hereby withdrawn as counsel of record.

•        Benjamin Gubernick, Waldo Gubernick Law Advocates, LLP hereby enters his appearance in this matter.

•        Benjamin Gubernick, Waldo Gubernick Law Advocates, LLP is prepared to proceed in this matter, is aware of all pleadings and deadlines, and all future pleadings and correspondence shall be forwarded to the contact information below.

            IT IS SO ORDERED.

_____
HONORABLE DISTRICT COURT JUDGE

**Submitted by:**


*/s/ Sarah K. Jaeger*_____
Sarah K. Jaeger
106 Wellesley Dr SE
Albuquerque NM  87106
(505) 247-4700
Sarah@weemshazenlaw.com


Approved by:


*Approved via email 8/25/25*_____
Benjamin Gubernick
717 Texas Ave. Ste. 1200
Houston, TX 77002
(734) 678-5169
ben@wglawllp.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/13/2025 11:43 AM
KATHLEEN VIGIL CLERK OF THE COURT
Michael A Sena

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE**
**SPILLMAN,**
**,**

       **Plaintiffs,**

**v.**                               **No. D-101-CV-2024-002973**

**THE NEW MEXICO CHILDREN,**
**YOUTH & FAMILIES DEPARTMENT**
**and EMPLOYEES DOES,**

       **Defendants.**

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Plaintiffs Valerie Dentman ("Dentman") and Scottie Spillman ("Spillman") (collectively, "Plaintiffs") request leave to file a Second Amended Complaint (the "Proposed SAC"), which is attached here as Exhibit A. Counsel for Defendant Children, Youth & Families Department ("CYFD" or "Defendant") has been contacted and opposes this motion, contending that amendment would be futile.

### A. Introduction.

This case arises from CYFD's racially motivated efforts to prevent a child from being adopted by his black biological relatives. That CYFD engaged in illegal, racist discrimination is undisputed—CYFD's own internal investigation confirmed that the misconduct occurred. Ex. A at ¶¶ 46-47.

However, the operative complaint is the wrong vehicle to achieve justice in this matter. The First Amended Complaint ("FAC") which was filed by prior counsel, is built on defective state law claims. These defects are at the heart of the motion to dismiss which is pending hearing on November 19. The Proposed SAC removes the state law claims and replaces them with cognizable federal causes of action. The Proposed SAC also adds factual allegations sufficient to defeat the statute of limitations arguments CYFD makes in its motion to dismiss.

1

It is axiomatic that leave to amend should be "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, amendment will allow the case to proceed on viable legal grounds, without causing undue delay or prejudice to Defendants. Accordingly, Plaintiffs respectfully request that the Court grant leave to file the Proposed SAC.

**B. Background.**

In 2018, an African-American baby, referred to here by his initials K.H., was removed from his mother's home, along with his five Hispanic half-siblings, by CYFD. Ex. A at ¶ 16. The Hispanic children were all placed with kin relatives. *Id*. at ¶ 22. K.H., however, was not.

Plaintiffs and their two adult daughters are African-American kin relatives of K.H. *Id*. at ¶¶ 12, 14. They made numerous efforts from 2018 to 2021 to foster and adopt K.H., but at every turn those efforts were thwarted by CYFD's office in Clovis. *Id*. at ¶¶ 23-44, 14. Plaintiffs were qualified to raise K.H. Indeed, CYFD's own policies purport to favor adoption by blood relatives. *Id*. at ¶ 21. Yet time and again, CYFD's staff in Clovis used arbitrary, weak justifications to block Plaintiffs, and instead advance their ultimate objective: adoption by non-relative, non-Black parents. *Id*. at ¶¶ 23-44.

On December 17, 2021, Plaintiffs were notified that CYFD intended to consent to D.H.'s adoption by non-relatives. *Id*. at ¶ 42. Plaintiffs responded on December 20, 2021, by submitting a complaint to CYFD. *Id*. at ¶ 43. However, Plaintiffs were unable to prevent CYFD's Clovis office from carrying out its plan. On December 21, 2021, D.H.'s adoption was approved on CYFD's recommendation. *Id*. at ¶ 44.

Despite the closure of D.H.'s case, CYFD's Inspector General investigated the allegations in Plaintiffs December 20 complaint. On January 25, 2023, then-Secretary Barbara Vigil sent a letter to Plaintiffs, notifying them that CYFD had substantiated Plaintiffs complaint. *Id*. at ¶¶ 45-46. On February 3, 2023, the Inspector General also sent a letter to Plaintiffs, again stating the allegations had been substantiated, effectively finding that Plaintiffs had been the victims of racial discrimination by CYFD. *Id*. at ¶ 47. Both Vigil's letter and the Inspector General's letter stated

that all information uncovered in the investigation was confidential, and would not be disclosed to Plaintiffs. *Id*. at ¶¶ 46-47.

On December 10, 2024, Plaintiffs filed this lawsuit in state court the ("Original Complaint"). The Original Complaint laid out the basic facts of the case and brought claims against CYFD and its Doe Defendant employees. Specifically, Plaintiffs alleged violations of the New Mexico Civil Rights Act, New Mexico Human Rights Act, New Mexico Adoption Act, and New Mexico Tort Claims Act, and sought recovery on a common law negligence theory. On January 21, 2025, Plaintiffs filed a First Amended Complaint to add a claim under the New Mexico Declaratory Judgment Act.

On May 5, 2025, CYFD filed a motion to dismiss the case. Plaintiffs filed a response on May 24, 2025, and CYFD filed a reply on June 12, 2025. On September 10, 2025, Plaintiffs' attorneys withdrew and undersigned counsel entered. The motion to dismiss is set for hearing on November 19, 2025.

### C. Legal Standard.

In New Mexico, leave to amend must be "freely given when justice requires." Rule 1-015(A) NMRA. In practice, such motions are generally granted unless "insufficiency or futility of the proposed amended pleading is apparent on its face[.]" *Ruegsegger v. W. NM Univ. Bd. of Regents*, 2007-NMCA-030, ¶ 12. *See also*, *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 24 ("A party ought to be afforded an opportunity to test its claim on the merits … in the absence of… undue delay, bad motive on the part of the movant, repeated failure to cure deficiencies by previous amendments, undue prejudice to opposing party, or futility of the amendment.").

### D. Argument.

#### 1. Justice requires allowing Plaintiffs leave to file the Proposed SAC.

This case arises from egregious civil rights violations that CYFD has already admitted to committing. CYFD should be held to account. The claims in the FAC, however, are the wrong tools for the job. Defendant's motion to dismiss is correct that (1) the New Mexico Civil Rights Act does not have retroactive application; (2) there is no applicable Tort Claims Act waiver; (3)

3

the Human Rights Act's exhaustion and notice requirements have not been satisfied; and (4) the Adoption Act lacks a private right of action.

But the causes of action in the Proposed SAC do not suffer from those infirmities. Title VI of the Civil Rights Act of 1964 has neither exhaustion nor notice requirements. It also exists for precisely this type of case, as Title VI "prohibits racial discrimination in programs receiving federal funds." *Meyers By & Through Meyers v. Bd. of Educ. of San Juan Sch. Dist*., 905 F. Supp. 1544, 1573 (D. Utah 1995). *See also,* 42 U.S.C.A. § 2000d ("No person in the United States shall, on the ground of race, … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"). And as alleged in the Proposed SAC, CYFD is a recipient of such federal funds. Ex. A at ¶ 50. Likewise, 42 U.S.C. § 1983 ("Section 1983") has been on the books for decades and creates a remedy for situations like this one. Section 1983 provides the right to sue the state actors for violations of federal constitutional rights. Here, that means the Doe Defendant CYFD employees who discriminated against Plaintiffs.

It bears emphasis: the problems with the claims in the FAC are procedural and technical. Those problems are unrelated to what has always been ultimate issue, which is whether CYFD and its employees racially discriminated against Plaintiffs. "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court should permit Plaintiffs that opportunity and grant the motion.

**2. Amendment would not be futile.**

CYFD opposes amendment on the grounds that it would be futile. But as just discussed, the alleged conduct fits squarely into Title VI and Section 1983, and "[a]n amendment is [only] futile if the amended pleading would be subject to dismissal." *Stinson v. Berry*, 1997-NMCA-076, ¶ 9. The only outstanding issue from the motion to dismiss is CYFD's statute of limitations arguments, but for the following reasons that objection fails as well.

4

### i.    Discrimination occurred within the statute of limitations.

The Proposed SAC alleges that CYFD's final discriminatory actions occurred within the statute of limitations. CYFD notified Plaintiffs on December 17, 2021, that it intended to support non-relative adoption for D.H. And then, on December 21, 2021, CYFD's recommendation was approved by the children's court. Plaintiffs' complaint was filed on December 10, 2024, less than three years after D.H.'s adoption was approved on CYFD's racially motivated recommendation. As Title VI and Section 1983 have three-year statutes of limitations, the claims against CYFD and its Doe Defendant employees are therefore timely provided that they relate back to the original complaint's filing.

### ii.    The Proposed SAC's claims relate back.

An amended complaint is treated as if it was filed the same day as the first complaint as long as it relates back to the original filing. The requirements for relation back are found in this Court's Rules of Civil Procedure:

C. Relation back of amendments.

(1) Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

(2) When a party files a motion to amend a pleading prior to the running of the statute of limitations, changing the party against whom a claim is asserted, a ruling granting the motion relates back to the date the motion was filed if the motion was accompanied by a proposed amended pleading naming the new party.

(3) When a party files a motion to amend a pleading after the statute of limitations has run, changing the party against whom a claim is asserted, a ruling granting the motion relates back to the date of the original pleading if Paragraph (C)(1) of this rule is satisfied and, within the period provided by Rule 1-004(C)(2) NMRA for serving process, the party to be brought in by amendment

(a) has received such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the merits; and

(b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

NMRA, Rule 1-015(C). Here, these requirements are satisfied for CYFD and its Doe Employees.

5

The Proposed SAC is based on the exact same "conduct, transaction, or occurrence set forth … in the original pleading[.]" *Id*. The underlying factual allegations are the same—CYFD prevented Plaintiffs from fostering and adopting D.H. because of Plaintiffs' race. As CYFD has been a named defendant throughout these proceedings, Rule 16(c) is satisfied as to CYFD.

As for the Doe Defendants, in New Mexico "a party who participated in conduct described in a complaint should reasonably expect to be named regardless of whether the caption refers to that party as 'John Doe' or as an 'unnamed defendant.'" *Macias v. Jaramillo*, 2000-NMCA-086, ¶ 30. Thus, the "designation of the particular capacity of 'John Doe' … provides the clarity required … [to] reasonably forecast[] the plaintiff's intent to proceed to seek an amendment changing the party against whom a claim is asserted under Rule 1-015(C)." *Id.* at ¶ 32 (quotation marks omitted).

Here, the Original Complaint described the Doe Defendants as people who "act[ed] within the course and scope of their employment with CYFD, and [whose] actions were performed under the authority and direction of the agency." Original Complaint at ¶ 5. The Original Complaint also stated that "Plaintiff will move to amend her complaint to include the identities of Defendants Does once they are ascertained." *Id*. at ¶ 7. Although the names of the specific CYFD employees responsible for the bad acts alleged in the Original Complaint were (and still are) unknown to Plaintiffs,[1] those employees surely had notice of this suit and surely realized their names would eventually appear in the caption. After all, they were investigated by CYFD and found to have engaged in racial discrimination. That is sufficient to satisfy Rule 1-015(C)(3)(a) and (b). *See Macias*, 2000-NMCA-086 at ¶ 30 (both prongs satisfied where "the new defendant knew (or should have known) that his joinder was a distinct possibility." (Quotation marks omitted)).

---

[1] The Proposed SAC names Tamara Letcher as a defendant because her position as office manager during the relevant period suggests involvement. However, Plaintiffs do not know whether CYFD's internal investigation found Letcher to be at fault.

6

### iii. The continuing violation doctrine applies to actions prior to December 2021.

As Defendant's motion to dismiss points out, much of the discriminatory conduct CYFD engaged in occurred more than three years before the Original Complaint's filing. However, under the continuing violation doctrine, that misconduct is actionable as well.

The continuing violation doctrine is "an equitable doctrine permitting a plaintiff to bring an otherwise untimely claim." *Ulibarri v. State of New Mexico Corr. Acad.*, 2006-NMSC-009, ¶ 9. It applies in cases that "involve repeated conduct over days or years[,]" where the "cumulative effects of th[o]se acts … constitute a single unlawful … practice[.] *Id*. at ¶ 10. Thus, as long as one discrete act falls within the statute of limitations, all preceding acts contributing to the violation may be considered. *Charles v. Regents of New Mexico State Univ.*, 2011-NMCA-057, ¶ 11 (discussing *Ulibarri*).

Here, the alleged misconduct is not limited to a single, discrete act, as in a wrongful termination or unlawful seizure case. Rather, Plaintiffs made attempts throughout D.H.'s children's court case to foster and adopt D.H. These efforts were blocked, with CYFD instead staying the course on its racially motived, non-relative adoption scheme. The cumulative effect of that scheme manifested on December 21, 2021, when D.H.'s adoption was finalized. As the final discrete act in furtherance of the scheme (consenting to D.H.'s non-relative adoption) occurred after December 10, 2021, the entire course of conduct is treated as having occurred within the statute of limitations.

### iv. Equitable tolling applies to Plaintiffs' Section 1983 claim.

As already discussed, the true names of the individual CYFD employees who engaged in racial discrimination are unknown to Plaintiff, and New Mexico law permits them to be sued as Doe Defendants. However, even if Plaintiff was required to identify them by their true names in the Original Complaint, the equitable tolling doctrine provides an additional basis for allowing Plaintiffs' Section 1983 claim to go forwards.

7

"Equitable tolling is a non-statutory tolling principle that provides relief in cases when exceptional circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations." *Little v. Baigas*, 2017-NMCA-027, ¶ 12. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 16.

Here, both requirements are met, and for essentially the same reason: CYFD has repeatedly refused to provide Plaintiffs with *any* information about the specific individuals responsible for the racial discrimination in this case. On January 23, 2023 then-Secretary Vigil sent a letter to Plaintiffs stating that the long delay in responding to Plaintiffs' complaint was "necessitated by the scope of the investigation," (Ex. A at ¶ 45), and that although the allegations were substantiated, CYFD "cannot share the findings with you as those findings are confidential pursuant to NMSA 1978, § 32A-4-33(A)." *Id*. at ¶ 46. Along the same lines, the Inspector General stated in her February 3, 2023 letter to Plaintiffs that while she "cannot disclose the details of the investigation due to confidentiality, I can assure you that all of the information that was collected as part of the investigation has been thoroughly documented." *Id*. at ¶ 47.

The confidentiality statute also prevents Plaintiff from obtaining information through alternate channels, such as the Inspection of Public Records Act. In short, Plaintiff's only avenue for learning the identities of the responsible CYFD employees will be through discovery in this case. However, this case is in its infancy, as CYFD has yet to even file an answer given the pendency of its motion to dismiss.

Plaintiffs complained to CYFD in December 2021, while the misconduct was ongoing. They have not sat passively by while their rights were violated. CYFD may not simultaneously invoke the confidentiality statute as a shield against disclosure, while also wielding Plaintiffs' inability to obtain information as a sword. That is precisely the sort of unfair outcome equitable tolling is designed to prevent.

### E.  Conclusion

For the foregoing reasons Plaintiff's motion should be granted.

**WGLA, LLP**

By:_____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002s

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025, I served the foregoing on Defendant's counsel of record via the Court's efiling system.

*/s/ Benjamin Gubernick*
Benjamin Gubernick

9

# EXHIBIT A

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE**
**SPILLMAN,**
**,**

      **Plaintiffs,**

**v.**                                                                    **No. D-101-CV-2024-002973**

**THE NEW MEXICO CHILDREN, YOUTH**
**& FAMILIES DEPARTMENT, TAMARA**
**LETCHER in her individual capacity,**
**and DOE DEFENDANTS 1-10,**

      **Defendants.**

## [PROPOSED] PLAINTIFFS' SECOND AMENDED COMPLAINT

Valerie Dentman ("Valerie") and Scottie Spillman ("Scottie") (collectively, "Plaintiffs"), through undersigned counsel, complain as follows against the New Mexico Children, Youth & Families Department ("CYFD"), Tamara Letcher ("Letcher"), and Doe Defendants 1-10 ("Doe Defendants") (collectively, "Defendants").

### INTRODUCTION

1. This lawsuit seeks accountability for the systemic, race-based discrimination within CYFD that caused Plaintiffs—who are African-Americans—to be unjustly barred from adopting their grandson, D.H.[1]

2. Despite Plaintiffs' prompt, diligent efforts to become licensed foster parents, and despite CYFD's purported preference for kinship placement, Defendants rigged the process to make sure Plaintiffs' infant relative would be adopted by unrelated, non-black foster parents.

3. On February 3, 2023, CYFD's own Inspector General formally substantiated what Plaintiffs had suspected: Plaintiffs had been the victims of racial discrimination.

---

[1] D.H., a minor, is referred to by his initials in this Complaint.

1

4.      Plaintiffs bring this action pursuant to Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, seeking damages to redress CYFD's violations of federal law and the Equal Protection Clause of the Fourteenth Amendment.

## PARTIES

5.      Plaintiff Valerie Dentman is an African-American citizen of New Mexico. She resides in Curry County.

6.      Plaintiff Scottie Spillman is an African-American citizen of New Mexico. He resides in Curry County.

7.      Defendant New Mexico Children, Youth & Families Department is New Mexico's child protective services agency. It is headquartered in Santa Fe County, New Mexico.

8.      Defendant Tamara Letcher is a former office manager for CYFD's Clovis office. On information and belief she resides in Eddy County, New Mexico. She is sued in her individual capacity.

9.      Doe Defendants 1-10 are CYFD employees who participated in the illegal conduct complained of herein. Plaintiffs will amend this complaint once their names are ascertained.

## JURISDICTION

10.     This Court has jurisdiction because the facts giving rise to Plaintiffs' claims occurred in New Mexico and all parties reside in New Mexico.

11.     Venue is proper because Defendant CYFD is headquartered in Santa Fe County, New Mexico.

## ALLEGATIONS

12.     Valerie and Scottie are married. They have two adult daughters, Jayde Spillman ("Jayde") and Zamuarie Spillman ("Zamuarie").  Valerie, Scottie, Jayde, and Zamuarie are African-American.

13.     D.H.'s father ("Father") and Valerie are cousins, though Valerie is several years older than Father. Valerie raised Father from the age of 16, after Father's mother died and there was not another suitable caregiver.

2

14.    D.H. was born around 2017 to Father and Latoya Gutierrez ("Mother").  This made D.H. Valerie's first cousin, once removed (*i.e.*, one generation removed).  D.H. was the second cousin of Jayde and Zamuarie.

15.    In addition, at the time of D.H.'s birth, due to her long-standing relationship with Father, Valerie effectively acted as D.H.'s grandmother.

16.    Around June 2018, CYFD removed D.H. from where he was living in Curry County, New Mexico, with five half-siblings, all of whom were Mother's children.

17.    Father and D.H. are African-American.

18.    Mother is Hispanic.

19.    D.H.'s half-siblings are all Hispanic.

20.    In October 2018, Jayde sought to obtain a foster parent license, so that D.H. could be placed with her.

21.    CYFD's official policy favors kinship foster placements and adoptions. Empirical evidence also shows that children placed with blood relatives tend to have better outcomes.

22.    D.H.'s five Hispanic half-siblings were all placed with kin.

23.    Jayde passed a background check and home inspection, but the Curry County CYFD office blocked D.H.'s placement with her on vague and frivolous grounds.

24.    At all relevant times, Letcher was the "Office Manager" for CYFD's Curry County office. In that role, she supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions.

25.    On information and belief, Letcher and the Doe Defendants blocked D.H.'s placement with Jayde because they did not want Jayde to be placed with African-Americans.

26.    In January 2019, Valerie and Scottie began the process of obtaining foster parent licenses, in hopes of becoming D.H.'s foster parents and, eventually, adoptive parents.

27.    Letcher assigned a CYFD employee to conduct a home inspection. The inspector stated that a pile of clothes on the floor in Valerie's bedroom would "hold things up" for "six months or more."

3

28. There was clothing on the floor because, on the day of the inspection, Valerie was swapping out her wardrobe due to changing weather.

29. Valerie and Scottie had several minor criminal cases years ago which they fully disclosed. Per CYFD's own guidelines, these cases were not disqualifying. Nonetheless, Letcher and the Doe Defendants used them as a basis to further delay Valerie and Scottie's licensure.

30. On information and belief, Letcher and the Doe Defendants used the pile of clothing and minor criminal cases as pretexts to prevent Valerie and Scottie from fostering D.H., because they did not want D.H. to be placed with African-Americans.

31. In January 2020, Zamaurie applied for a foster parent license so that D.H. could be placed with her.

32. A meeting was held at the Curry County CYFD to discuss placing D.H. with Zamaurie. On information belief, Letcher and the Doe Defendants held the meeting to come up with a pretext for denying Zamaurie's request to foster D.H.

33. Shortly after the meeting, Zamaurie's request to foster D.H. was denied for vague and frivolous reasons.

34. On information and belief, Letcher and the Doe Defendants blocked Zamaurie's efforts to foster D.H. because they did not want D.H. to be placed with African-Americans.

35. In February 2020, Valerie and Scottie's application to be foster parents for D.H. was denied by CYFD. On information and belief, the decision to deny their licenses was made by, or on the recommendation of, Letcher and the Doe Defendants.

36. On December 11, 2020, Valerie and Scottie's administrative appeal was denied. On information and belief, the denial of their application and the appeal denial were racially motivated.

37. In early 2021, Valerie and Scottie applied again to be D.H.'s foster parents. This time, the review process was handled by the Lea County CYFD office, not the Curry County CYFD office.

38. In August 2021, Jayde applied again to be D.H.'s foster parent. However, the Curry County CYFD office stalled and hindered Jayde's application.

4

39.     The Lea County CYFD office moved Valerie and Scottie's application forward without issue. During this process, a Lea County CYFD employee told Valerie and Scottie that the Curry County CYFD office had acted improperly.

40.     In October 2021, Valerie and Scottie were approved as foster parents.

41.     Nonetheless, the Curry County CYFD office continued to insist on non-relative adoption for D.H.

42.     On December 17, 2021, Valerie and Scottie received notice from the Curry County CYFD office that it was going to consent to D.H.'s adoption by non-relatives.

43.     On December 20, 2021, Valerie, through an attorney, sent a complaint to CYFD about how D.H.'s case had been handled. Valerie suspected (though could not confirm) that her family had been targeted for adverse treatment based on their race.

44.     On December 21, 2021, D.H. was approved for non-relative adoption based on the recommendation of the Curry County CYFD office.

45.     On January 25, 2023, CYFD's then-cabinet secretary, Barbara Vigil ("Vigil") sent a letter to Valerie, Scottie, Jayde, and Zamaurie, notifying them that, following an investigation by CYFD's inspector general, systemic reforms were being implemented. Vigil attributed the lengthy delay in responding to the December 20, 2021 complaint was "necessitated by the scope of the investigation[.]"

46.     According to Vigil's letter, these reforms included mandatory "anti-racist" training for 500 CYFD employees. However, Vigil refused to disclose any information about which CYFD employees were specifically responsible for the violation of Plaintiffs' rights. Rather, Vigil insisted that CYFD "cannot share the findings with you as those findings are confidential pursuant to NMSA 1978, § 32A-4-33(A)."

47.     On February 3, 2023, CYFD's inspector general notified Valerie that the inspector general had substantiated Valerie's suspicion of racism at CYFD and racial discrimination against Valerie, Scottie, Jayde, and Zamaurie. The inspector general further stated that while she "cannot

5

disclose the details of the investigation due to confidentiality, I can assure you that all of the information that was collected as part of the investigation has been thoroughly documented."

48.     Defendants' actions have denied Plaintiffs the opportunity to raise D.H., and ensured that he will grow up with non-relative adoptive parents.

## First Cause of Action
### Title VI (c)
### Against CYFD

49.     Plaintiffs incorporate all allegations in this complaint as if fully set forth in this paragraph.

50.     CYFD receives federal funds for its adoption and foster parent programs, and acting through its employees, intentionally discriminated against Plaintiffs based on race in its licensing process and placement decisions, violating § 601 of Title VI.

51.     Plaintiffs seek declaratory relief, compensatory damages, and attorneys' fees under 42 U.S.C. § 1988(b).

## Second Cause of Action
### Equal Protection (42 U.S.C. § 1983)
### Against Letcher and the Doe Defendants

52.     Plaintiffs incorporate all allegations in this complaint as if fully set forth in this paragraph.

53.     Defendants, under color of state law, intentionally treated Plaintiffs less favorably than similarly situated non-Black applicants, lacking any rational or compelling justification, thereby denying equal protection of the laws.

54.     Plaintiffs seek declaratory relief, compensatory damages, and attorneys' fees.

55.     Defendants' actions were reckless or malicious, warranting punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

56.     A judgment requiring Defendants to pay actual damages, as well as reasonable attorney's fees, expenses, and costs of suit.

6

57.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

**WGLA, LLP**

By:_____

Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/26/2025 9:39 AM
KATHLEEN VIGIL CLERK OF THE COURT
Michael A Sena

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                                                                    No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## DEFENDANTS' EMERGENCY MOTION TO EXCEED PAGE LIMITATIONS

Defendants hereby move the Court for leave to exceed the ten (10) page limit for its

Opposition to Plaintiffs' Motion to Amend as set forth in LR1-201. Defendants anticipate that its

Opposition will be a maximum of twenty (20) pages. Plaintiffs have, for the first time in this

matter, made federal civil rights claims that Defendants posit are futile on both statute of

limitations and immunity grounds and requires an extension of page limitations to fully address

the underlying issues. Defendants request Plaintiffs be permitted a similar extension of page

limitations for their Reply in Support of Motion to Dismiss. As such, Plaintiffs will not be

prejudiced by Defendants' request.

Plaintiffs' counsel has been contacted and opposes this Motion.

Therefore, Defendants request that the Court permit Defendants to exceed the page limits

for its Opposition to Plaintiffs' Motion and permit Plaintiffs' a similar extension for their Reply in

Support of Motion to Amend.

Respectfully submitted,

/s/ Melissa Calderon
Melendres & Melendres P.C.
Paul Melendres
Melissa Calderon
Attorneys for Defendants
1017 5th Street NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion along with a copy of this Certificate of Service, were delivered to all counsel of record via the Odyssey E-File and Serve system on the date of filing.

/s/ Melissa Calderon

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
11/30/2025 3:17 PM
KATHLEEN VIGIL CLERK OF THE COURT
Esmeralda Miramontes

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE**
**SPILLMAN,**
,

      **Plaintiffs,**

**v.**                                                      **No. D-101-CV-2024-002973**

**THE NEW MEXICO CHILDREN,**
**YOUTH & FAMILIES DEPARTMENT**
**and DOE DEFENDANTS 1-10,**

      **Defendants.**

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' EMERGENCY MOTION TO EXCEED PAGE LIMITS AND MOTION TO STRIKE DEFENDANTS' OPPOSITION

Plaintiffs Valerie Dentman ("Dentman") and Scottie Spillman ("Spillman") (collectively, "Plaintiffs") respond as follows to the November 26, 2025 emergency motion to exceed page limits filed by the Children, Youth & Families Department ("CYFD") and its Doe Defendant employees (CYFD and the Doe Defendants collectively, "Defendants"). For the following reasons, there is no emergency and no reason to grant CYFD's motion:

1.      On November 13, 2025, Plaintiff motioned the Court for leave to file an amended complaint. Per the rules, Defendants had 15 days to respond. *See* Rule 1.007.1(D). Over the following 13 days, Defendants neither requested additional time to respond nor asked for a page limit extension. On November 26, however, Defendants filed the instant emergency motion to exceed Local Rule 201's page limit by up to 10 additional pages.

2.      Defendants' motion did not identify any emergency. It did not even identify any changed circumstances since Plaintiffs filed their motion for leave to amend.

3.      Indeed, Defendants offered only one argument in favor of their motion: "Defendants posit [the Proposed SAC's claims] are futile on both statute of limitations and

1

immunity grounds and requires an extension of page limitations to fully address the underlying issues." Def. Mot. at 1.

4.     On November 29, 2025, Defendants emailed undersigned counsel a copy of their 17-page response (the "Response") to Plaintiffs' motion. That document is attached as Exhibit A.

5.     Page limitations exist for an important reason. Parties are expected to "weed[] out … weaker issues" from their briefs. *Lukens v. Franco*, 2019-NMSC-002, ¶ 54. Reasonable page limits prevent parties from tossing everything but the kitchen sink into their briefs, and thus "facilitate the opposing party's responses and th[e] court's decision-making process." *State v. Aragon*, 1990-NMCA-001, ¶ 4.

6.     The Response is a textbook example of why this Court limits briefs to 10 pages. Instead of focusing on issues that matter, a quick examination of the Response reveals pages of arguments that should have been left on the cutting room floor.

7.     For example, Defendants argue that CYFD is "clocked with Eleventh Amendment immunity[.]" Def. Mot. at 12-14. But the Eleventh Amendment only constrains "The Judicial power of the United States[.]" U.S. Const. amend. XI. It has no application, at all, in state court lawsuits like this one. *See e.g.*, *Pierce v. San Mateo Cnty. Sheriff's Dep't*, 232 Cal. App. 4th 995, 1001 (2014) ("the Eleventh Amendment applies only in federal court and not in state court"); *Severson v. Bd. of Trs. of Purdue Univ.*, 777 N.E.2d 1181, 1189 (Ind. Ct. App. 2002) ("the Eleventh Amendment does not apply in state courts"). *Texas A & M Univ. v. Thompson*, No. 03-03-00168-CV, 2003 WL 22964277, at *3 (Tex. App. Dec. 18, 2003) ("Because the Eleventh Amendment expressly restrains only '[t]he Judicial power of the *United States*,' however, this state-court suit presents no Eleventh Amendment question." (Emphasis original)).

8.     Defendants should not be granted additional pages just to make frivolous arguments. Accordingly, the Court should deny Defendants' motion, strike the Opposition, and order Defendants to re-file with a document that does not exceed 10 pages.

Respectfully submitted,


**WGLA, LLP**


By:_____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002s


## CERTIFICATE OF SERVICE


I hereby certify that on November 30, 2025, I served the foregoing on Defendant's counsel of record via the Court's efiling system.


*/s/ Benjamin Gubernick*
Benjamin Gubernick

3

# EXHIBIT A

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                                 No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Defendants Children, Youth & Families Department of the State of New Mexico ("CYFD") and Employees Does, (collectively, "Defendants"), through their undersigned counsel, hereby submit their Opposition to Plaintiffs' Motion for Leave to Amend (the "Motion").

## I.      Introduction

Plaintiffs are merely attempting to get an additional bite at the apple, this Motion is untimely and futile. Plaintiffs' Complaint filed December 10, 2024, First Amended Complaint filed January 31, 2025 ("FAC") (collectively the "Complaint"), and Plaintiffs' Proposed Second Amended Complaint filed on November 13, 2025 ("SAC"), are barred by the statute of limitations, the proposed federal claims do not relate back to the Complaint, and the federal claims are barred by on-point immunity defenses. Plaintiffs' state law claims were deemed invalid after the completion of briefing at the motion to dismiss hearing. The SAC's federal claims and new factual allegations are not sufficient to defeat Defendants' statute of limitation arguments. *See* Motion at 1. Indeed, the federal claims alleged in the SAC have already been voluntarily dismissed by Plaintiffs, in federal court earlier this year. *See Spillman et al, v CYFD et al*, 2:25-cv-000651-

1

DLM-GBW.  This Motion is an attempt to circumvent the statute of limitations, will cause undue delay, prejudice to the Defendants and allowing leave to amend would be futile.  The Court should deny the Motion.

## II.      Legal Standard

Pursuant to NMRA 1-015(A), here, Plaintiffs "may amend its pleading **only by leave of court** … and leave shall be freely given when justice requires."  (emphasis added).  However, a court should refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *See Harrison v. Wellpath, LLC*, 2024 U.S. Dist. LEXIS 40509 *8 (March 6, 2024) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)).  Moreover, when insufficiency or futility of the proposed amended pleading is apparent on its face, such motions should be denied.  *See Ruegsegger v. W. NM Univ. Bd. of Regents*, 2007-NMCA-030, ¶12; *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶24; *see also Stinson v. Berry,* 1997-NMCA-76, ¶9, 123 N.M. 482, 485.  Denial is also appropriate "when the party filing the motion has no adequate explanation for the delay." *See id. at *9; *see also Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.1994) ("[U]nexplained delay alone justifies the court's discretionary decision.").  Determining whether to grant leave to amend is wholly within the Court's discretion.

## III.      Legal Argument

### A.  Plaintiffs' First Claim is Barred by the Statute of Limitations

Plaintiffs' claim pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. was filed outside of the three-year statute of limitations period.   Therefore, the claim would have to relate back to the original filing date of the Complaint to be timely.  However,

2

the Complaint was initially filed in violation of the statute of limitations.

Plaintiffs filed the Complaint on December 10, 2024. According to the Complaint, D.H was removed from where he was living in June of 2018. *See* FAC at ¶¶ 15, 17; SAC at ¶16. In January 2019, Plaintiffs began attempting to adopt D.H. *See* FAC at ¶21; SAC at ¶26. In February 2020, Plaintiffs' application to be foster parents was denied. SAC at ¶35. On December 11, 2020, their administrative appeal was denied. SAC at ¶36. Plaintiffs alleged adverse treatment based on their race starting in 2018, and the last allegation of adverse treatment occurred on December 11, 2020. The Complaint was filed on December 10, 2024, four years after their appeal was denied, clearly violating the three-year statute of limitation period.

Therefore, Plaintiffs now allege CYFD's "final discriminatory actions" to defeat Defendants' statute of limitations arguments. *See* Motion at 1. Plaintiffs argue that CYFD's notification on December 17, 2021, of its support for the non-relative adoption for D.H. was a discriminatory act. *See* Motion at 5. Plaintiffs also argue that D.H.'s adoption on December 21, 2021, was approved based on CYFD's racially motivated recommendation. *See id*. Plaintiffs further argue that the cumulative effect of the scheme manifested on December 21, 2021, when D.H.'s adoption was finalized. *See* Motion at 7. Plaintiffs' argument that the adoption was the one discrete act that fell within the statute of limitations, thereby allowing all preceding acts contributing to the violation to be considered is unfounded. *See id.* at 7 (*citing Ulibarri v. State of New Mexico Corr. Acad*., 2006-NMSC-009, 139 N.M. 193, 198) (the Court determined that the last in a series of acts could not in itself contribute to the hostile working environment under NMHRA, finding that summary judgment was proper); (*citing Charles v. Regents of New Mexico State Univ*., 2011-NMCA-057) (discussing retaliation and constructive discharge under NMHRA). Plaintiffs' misinterpretation of the law and stretch of the facts are unpersuasive.

"The proper focus for a Title VI claim is on the time of the alleged discriminatory act, not the point at which the consequences of the act become painful." *See Chardon v. Fernandez,* 454 U.S. 6, 8 (1981). Plaintiffs allege that "CYFD acting through its employees, intentionally discriminated against Plaintiffs based on race in **its licensing process and placement decisions**, violating §601 of Title VI." *See* SAC ¶50 (emphasis added). Neither CYFD's notification of its recommendation, nor D.H.'s adoption are in and of themselves illegal acts. The alleged discriminatory acts against Plaintiffs were the decisions to deny Plaintiffs' application to become foster parents in February 2020, *see* SAC at ¶35, and the denial of their administrative appeal on December 11, 2020. *See* SAC at ¶¶36, 50; *see also Chardon,* 454 U.S. at 8 (The alleged illegal act was racial discrimination in the tenure decision, not the decision to terminate.). The continuity of D.H. being fostered and ultimately adopted by another foster family, without more, is insufficient to prolong the life of a claim for the alleged discrimination in "[CYFD's] licensing and placement decisions." SAC ¶50*; see Chardon,* 454 U.S. at 8 (The "continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination"). Plaintiffs' argument that the statute of limitations began to run on December 17, 2021, or December 21, 2021, is groundless, and a mere baseless attempt to make the Complaint timely.

Moreover, a civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. April 12, 1993). It is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue. *See id.* The Complaint alleges discriminatory actions against Plaintiffs during 2018 through the administrative appeal denial in December of 2020. Indeed, Plaintiffs even sought legal advice and sent a complaint to CYFD alleging racial discrimination on December 21, 2021. *See* SAC at ¶43. Taking the facts alleged in the Complaint as true, the

4

Complaint was not filed until December 10, 2024, four and a half years after their application to be foster parents was denied and four years after their administrative appeal was denied.

The applicable three-year statute of limitations violation is clear on the face of the Complaint. Plaintiffs demonstrated that they were fully aware and able to file a complaint within the statute of limitations period, as they did on December 21, 2021, against CYFD. However, Plaintiffs did not timely file the Complaint. Plaintiffs do not even attempt to argue that equitable tolling applies to their first claim against CYFD.[1] *See* Motion at 7 (arguing only that equitable tolling applies to Plaintiffs' Section 1983 claim). Even if the first claim related back to the date of the Complaint, the Complaint was also filed outside the statutory limitations period, and there is no basis for equitable tolling. Plaintiffs' first claim is barred by the statute of limitations and should be dismissed.

### B. Plaintiffs' Second Claim Does Not Relate Back to the Complaint, Equitable Tolling Does Not Apply and is thus Barred.

Plaintiffs' Motion and SAC were filed outside of the statute of limitations. As such, Plaintiffs may only amend to name Tamara Letcher as a defendant if either: (1) the statute of limitations was equitably tolled; or (2) the claim relates back to a timely filed complaint.[2] However, Plaintiffs cannot satisfy either alternative. Therefore, Plaintiffs' second claim is barred.

#### 1. Equitable Tolling Does Not Apply to Plaintiffs' Section 1983 Claim

In New Mexico, the only applicable tolling statutes that apply are based on minority, incapacity, and equitable grounds. *See R.P. v. Santa Fe Pub. Sch.*, 2020 U.S. Dist. LEXIS 14929, *4 (D.N.M., Jan. 28, 2020). Plaintiffs argue that equitable tolling applies to its Section 1983 claim. *See* Motion at 7. Thus, Plaintiffs bear the burden of establishing a factual basis for such tolling.

---

[1] Plaintiffs alleged that CYFD the entity, acting through its employees, discriminated against them. Thus, there is no excuse for Plaintiffs not filing the Complaint timely against CYFD within the statute of limitations period.
[2] As explained above, even if the second claim related back, the Complaint is barred by the statute of limitations.

The two elements of equitable tolling are: "(1) that [plaintiff] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *See id.*    An extraordinary circumstance is "where a party has '(1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed' and the other party does '(1) not know the real facts, and (2) change[s] his or her position in reliance on the estopped party's representations.'" *See R.P.*, U.S. Dist. LEXIS 14929 at 11; *Lopez v. State*, 1996-NMSC-071, ¶ 18, 122 N.M. 611, 930 P.2d 146). Plaintiffs cannot establish the two elements required for equitable tolling. *See R.P.*, U.S. Dist. LEXIS 14929 at 10.

First, Plaintiffs did not pursue their rights diligently. Plaintiffs had sufficient information, sought legal advice, and sent a complaint to CYFD alleging adverse treatments based on their race in December 2021. *See Baker v. Board of Regents,* 991 F.2d 628, 633 (10th Cir. April 12, 1993). Plaintiffs were provided with additional information on January 25, 2023, and February 3, 2023, however, Plaintiffs still chose not to file the Complaint. Waiting between six and four years from the time of the first alleged instance to the last alleged instance evidences that Plaintiffs were not pursuing their rights diligently. Thus, Plaintiffs failed to satisfy the first requirement for equitable tolling.

Second, there was no extraordinary circumstance that stood in Plaintiffs' way.[3] However, Plaintiffs now argue that CYFD repeatedly refused to provide Plaintiffs with any information about the specific individuals responsible for racial discrimination in this case. *See* Motion at 8. This

---

[3] Plaintiffs did not argue and cannot satisfy the requirement that there was some extraordinary circumstance that stood in their way in filing the Complaint against CYFD during the applicable statute of limitations period. "CYFD has been a named defendant throughout these proceedings." *See* Motion at 6.

6

argument is duplicitous.  Plaintiffs alleged that their home was inspected by and spoke with various employees of CYFD on numerous occasions.  *See* FAC ¶¶23, 24, 25.  Plaintiffs did not name these individual CYFD employees as defendants, nor did they allege that these individuals discriminated against them.  *See* FAC *generally*.   Indeed, the FAC merely states that "multiple CYFD caseworkers informed Plaintiffs about the racial discrimination within the department."  FAC ¶31.  In the Complaint, "Plaintiffs stated that they would move to amend the Complaint to include the identities of Defendants Does once they are ascertained."  FAC ¶7.  However, not until new counsel was engaged and almost a year passed, are Plaintiffs now seeking to include Tamara Letcher as a named defendant in her individual capacity.  *See* Motion at 6 ("The SAC names Tamara Letcher as a defendant because her position as office manager during the relevant period suggests involvement.  However, Plaintiffs do not know whether CYFD's internal investigation found Letcher to be at fault.").  It is disingenuous for Plaintiffs to argue that the only avenue for learning the identities of the responsible CYFD employees will be through discovery in this case.  *See* Motion at 8.  Indeed, Plaintiffs filed a case in federal court naming Tamara Letcher in her individual capacity in June of 2025.  There is no explanation for this delay in seeking to name Tamara Letcher, in her individual capacity.  Plaintiffs have not satisfied the two requirements for equitable tolling.  Thus, it would be inappropriate to toll the limitations period in this case.

### 2.  Plaintiffs' Section 1983 Claim Does Not Relate Back

Plaintiffs have also failed to satisfy the requirements for the relating back statute.  Pursuant to Rule 1-015(C), "[w]hen a party files a motion to amend a pleading after the statute of limitations has run, changing the party against whom a claim is asserted, … the motion relates back to the date of the original pleading if …, the party to be brought in by amendment (a) has received such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the

7

merits; **and** (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." NMRA Rule 1-015(C) (emphasis added).

Identifying Tamara Letcher as a defendant is equivalent to naming a new party. *See Harrison,* at *17 (motion to add six officers as defendants was denied because plaintiff's previously asserted claims against John or Jane Doe employees of Curry County as defendants did not relate back to the original complaint). First, based on the allegations in the Complaint, there is no reason that Tamara Letcher "knew or should have known" that the action would have been brought against her, but for a mistake concerning her identity. *Id. at* *18. Specifically, as in *Harrison*, there are no facts in the Complaint which would alert her that the action would have been filed against her if Plaintiffs had known her name. *See id.* Second, lack of knowledge of the intended defendant is not a mistake. *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see also Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) (precluding the ability to relate back when defendants were not named originally because the plaintiff did not know their identities). Thus, if a plaintiff attempts to add or replace John Doe defendants, the plaintiff cannot rely on "mistake" as a vehicle to relate back to the original pleadings. *George on Behalf of Est. of Bradshaw v. Beaver Cnty. by & Through Beaver Cnty. Bd. of Commissioners*, No. 2:16-CV-1076 TS, 2019 2019 U.S. Dist. LEXIS 5807, WL 181354, at *2 (D. Utah Jan. 11, 2019). John Doe pleading cannot circumvent the statute of limitations. *Id.; see, e.g.*, *Heglund v. Aitkin Cnty.*, 871 F.3d 572 (8th Cir. 2017); *Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013); *Smith v. City of Akron*, 476 F. App'x 67 (6th Cir. 2012); *Herrera v. Cleveland*, 8 F.4th 493 (7th Cir. 2021), cert. denied, 142 S. Ct. 1414, 212 L. Ed. 2d 403 (2022).

8

Plaintiffs argue all CYFD employees should have known that they could be named defendants in Plaintiffs' lawsuit. *See* Motion at 6 ("people who 'act[ed] within the course and scope of their employment with CYFD, and [whose] actions were performed under the authority and direction of the agency.'"). Plaintiffs only support for this argument is *Macias v. Jaramillo*, 2000-NMCA-086. *See* Motion at 6. However, *Macias* is not applicable. In *Macias*, the issue on appeal was whether a plaintiff who files an action seeking recovery against an estate loses her cause of action if she has not joined a duly appointed personal representative of the estate before the statute of limitations has run. *Macias*, 129 N.M. 578, 579. The plaintiff, in *Macias*, named the decedent's sons as personal representatives, after the son told the lawyer that he and his brother were the personal representatives of decedent's estate, even though neither they nor anyone else had been appointed. *See id.*, 129 N.M. at 579-80 (naming the Jaramillos was little different than naming "John Does" in their capacities as personal representatives, knowing that the personal representative of decedent's estate, would shortly and lawfully come into existence). Unlike *Macias*, *Harrison* is directly on point.

Plaintiffs' argument that all CYFD employees should have known they would become defendants in Plaintiffs' lawsuit, cannot be the true intent of the relating back statute. Indeed, courts have found that lack of knowledge of the intended defendant is not a mistake, in the relating back statute. Thus, Plaintiffs cannot satisfy the requirements of Rule 1-015(C)(3) and circumvent the statute of limitations. Therefore, Plaintiffs' second claim does not relate back to the original filing date of the Complaint and is barred by the statute of limitations violation, and Plaintiffs' Motion should be denied.

### C. Plaintiffs Have No Adequate Explanation for the Delay in Filing the Motion.

Plaintiffs have provided no explanation for the delay in filing the Motion. The Court's

denial of the Motion would be appropriate "when the party filing the motion has no adequate explanation for the delay." *See Harrison*, at \*9; ("[U]nexplained delay alone justifies the district court's discretionary decision."). The Motion was filed by new counsel eleven months after the Complaint was filed, entirely changing the claims from state claims to federal claims, after the parties completed briefing of Defendants' motion to dismiss the Complaint, and after Defendants briefed the motion to dismiss Plaintiffs' complaint filed in federal court. This Court would be well within its discretion to deny Plaintiffs Motion for unexplained and undue delay and dilatory motives.

### D. Multiple Immunity Doctrines Bar Plaintiffs' Constitutional Claims.

Despite Plaintiffs' claim that the only outstanding issue from the Motion to Dismiss is CYFD's statute of limitations argument, *see* Motion at 4, the Motion and SAC are futile because multiple immunity doctrines bar Plaintiffs' constitutional claims.

### 1. All the individual Defendants are entitled to qualified immunity regarding the claims against them in their individual capacities.

Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity. *Thomas*, 765 F.3d at 1194. The issue of qualified immunity is a legal issue that is to be decided prior to trial so that the immunity, which is an immunity from suit, is not lost. *Yount v. Millington*, 117 N.M. 95, 98 (Ct. App. 1993). The defendant's conduct as alleged in the complaint is scrutinized for objective legal reasonableness. *See Thomas,* 765 F.3d at 1194 *(citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817-818 (1982); SAC at ¶55 ("Defendants' actions were reckless or malicious, warranting punitive damages"). Generally, public officials performing

10

discretionary functions are shielded from liability for civil damages. *Harlow,* 457 U.S. at 818.

Qualified immunity protects government officials if they violate a plaintiff's federally protected rights, as long as, the official did not violate clearly established law, *see Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987), provided that their actions are objectively reasonable. *See United States v. Lanier,* 520 U.S. 259, 270 (1997). When a defendant asserts qualified immunity, the burden of proving that the public official violated a federally protected right that was clearly established shifts to the plaintiff. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  Plaintiffs must show that the allegedly violated right is not simply a generalized right but is "clearly established in a 'particularized' sense, so that the 'contour of the right' are clear enough for any reasonable official in the [defendant's] position to know that what the official is doing violates that right." *Yount*, 117 N.M. 95 at 102.  To meet this burden Plaintiffs must do more than allege racial discrimination as a broad and general proposition; rather, a plaintiff must point to clearly established law that holds the alleged conduct was unlawful "in light of the specific context of the case, not as a broad general proposition." *Fisher v. City of Las Cruces,* 584 F.3d 888, 900 (10th Cir. 2009).

The Court must also look for plausibility in the complaint, meaning a complaint must include factual allegations sufficient to raise a right to relief above the line of conceivable to plausible. *See Twombly*, 550 U.S. at 570.  Although there is not a heightened pleading standard, when a qualified immunity defense is raised there is a greater likelihood of failure in notice and plausibility because constitutional claims are typically complex claims. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The *Twombly* standard may have greater bite in this context, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.' *Id.*

11

As set forth herein, the SAC does not establish any constitutional violations in a particularized sense, which alone entitles the individual Defendants to qualified immunity. SAC at ¶¶50, 53 ("CYFD … acting through its employees, intentionally discriminated against Plaintiffs based on race in its licensing process and placement decisions" and "[d]efendants, under the color of state law, intentionally treated Plaintiffs less favorably … denying equal protection of the laws"). Further, there is also no clearly established law holding that the conduct allegedly violated Plaintiffs' constitutional rights. For example, the SAC alleges that D.H.'s placement was blocked on frivolous grounds. *See* SAC at ¶23. Plaintiffs allege that Defendant Letcher supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions. *See* SAC at ¶24. Again, the SAC alleged the foster placement was denied for vague and frivolous reasons. *See* SAC at ¶33. The SAC further alleged that criminal cases were used as **a pretext** for preventing foster placement. *See* SAC at ¶30 (emphasis added). Plaintiffs' application to be foster parents was denied. *See* SAC at ¶35. The SAC challenges the denial of Plaintiffs administrative appeal for foster parent licenses and for the non-relative adoption of D.H alleging it was racially motivated. *See* SAC at ¶36. Plaintiffs must do more than allege in a conclusory fashion that their family had been targeted for adverse treatment based on their race, in order to overcome a qualified immunity defense. Plaintiff cannot meet this burden. Therefore, the Court should dismiss the individual capacity claims against Defendant Tamara Fletcher and Defendants Doe 1-10 based on the qualified immunity doctrine.

   **2. CYFD is cloaked with Eleventh Amendment immunity as to the Title VI claim.**

   "The Eleventh Amendment to the United States Constitution provides: '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

12

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Johns v. Steward,* 57 F.3d 1544, 1552 (10th Cir. 1995) (citing U.S. Const. amend. XI). The Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court. *Id.* at 1552 (citing *AMISUB (PSL), Inc. v. State of Colorado Dep't of Soc. Servs.*, 879 F.2d 789, 792 (10th Cir. 1989)). As such, the Eleventh Amendment bars a suit brought in federal court by the citizen of a state against the state or **its agencies**, *id.* at 1552 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (emphasis added), whether the relief sought is legal or equitable. *Id.* at 1552 (citing *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994).

The Eleventh Amendment does not bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law, *Johns,* 57 F.3d at 1552 (citing *Ex parte Young*, 209 U.S. 123, 159-60, (1908). However, the *Ex parte Young* exception only enables federal courts to end continuing violations of federal law by state officials. *See id*. at 1552 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1986)). Here the *Ex parte Young* exception is not applicable because Plaintiffs relief is not being sought for ongoing violations of federal law. Plaintiffs only allege that Defendants past actions that took place during the licensing process in 2018 and 2020 and the non-relative placement decision and adoption in December 2021 violated Plaintiffs' constitutional rights. *See* SAC at ¶¶35, 36, 44. There are no allegations of continuing violations for which Plaintiffs are seeking declaratory relief. Even if the allegations are taken as true, CYFD notified Plaintiffs in 2023 that systemic reforms were being implemented in 2023. *See* SAC at ¶45. Therefore, the *Ex parte Young* exception does not apply.

Moreover, Plaintiffs' prayer for relief seeks actual compensatory damages. *See* SAC at

13

¶¶51, 54.  A suit for retroactive monetary damages brought against a state official in his official capacity or a state agency is a suit against the state because the funds to satisfy the award 'must inevitably come from the general revenues' of the state.  *See Johns,* 57 F.3d at 1553 (citing *Edelman v. Jordan*, 415 U.S. 615, 665 (1974).  The Eleventh Amendment bars: (1) a suit for monetary damages, (2) brought by citizens of a state, (3) against state officials in their official capacities or state agencies (4) in federal court. *See id.*  Therefore, the Eleventh Amendment bars Plaintiffs' claims against CYFD. CYFD has full Eleventh Amendment immunity regarding constitutional claims asserted against it directly.  *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 (1989).  Accordingly, the Court should dismiss with prejudice the entity Defendant CYFD.[4]

**D.  Plaintiffs' First Claim should be dismissed as there is no Vicarious Liability**

In addition to Eleventh Amendment Immunity, CYFD cannot be held liable pursuant to Title VI based on vicarious liability.  The Supreme Court has held that an entity's liability is limited to the entity's own misconduct under Title VI.  *See United States v. Cty. of Maricopa*, 889 F.3d 648, 652 (9th Cir. 2018) (*citing Davis ex rel. LaShonda D. v. Monroe Cnty Bd. of Ed.*, 526 U.S. 629, 640 (1999); *see also, Herrera v. Santa Fe Public Schools,* 41 F. Supp. 3d 1027, 1141 (D.N.M. 2014) ("The Supreme Court has made it clear that there is no respondeat superior liability under 42 U.S.C. § 1983.").  Therefore, Title VI does not allow vicarious liability claims against employers for the acts of their employees.  *See Rodgers v. Smith,* 842 Fed. Appx. 929, 929 (5th Cir. 2021) (*citing Garcia v. Casuas,* 2011 U.S. Dist. LEXIS 153724, at * 97 (D.N.M. Dec. 8, 2011) ("An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.") (*citing Monell v. Dep't of Soc.*

---

[4] There do not appear to be any official capacity claims alleged against the individual Defendant Tamara Fletcher or Doe Defendants, but if any, those should also be dismissed with prejudice.

14

*Servs.,* 436 U.S. 658, 689 (1978)). Plaintiffs one conclusory allegation that CYFD receives federal funds and, acting through its employees, intentionally discriminated against Plaintiffs based on race is an insufficient formulaic recitation of the elements of a claim, *see* SAC ¶50*; see also Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"), and CYFD cannot be held liable solely on the basis of an alleged employee tortfeasor under Title VI.

Accordingly, a governmental entity cannot be constitutionally liable unless the alleged unconstitutional acts result from an official policy, or if an official with power to take corrective measures is deliberately indifferent to known acts of discrimination. *See U.S. v. Cty. of Maricopa*, 889 F.3d at 652; *see also Monell*, 436 U.S. at 694. However, the SAC is devoid of allegations of unconstitutional policies implemented by CYFD, or deliberate indifference by an official. *See Rodgers,* 842 Fed. Appx. at 929 (finding plaintiff failed to allege sufficient facts to support a discrimination claim). Plaintiffs failed to plead any factual allegations demonstrating discriminatory action on the part of CYFD. Therefore, precedent provides authority for the Court to dismiss CYFD with prejudice. Plaintiffs' first claim should be dismissed based on Plaintiffs' violation of the statute of limitations, Defendant CYFD Eleventh Amendment immunity defense, Defendant CYFD's inability to be held vicariously liable on a respondeat superior theory, and for failure to state a claim to relief that is plausible on its face.

**E. Plaintiffs' Second Claim Fails to State a Claim Upon Which Relief Can Be Granted**

In addition to qualified immunity, Defendant Letcher cannot be held liable in her individual capacity under section 1983 based on a violation of equal protection. "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated

15

differently from others who were similarly situated to them." *Sturdivant v. Blue Valley Unified Sch. Dist.,* 2019 U.S. Dist. LEXIS 90205*15 (D. Ct. Kan. May 30, 2019) (*citing Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998)).  Thus, Plaintiffs must allege specific facts that Defendant Letcher treated Plaintiffs differently than other similarly situated individuals. Plaintiffs' one conclusory allegation that they were treated less favorably than similarly situated non-Black applicants is insufficient to rise above the level of speculative.  *See* SAC ¶53; *see also Twombly*, 550 U.S. at 570.  In the absence of any specific allegations of differential treatment, an Equal Protection claim is patently inadequate and is properly dismissed. *Farris v. Stepp*, 2021 U.S. Dist. LEXIS 216297 *35 (November 9, 2021).  Therefore, Plaintiffs' second claim should be dismissed based on Plaintiffs' violation of the statute of limitations, Defendants' qualified immunity defense and for failure to state a claim upon which relief can be granted.

## I.    Conclusion

The Court should deny Plaintiffs' Motion with prejudice based upon the defenses of statute of limitations, unexplained delay and dilatory motives, qualified immunity, Eleventh Amendment immunity, and failure to state a claim upon which relief can be granted. Plaintiffs' claims in the SAC cannot stand as a matter of law. Thus, Plaintiffs' Motion is unduly delayed, insufficient and futile.  For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion, award Defendants' attorneys' fees, and grant such other relief that it deems proper.

Respectfully Submitted,

/s/ Melissa Calderon
Melendres & Melendres P.C.
Paul Melendres
Melissa Calderon
*Attorneys for Defendant CYFD*
1017 5th St NW

16

Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
paul@melendreslaw.com
melissa@melendreslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing OPPOSITION, along

with a copy of this Certificate of Service, were delivered to counsel of record on the ___ day of

November, 2025.

/s/ Melissa Calderon

*Attorneys for Plaintiffs*
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
11/26/2025 10:08 AM
KATHLEEN VIGIL CLERK OF THE COURT
Michael A Sena

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                              No. D-101-CV-2024-02973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## ORDER APPROVING DEFENDANTS'
## MOTION TO EXCEED PAGE LIMITS

THIS MATTER having come before the Court on Defendants' Motion to Exceed Page Limits, the Court having considered the Motion, and being advised in the premises,

IT IS HEREBY ORDERED that Defendant shall be allowed to file a Motion in excess of ten (10) pages but not more than twenty (20).   Plaintiff shall be allowed to file a Response in excess of ten (10) pages but not more than twelve (20) pages.

Date:  11/26/2025 _____        _____

                                 Honorable Bryan Biedscheid
                                 First Judicial District Court Judge

Approved and Submitted by:


/s/ Melissa Calderon
Melendres & Melendres P.C.
Paul Melendres
Melissa Calderon
Attorneys for Defendants
1017 5th St NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
melissa@melendreslaw.com
paul@melendreslaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/1/2025 2:39 PM
KATHLEEN VIGIL CLERK OF THE COURT
Esmeralda Miramontes

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

        Plaintiffs,

v.                             No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

        Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Defendants Children, Youth & Families Department of the State of New Mexico ("CYFD") and Employees Does, (collectively, "Defendants"), through their undersigned counsel, hereby submit their Opposition to Plaintiffs' Motion for Leave to Amend (the "Motion").

## I.      Introduction

Plaintiffs are merely attempting to get an additional bite at the apple, this Motion is untimely and futile. Plaintiffs' Complaint filed December 10, 2024, First Amended Complaint filed January 31, 2025 ("FAC") (collectively the "Complaint"), and Plaintiffs' Proposed Second Amended Complaint filed on November 13, 2025 ("SAC"), are barred by the statute of limitations, the proposed federal claims do not relate back to the Complaint, and the federal claims are barred by on-point immunity defenses. Plaintiffs' state law claims were deemed invalid after the completion of briefing at the motion to dismiss hearing. The SAC's federal claims and new factual allegations are not sufficient to defeat Defendants' statute of limitation arguments. *See* Motion at 1. Indeed, the federal claims alleged in the SAC have already been voluntarily dismissed by Plaintiffs, in federal court earlier this year. *See Spillman et al, v CYFD et al*, 2:25-cv-000651-

1

DLM-GBW.  This Motion is an attempt to circumvent the statute of limitations, will cause undue delay, prejudice to the Defendants and allowing leave to amend would be futile.  The Court should deny the Motion.

## II.    Legal Standard

Pursuant to NMRA 1-015(A), here, Plaintiffs "may amend its pleading **only by leave of court** … and leave shall be freely given when justice requires."  (emphasis added).  However, a court should refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *See Harrison v. Wellpath, LLC*, 2024 U.S. Dist. LEXIS 40509 *8 (March 6, 2024) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010)).  Moreover, when insufficiency or futility of the proposed amended pleading is apparent on its face, such motions should be denied.  *See Ruegsegger v. W. NM Univ. Bd. of Regents*, 2007-NMCA-030, ¶12; *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶24; *see also Stinson v. Berry,* 1997-NMCA-76, ¶9, 123 N.M. 482, 485.  Denial is also appropriate "when the party filing the motion has no adequate explanation for the delay." *See id. at* *9; *see also Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.1994) ("[U]nexplained delay alone justifies the court's discretionary decision.").  Determining whether to grant leave to amend is wholly within the Court's discretion.

## III.    Legal Argument

### A.  Plaintiffs' First Claim is Barred by the Statute of Limitations

Plaintiffs' claim pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. was filed outside of the three-year statute of limitations period.   Therefore, the claim would have to relate back to the original filing date of the Complaint to be timely.  However,

the Complaint was initially filed in violation of the statute of limitations.

Plaintiffs filed the Complaint on December 10, 2024. According to the Complaint, D.H was removed from where he was living in June of 2018. *See* FAC at ¶¶ 15, 17; SAC at ¶16. In January 2019, Plaintiffs began attempting to adopt D.H. *See* FAC at ¶21; SAC at ¶26. In February 2020, Plaintiffs' application to be foster parents was denied. SAC at ¶35. On December 11, 2020, their administrative appeal was denied. SAC at ¶36. Plaintiffs alleged adverse treatment based on their race starting in 2018, and the last allegation of adverse treatment occurred on December 11, 2020. The Complaint was filed on December 10, 2024, four years after their appeal was denied, clearly violating the three-year statute of limitation period.

Therefore, Plaintiffs now allege CYFD's "final discriminatory actions" to defeat Defendants' statute of limitations arguments. *See* Motion at 1. Plaintiffs argue that CYFD's notification on December 17, 2021, of its support for the non-relative adoption for D.H. was a discriminatory act. *See* Motion at 5. Plaintiffs also argue that D.H.'s adoption on December 21, 2021, was approved based on CYFD's racially motivated recommendation. *See id.* Plaintiffs further argue that the cumulative effect of the scheme manifested on December 21, 2021, when D.H.'s adoption was finalized. *See* Motion at 7. Plaintiffs' argument that the adoption was the one discrete act that fell within the statute of limitations, thereby allowing all preceding acts contributing to the violation to be considered is unfounded. *See id.* at 7 (*citing Ulibarri v. State of New Mexico Corr. Acad.*, 2006-NMSC-009, 139 N.M. 193, 198) (the Court determined that the last in a series of acts could not in itself contribute to the hostile working environment under NMHRA, finding that summary judgment was proper); (*citing Charles v. Regents of New Mexico State Univ.*, 2011-NMCA-057) (discussing retaliation and constructive discharge under NMHRA). Plaintiffs' misinterpretation of the law and stretch of the facts are unpersuasive.

3

"The proper focus for a Title VI claim is on the time of the alleged discriminatory act, not the point at which the consequences of the act become painful." *See Chardon v. Fernandez,* 454 U.S. 6, 8 (1981). Plaintiffs allege that "CYFD acting through its employees, intentionally discriminated against Plaintiffs based on race in **its licensing process and placement decisions**, violating §601 of Title VI." *See* SAC ¶50 (emphasis added). Neither CYFD's notification of its recommendation, nor D.H.'s adoption are in and of themselves illegal acts. The alleged discriminatory acts against Plaintiffs were the decisions to deny Plaintiffs' application to become foster parents in February 2020, *see* SAC at ¶35, and the denial of their administrative appeal on December 11, 2020. *See* SAC at ¶¶36, 50; *see also Chardon,* 454 U.S. at 8 (The alleged illegal act was racial discrimination in the tenure decision, not the decision to terminate.). The continuity of D.H. being fostered and ultimately adopted by another foster family, without more, is insufficient to prolong the life of a claim for the alleged discrimination in "[CYFD's] licensing and placement decisions." SAC ¶50*; see Chardon,* 454 U.S. at 8 (The "continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination"). Plaintiffs' argument that the statute of limitations began to run on December 17, 2021, or December 21, 2021, is groundless, and a mere baseless attempt to make the Complaint timely.

Moreover, a civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *See Baker v. Board of Regents*, 991 F.2d 628, 632 (10th Cir. April 12, 1993). It is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue. *See id.* The Complaint alleges discriminatory actions against Plaintiffs during 2018 through the administrative appeal denial in December of 2020. Indeed, Plaintiffs even sought legal advice and sent a complaint to CYFD alleging racial discrimination on December 21, 2021. *See* SAC at ¶43. Taking the facts alleged in the Complaint as true, the

4

Complaint was not filed until December 10, 2024, four and a half years after their application to be foster parents was denied and four years after their administrative appeal was denied.

The applicable three-year statute of limitations violation is clear on the face of the Complaint. Plaintiffs demonstrated that they were fully aware and able to file a complaint within the statute of limitations period, as they did on December 21, 2021, against CYFD. However, Plaintiffs did not timely file the Complaint. Plaintiffs do not even attempt to argue that equitable tolling applies to their first claim against CYFD.[1] *See* Motion at 7 (arguing only that equitable tolling applies to Plaintiffs' Section 1983 claim). Even if the first claim related back to the date of the Complaint, the Complaint was also filed outside the statutory limitations period, and there is no basis for equitable tolling. Plaintiffs' first claim is barred by the statute of limitations and should be dismissed.

### B. Plaintiffs' Second Claim Does Not Relate Back to the Complaint, Equitable Tolling Does Not Apply and is thus Barred.

Plaintiffs' Motion and SAC were filed outside of the statute of limitations. As such, Plaintiffs may only amend to name Tamara Letcher as a defendant if either: (1) the statute of limitations was equitably tolled; or (2) the claim relates back to a timely filed complaint.[2] However, Plaintiffs cannot satisfy either alternative. Therefore, Plaintiffs' second claim is barred.

### 1. Equitable Tolling Does Not Apply to Plaintiffs' Section 1983 Claim

In New Mexico, the only applicable tolling statutes that apply are based on minority, incapacity, and equitable grounds. *See R.P. v. Santa Fe Pub. Sch.*, 2020 U.S. Dist. LEXIS 14929, *4 (D.N.M., Jan. 28, 2020). Plaintiffs argue that equitable tolling applies to its Section 1983 claim. *See* Motion at 7. Thus, Plaintiffs bear the burden of establishing a factual basis for such tolling.

---

[1] Plaintiffs alleged that CYFD the entity, acting through its employees, discriminated against them. Thus, there is no excuse for Plaintiffs not filing the Complaint timely against CYFD within the statute of limitations period.
[2] As explained above, even if the second claim related back, the Complaint is barred by the statute of limitations.

The two elements of equitable tolling are: "(1) that [plaintiff] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *See id.* An extraordinary circumstance is "where a party has '(1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed' and the other party does '(1) not know the real facts, and (2) change[s] his or her position in reliance on the estopped party's representations.'" *See R.P.*, U.S. Dist. LEXIS 14929 at 11; *Lopez v. State*, 1996-NMSC-071, ¶ 18, 122 N.M. 611, 930 P.2d 146). Plaintiffs cannot establish the two elements required for equitable tolling. *See R.P.*, U.S. Dist. LEXIS 14929 at 10.

First, Plaintiffs did not pursue their rights diligently. Plaintiffs had sufficient information, sought legal advice, and sent a complaint to CYFD alleging adverse treatments based on their race in December 2021. *See Baker v. Board of Regents,* 991 F.2d 628, 633 (10th Cir. April 12, 1993). Plaintiffs were provided with additional information on January 25, 2023, and February 3, 2023, however, Plaintiffs still chose not to file the Complaint. Waiting between six and four years from the time of the first alleged instance to the last alleged instance evidences that Plaintiffs were not pursuing their rights diligently. Thus, Plaintiffs failed to satisfy the first requirement for equitable tolling.

Second, there was no extraordinary circumstance that stood in Plaintiffs' way.[3] However, Plaintiffs now argue that CYFD repeatedly refused to provide Plaintiffs with any information about the specific individuals responsible for racial discrimination in this case. *See* Motion at 8. This

---

[3] Plaintiffs did not argue and cannot satisfy the requirement that there was some extraordinary circumstance that stood in their way in filing the Complaint against CYFD during the applicable statute of limitations period. "CYFD has been a named defendant throughout these proceedings." *See* Motion at 6.

6

argument is duplicitous.  Plaintiffs alleged that their home was inspected by and spoke with various employees of CYFD on numerous occasions.  *See* FAC ¶¶23, 24, 25.  Plaintiffs did not name these individual CYFD employees as defendants, nor did they allege that these individuals discriminated against them.  *See* FAC *generally*.    Indeed, the FAC merely states that "multiple CYFD caseworkers informed Plaintiffs about the racial discrimination within the department."  FAC ¶31.  In the Complaint, "Plaintiffs stated that they would move to amend the Complaint to include the identities of Defendants Does once they are ascertained."  FAC ¶7.  However, not until new counsel was engaged and almost a year passed, are Plaintiffs now seeking to include Tamara Letcher as a named defendant in her individual capacity.  *See* Motion at 6 ("The SAC names Tamara Letcher as a defendant because her position as office manager during the relevant period suggests involvement.  However, Plaintiffs do not know whether CYFD's internal investigation found Letcher to be at fault.").  It is disingenuous for Plaintiffs to argue that the only avenue for learning the identities of the responsible CYFD employees will be through discovery in this case.  *See* Motion at 8.  Indeed, Plaintiffs filed a case in federal court naming Tamara Letcher in her individual capacity in June of 2025.  There is no explanation for this delay in seeking to name Tamara Letcher, in her individual capacity.  Plaintiffs have not satisfied the two requirements for equitable tolling.  Thus, it would be inappropriate to toll the limitations period in this case.

### 2.  Plaintiffs' Section 1983 Claim Does Not Relate Back

Plaintiffs have also failed to satisfy the requirements for the relating back statute.  Pursuant to Rule 1-015(C), "[w]hen a party files a motion to amend a pleading after the statute of limitations has run, changing the party against whom a claim is asserted, … the motion relates back to the date of the original pleading if …, the party to be brought in by amendment (a) has received such notice of the institution of the action that it will not be prejudiced in maintaining its defense on the

7

merits; **and** (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it." NMRA Rule 1-015(C) (emphasis added).

Identifying Tamara Letcher as a defendant is equivalent to naming a new party. *See Harrison,* at *17 (motion to add six officers as defendants was denied because plaintiff's previously asserted claims against John or Jane Doe employees of Curry County as defendants did not relate back to the original complaint). First, based on the allegations in the Complaint, there is no reason that Tamara Letcher "knew or should have known" that the action would have been brought against her, but for a mistake concerning her identity. *Id. at* *18. Specifically, as in *Harrison*, there are no facts in the Complaint which would alert her that the action would have been filed against her if Plaintiffs had known her name. *See id.* Second, lack of knowledge of the intended defendant is not a mistake. *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see also Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013) (precluding the ability to relate back when defendants were not named originally because the plaintiff did not know their identities). Thus, if a plaintiff attempts to add or replace John Doe defendants, the plaintiff cannot rely on "mistake" as a vehicle to relate back to the original pleadings. *George on Behalf of Est. of Bradshaw v. Beaver Cnty. by & Through Beaver Cnty. Bd. of Commissioners*, No. 2:16-CV-1076 TS, 2019 2019 U.S. Dist. LEXIS 5807, WL 181354, at *2 (D. Utah Jan. 11, 2019). John Doe pleading cannot circumvent the statute of limitations. *Id.; see, e.g.*, *Heglund v. Aitkin Cnty.*, 871 F.3d 572 (8th Cir. 2017); *Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013); *Smith v. City of Akron*, 476 F. App'x 67 (6th Cir. 2012); *Herrera v. Cleveland*, 8 F.4th 493 (7th Cir. 2021), cert. denied, 142 S. Ct. 1414, 212 L. Ed. 2d 403 (2022).

8

Plaintiffs argue all CYFD employees should have known that they could be named defendants in Plaintiffs' lawsuit. *See* Motion at 6 ("people who 'act[ed] within the course and scope of their employment with CYFD, and [whose] actions were performed under the authority and direction of the agency.'"). Plaintiffs only support for this argument is *Macias v. Jaramillo*, 2000-NMCA-086. *See* Motion at 6. However, *Macias* is not applicable. In *Macias*, the issue on appeal was whether a plaintiff who files an action seeking recovery against an estate loses her cause of action if she has not joined a duly appointed personal representative of the estate before the statute of limitations has run. *Macias*, 129 N.M. 578, 579. The plaintiff, in *Macias*, named the decedent's sons as personal representatives, after the son told the lawyer that he and his brother were the personal representatives of decedent's estate, even though neither they nor anyone else had been appointed. *See id.*, 129 N.M. at 579-80 (naming the Jaramillos was little different than naming "John Does" in their capacities as personal representatives, knowing that the personal representative of decedent's estate, would shortly and lawfully come into existence). Unlike *Macias*, *Harrison* is directly on point.

Plaintiffs' argument that all CYFD employees should have known they would become defendants in Plaintiffs' lawsuit, cannot be the true intent of the relating back statute. Indeed, courts have found that lack of knowledge of the intended defendant is not a mistake, in the relating back statute. Thus, Plaintiffs cannot satisfy the requirements of Rule 1-015(C)(3) and circumvent the statute of limitations. Therefore, Plaintiffs' second claim does not relate back to the original filing date of the Complaint and is barred by the statute of limitations violation, and Plaintiffs' Motion should be denied.

### C. Plaintiffs Have No Adequate Explanation for the Delay in Filing the Motion.

Plaintiffs have provided no explanation for the delay in filing the Motion. The Court's

denial of the Motion would be appropriate "when the party filing the motion has no adequate explanation for the delay." *See Harrison*, at *9; ("[U]nexplained delay alone justifies the district court's discretionary decision."). The Motion was filed by new counsel eleven months after the Complaint was filed, entirely changing the claims from state claims to federal claims, after the parties completed briefing of Defendants' motion to dismiss the Complaint, and after Defendants briefed the motion to dismiss Plaintiffs' complaint filed in federal court. This Court would be well within its discretion to deny Plaintiffs Motion for unexplained and undue delay and dilatory motives.

**D. Multiple Immunity Doctrines Bar Plaintiffs' Constitutional Claims.**

Despite Plaintiffs' claim that the only outstanding issue from the Motion to Dismiss is CYFD's statute of limitations argument, *see* Motion at 4, the Motion and SAC are futile because multiple immunity doctrines bar Plaintiffs' constitutional claims.

**1. All the individual Defendants are entitled to qualified immunity regarding the claims against them in their individual capacities.**

Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity. *Thomas*, 765 F.3d at 1194. The issue of qualified immunity is a legal issue that is to be decided prior to trial so that the immunity, which is an immunity from suit, is not lost. *Yount v. Millington*, 117 N.M. 95, 98 (Ct. App. 1993). The defendant's conduct as alleged in the complaint is scrutinized for objective legal reasonableness. *See Thomas,* 765 F.3d at 1194 *(citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817-818 (1982); SAC at ¶55 ("Defendants' actions were reckless or malicious, warranting punitive damages"). Generally, public officials performing

10

discretionary functions are shielded from liability for civil damages. *Harlow,* 457 U.S. at 818.

Qualified immunity protects government officials if they violate a plaintiff's federally protected rights, as long as, the official did not violate clearly established law, *see Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987), provided that their actions are objectively reasonable. *See United States v. Lanier,* 520 U.S. 259, 270 (1997). When a defendant asserts qualified immunity, the burden of proving that the public official violated a federally protected right that was clearly established shifts to the plaintiff. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Plaintiffs must show that the allegedly violated right is not simply a generalized right but is "clearly established in a 'particularized' sense, so that the 'contour of the right' are clear enough for any reasonable official in the [defendant's] position to know that what the official is doing violates that right." *Yount*, 117 N.M. 95 at 102. To meet this burden Plaintiffs must do more than allege racial discrimination as a broad and general proposition; rather, a plaintiff must point to clearly established law that holds the alleged conduct was unlawful "in light of the specific context of the case, not as a broad general proposition." *Fisher v. City of Las Cruces,* 584 F.3d 888, 900 (10th Cir. 2009).

The Court must also look for plausibility in the complaint, meaning a complaint must include factual allegations sufficient to raise a right to relief above the line of conceivable to plausible. *See Twombly*, 550 U.S. at 570. Although there is not a heightened pleading standard, when a qualified immunity defense is raised there is a greater likelihood of failure in notice and plausibility because constitutional claims are typically complex claims. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The *Twombly* standard may have greater bite in this context, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.' *Id.*

11

As set forth herein, the SAC does not establish any constitutional violations in a particularized sense, which alone entitles the individual Defendants to qualified immunity. SAC at ¶¶50, 53 ("CYFD … acting through its employees, intentionally discriminated against Plaintiffs based on race in its licensing process and placement decisions" and "[d]efendants, under the color of state law, intentionally treated Plaintiffs less favorably … denying equal protection of the laws"). Further, there is also no clearly established law holding that the conduct allegedly violated Plaintiffs' constitutional rights. For example, the SAC alleges that D.H.'s placement was blocked on frivolous grounds. *See* SAC at ¶23. Plaintiffs allege that Defendant Letcher supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions. *See* SAC at ¶24. Again, the SAC alleged the foster placement was denied for vague and frivolous reasons. *See* SAC at ¶33. The SAC further alleged that criminal cases were used as **a pretext** for preventing foster placement. *See* SAC at ¶30 (emphasis added). Plaintiffs' application to be foster parents was denied. *See* SAC at ¶35. The SAC challenges the denial of Plaintiffs administrative appeal for foster parent licenses and for the non-relative adoption of D.H alleging it was racially motivated. *See* SAC at ¶36. Plaintiffs must do more than allege in a conclusory fashion that their family had been targeted for adverse treatment based on their race, in order to overcome a qualified immunity defense. Plaintiff cannot meet this burden. Therefore, the Court should dismiss the individual capacity claims against Defendant Tamara Fletcher and Defendants Doe 1-10 based on the qualified immunity doctrine.

**2. CYFD is cloaked with Eleventh Amendment immunity as to the Title VI claim.**

"The Eleventh Amendment to the United States Constitution provides: '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'" *Johns v. Steward,* 57 F.3d 1544, 1552 (10th Cir. 1995) (citing U.S. Const. amend. XI). The Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court. *Id.* at 1552 (citing *AMISUB (PSL), Inc. v. State of Colorado Dep't of Soc. Servs.*, 879 F.2d 789, 792 (10th Cir. 1989)). As such, the Eleventh Amendment bars a suit brought in federal court by the citizen of a state against the state or **its agencies**, *id.* at 1552 (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (emphasis added), whether the relief sought is legal or equitable. *Id.* at 1552 (citing *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 588 (10th Cir. 1994).

The Eleventh Amendment does not bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law, *Johns,* 57 F.3d at 1552 (citing *Ex parte Young*, 209 U.S. 123, 159-60, (1908). However, the *Ex parte Young* exception only enables federal courts to end continuing violations of federal law by state officials. *See id.* at 1552 (citing *Green v. Mansour*, 474 U.S. 64, 68 (1986)). Here the *Ex parte Young* exception is not applicable because Plaintiffs relief is not being sought for ongoing violations of federal law. Plaintiffs only allege that Defendants past actions that took place during the licensing process in 2018 and 2020 and the non-relative placement decision and adoption in December 2021 violated Plaintiffs' constitutional rights. *See* SAC at ¶¶35, 36, 44. There are no allegations of continuing violations for which Plaintiffs are seeking declaratory relief. Even if the allegations are taken as true, CYFD notified Plaintiffs in 2023 that systemic reforms were being implemented in 2023. *See* SAC at ¶45. Therefore, the *Ex parte Young* exception does not apply.

Moreover, Plaintiffs' prayer for relief seeks actual compensatory damages. *See* SAC at

13

¶¶51, 54.  A suit for retroactive monetary damages brought against a state official in his official capacity or a state agency is a suit against the state because the funds to satisfy the award 'must inevitably come from the general revenues' of the state.  *See Johns,* 57 F.3d at 1553 (citing *Edelman v. Jordan*, 415 U.S. 615, 665 (1974).  The Eleventh Amendment bars: (1) a suit for monetary damages, (2) brought by citizens of a state, (3) against state officials in their official capacities or state agencies (4) in federal court. *See id*.  Therefore, the Eleventh Amendment bars Plaintiffs' claims against CYFD. CYFD has full Eleventh Amendment immunity regarding constitutional claims asserted against it directly.  *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70-71 (1989).  Accordingly, the Court should dismiss with prejudice the entity Defendant CYFD.[4]

**D.  Plaintiffs' First Claim should be dismissed as there is no Vicarious Liability**

In addition to Eleventh Amendment Immunity, CYFD cannot be held liable pursuant to Title VI based on vicarious liability.  The Supreme Court has held that an entity's liability is limited to the entity's own misconduct under Title VI.  *See United States v. Cty. of Maricopa*, 889 F.3d 648, 652 (9th Cir. 2018) (*citing Davis ex rel. LaShonda D. v. Monroe Cnty Bd. of Ed*., 526 U.S. 629, 640 (1999); *see also, Herrera v. Santa Fe Public Schools,* 41 F. Supp. 3d 1027, 1141 (D.N.M. 2014) ("The Supreme Court has made it clear that there is no respondeat superior liability under 42 U.S.C. § 1983.").  Therefore, Title VI does not allow vicarious liability claims against employers for the acts of their employees. *See Rodgers v. Smith,* 842 Fed. Appx. 929, 929 (5th Cir. 2021) (*citing Garcia v. Casuas,* 2011 U.S. Dist. LEXIS 153724, at * 97 (D.N.M. Dec. 8, 2011) ("An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.") (*citing Monell v. Dep't of Soc.*

---

[4] There do not appear to be any official capacity claims alleged against the individual Defendant Tamara Fletcher or Doe Defendants, but if any, those should also be dismissed with prejudice.

14

*Servs.,* 436 U.S. 658, 689 (1978)). Plaintiffs one conclusory allegation that CYFD receives federal funds and, acting through its employees, intentionally discriminated against Plaintiffs based on race is an insufficient formulaic recitation of the elements of a claim, *see* SAC ¶50*; see also Twombly*, 550 U.S. at 555 (*citing Papasan v. Allain,* 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"), and CYFD cannot be held liable solely on the basis of an alleged employee tortfeasor under Title VI.

Accordingly, a governmental entity cannot be constitutionally liable unless the alleged unconstitutional acts result from an official policy, or if an official with power to take corrective measures is deliberately indifferent to known acts of discrimination. *See U.S. v. Cty. of Maricopa*, 889 F.3d at 652; *see also Monell*, 436 U.S. at 694. However, the SAC is devoid of allegations of unconstitutional policies implemented by CYFD, or deliberate indifference by an official. *See Rodgers,* 842 Fed. Appx. at 929 (finding plaintiff failed to allege sufficient facts to support a discrimination claim). Plaintiffs failed to plead any factual allegations demonstrating discriminatory action on the part of CYFD. Therefore, precedent provides authority for the Court to dismiss CYFD with prejudice. Plaintiffs' first claim should be dismissed based on Plaintiffs' violation of the statute of limitations, Defendant CYFD Eleventh Amendment immunity defense, Defendant CYFD's inability to be held vicariously liable on a respondeat superior theory, and for failure to state a claim to relief that is plausible on its face.

**E.    Plaintiffs' Second Claim Fails to State a Claim Upon Which Relief Can Be Granted**

In addition to qualified immunity, Defendant Letcher cannot be held liable in her individual capacity under section 1983 based on a violation of equal protection. "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated

15

differently from others who were similarly situated to them." *Sturdivant v. Blue Valley Unified Sch. Dist.,* 2019 U.S. Dist. LEXIS 90205\*15 (D. Ct. Kan. May 30, 2019) (*citing Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998)).  Thus, Plaintiffs must allege specific facts that Defendant Letcher treated Plaintiffs differently than other similarly situated individuals. Plaintiffs' one conclusory allegation that they were treated less favorably than similarly situated non-Black applicants is insufficient to rise above the level of speculative.  *See* SAC ¶53; *see also Twombly*, 550 U.S. at 570.  In the absence of any specific allegations of differential treatment, an Equal Protection claim is patently inadequate and is properly dismissed. *Farris v. Stepp*, 2021 U.S. Dist. LEXIS 216297 \*35 (November 9, 2021).  Therefore, Plaintiffs' second claim should be dismissed based on Plaintiffs' violation of the statute of limitations, Defendants' qualified immunity defense and for failure to state a claim upon which relief can be granted.

## I.    Conclusion

The Court should deny Plaintiffs' Motion with prejudice based upon the defenses of statute of limitations, unexplained delay and dilatory motives, qualified immunity, Eleventh Amendment immunity, and failure to state a claim upon which relief can be granted. Plaintiffs' claims in the SAC cannot stand as a matter of law. Thus, Plaintiffs' Motion is unduly delayed, insufficient and futile.  For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion, award Defendants' attorneys' fees, and grant such other relief that it deems proper.

Respectfully Submitted,

/s/ Melissa Calderon
Melendres & Melendres P.C.
Paul Melendres
Melissa Calderon
*Attorneys for Defendant CYFD*
1017 5th St NW

Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
paul@melendreslaw.com
melissa@melendreslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing OPPOSITION, along

with a copy of this Certificate of Service, were delivered to counsel of record on the ___ day of

November, 2025.

/s/ Melissa Calderon

*Attorneys for Plaintiffs*
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

17

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/16/2025 6:27 PM
KATHLEEN VIGIL CLERK OF THE COURT
Miquella M Martinez

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN and SCOTTIE
SPILLMAN,
,

      Plaintiffs,

v.                         No. D-101-CV-2024-002973

THE NEW MEXICO CHILDREN,
YOUTH & FAMILIES DEPARTMENT
and DOE DEFENDANTS 1-10,

      Defendants.

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Notwithstanding the 17 pages of objections in Defendants' opposition (the "Opposition" or "Def. Opp."), this is a routine motion. The only issue before the Court is whether Plaintiffs should be permitted to file an amended complaint, and on the liberal standard used in New Mexico courts, the answer to that question is plainly yes. As discussed below, none of Defendants' arguments have merit, so the motion should be granted.

### A. Defendants Fail to Show Undue Prejudice.

As a preliminary matter, the Opposition asserts that amendment will cause "prejudice to the Defendants[,]" (Def. Opp. at 2), yet the brief fails to explain what this purported "prejudice" is, or how it will come to pass. Indeed, the issue is mentioned once in the Opposition's introduction and never revisited. That is far from the showing of "undue prejudice to [the] opposing party" required to bar amendment. *Krieger v. Wilson Corp.*, 2006-NMCA-034, ¶ 24.

### B. Plaintiffs' Title VI Claim Was Filed Within the Statute of Limitations.

The Opposition argues that Plaintiffs' Title VI claim is time barred, but to reach that conclusion CYFD ignores allegations in the complaint and misstates the law.

1

First, the Proposed SAC alleges that the final discriminatory act occurred when CYFD gave its final consent to non-relative adoption for D.H. On December 17, 2021, Plaintiffs were notified that CYFD "was *going to* consent[.]" Proposed SAC at ¶ 42 (emphasis added). D.H.'s adoption was finalized by the Children's Court, on CYFD's recommendation, on December 20, 2021. *Id*. Accepting the Proposed SAC's allegations as true—which the Court must do as this juncture—CYFD's final act in furtherance of its discriminatory scheme occurred no earlier than December 17, 2021. Thus, under the continuing violation doctrine, Plaintiffs' original complaint was filed within the statute of limitations.

But CYFD disagrees. According to the Opposition, the final discriminatory act occurred in February 2020, when CYFD "den[ied] Plaintiffs' application to become foster parents[.]" Def. Mot. at 4. Everything that CYFD did after that, says the Opposition, was just part of "[t]he continuity of D.H. being fostered and ultimately adopted by another foster family[.]" *Id*. In support of its argument, CYFD cites one case: *Chardon v. Fernandez*, 454 U.S. 6 (1981).

But *Chardon* undercuts CYFD's argument. There, the Supreme Court was presented with an employee who was "notified by letter that his appointment would terminate at a specified date[.]" *Id*. at 7. The employee argued that he had been fired in violation of his First Amendment rights, and that the statute of limitations only began to run when the specified termination date arrived. *Id*. The Court disagreed because "there were no … allegations … of illegal acts subsequent to the date on which the decision[] to terminate w[as] made." *Id.* at 8. In the Court's view, the notice effectively switched the employee to a "terminal contract[.]" *Id*. (quotation marks omitted). In other words, the employee's job would automatically end at the date specified in the notice—the employer did not *do anything* after that.

Here, however, CYFD continued to take affirmative, discriminatory actions long after it denied Plaintiffs' foster parent application. The last of those actions occurred between December 17 and 21, 2021, when CYFD consented to D.H.'s adoption by non-Black parents. The application of *Chardon* to these facts is straightforward and supports Plaintiffs' position.

2

The Opposition tries to avoid that result by misrepresenting *Chardon*'s holding. According to CYFD, the Supreme Court actually ruled that the statute of limitations' start date was "*not* the decision to terminate." Def. Mot. at 4 (emphasis added). Instead, according to the Opposition, the clock started to run as soon as "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id*. The Opposition makes that claim even though *Chardon* expressly states the start point was the "date on which the decision[] to terminate w[as] made[.]" 454 U.S. 8.

There is no "acquiescence defense" to racial discrimination. CYFD violated Plaintiffs' rights in 2018, 2019, and 2020 without getting sued, but that ***did not grant CYFD a license to continue racially discriminating against Plaintiffs in 2021***. That the Opposition would even try to convince the Court otherwise is grotesque.

### C. Defendants' Equitable Tolling Arguments Fail.

Next, Defendants contend that Plaintiffs cannot establish the elements for equitable tolling for their Section 1983 claim. The crux of Defendants' argument is that Plaintiffs' 1983 claim should have been filed earlier. But as explained in Plaintiffs' motion, CYFD has shielded the Doe Defendants' identities—how are Plaintiffs supposed to sue people they cannot identify?

Defendants' solution is, apparently, that Plaintiffs should have taken a shotgun approach and sued anyone at CYFD they had any contact with. *See* Def. Mot. at 7 ("Plaintiffs alleged that their home was inspected by and spoke with various employees of CYFD on numerous occasions. …. Plaintiffs did not name these individual CYFD employees as defendants, nor did they allege that these individuals discriminated against them.").

But had Plaintiffs gone that route, they (and their attorneys) would have run headlong into Rule NMRA 1-011, which forbids naming individual defendants without evidentiary support or a good-faith basis to believe evidentiary support will be found in discovery. The law does not force litigants into such Catch-22 situations. Rather, it requires them to do exactly what Plaintiffs did:

sue the entity, plead John Doe defendants, and refrain from naming individuals absent a good-faith factual basis.[1]

The Opposition makes one other argument, which it reserves for a footnote (likely because Defendants know it is wrong). According to Defendants, Plaintiffs "cannot satisfy the requirement that there was some extraordinary circumstance that stood in their way in filing [a Section 1983 claim] *against CYFD* during the applicable statute of limitations period." Def. Mot. at 6 fn. 3 (emphasis added). But an "extraordinary circumstance" does exist: CYFD is not a suable entity under Section 1983. *See Tafoya v. New Mexico*, 517 F. Supp. 3d 1250, 1292 (D.N.M. 2021) ("Tafoya lacks a cause of action to bring a claim under § 1983 … because CYFD is not a 'person' for purposes of § 1983.").

**D. Plaintiffs' Section 1983 Claim Relates Back.**

Defendants spill much ink arguing that NMRA Rule 1-015(C)'s "mistake concerning the identity of the proper party" does not apply to John Doe defendants. However, the "courts [that] have found that lack of knowledge of the intended defendant is not a mistake, in the relating back statute[,]" (Def. Mot. at 9), are federal courts applying Federal Rule of Civil Procedure 15(c). As discussed in Plaintiffs' motion, New Mexico is one of the states that does not follow the federal approach on this issue. *Macias v. Jaramillo*, 2000-NMCA-086, ¶ 30 specifically holds that "a party who participated in conduct described in a complaint should reasonably expect to be named regardless of whether the caption refers to that party as 'John Doe' or as an 'unnamed defendant.'" That precedent is binding on this Court; Defendants' federal precedents are not.

**E. Defendants' "Delay" Arguments Fail.**

The Opposition next accuses of failing to present an "Adequate Explanation" for the "delay" in filing the instant motion. Def. Mot. at 9. But what delay? CYFD has yet to file an answer. Trial is not looming. And in any event, it is axiomatic that "Mere delay, unaccompanied

---

[1] Plaintiffs' current counsel has sued CYFD numerous times and based on that experience knows how the place operates. For that reason, undersigned counsel has a good faith belief that Tamara Letcher, as County Office Manager, bears at least some responsibility. Plaintiffs' previous attorneys lacked that experience.

by actual prejudice, bad faith, or futility, does not justify a denial of leave to amend." *Arkansas-Platte & Gulf P'ship v. Dow Chem. Co.*, 886 F. Supp. 762, 765 (D. Colo. 1995). Defendants have failed to identify any prejudice they will suffer from amendment, and aside from some unprofessional name calling[2] have not alleged bad faith. And for the reasons already discussed, amendment is not futile. So, the motion should be granted.

### F. Qualified Immunity is Not Properly Before the Court.

The Opposition contains a lengthy discussion of qualified immunity but fails to address the elephant in the room: qualified immunity "is an affirmative defense that must be raised *by the party alleging it*." *Gagan v. Norton*, 35 F.3d 1473, 1477 (10th Cir. 1994) (emphasis added). Only "[if the motion for leave to amend is granted … and the [individual] defendants do in fact assert the defense of qualified immunity, … [does the] burden of showing that there was a violation of clearly established legal rights … shift[] to the plaintiff." *Id*. At this juncture, the Opposition is merely speculating that, after amendment, a CYFD employee *might* raise qualified immunity. Given that uncertainty, amendment is, by definition, not futile. *Brown v. Montoya*, 45 F. Supp. 3d 1294, 1298 (D.N.M. 2014) ("The Court cannot make a finding that amending the complaint as to these three individuals would be futile on qualified-immunity grounds unless and until they are added as party Defendants to this action and then they can raise the qualified immunity defense themselves.").

### G. CYFD's Eleventh Amendment Arguments are Frivolous.

CYFD's immunity argument fares no better. The Opposition spends pages arguing that amendment is futile because CYFD is "cloaked with Eleventh Amendment immunity[.]" Def. Mot. at 12. But this is state court; the Eleventh Amendment has no application. *See e.g.*, *Pierce v. San Mateo Cnty. Sheriff's Dep't*, 232 Cal. App. 4th 995, 1001 (2014) ("the Eleventh Amendment applies only in federal court and not in state court"); *Severson v. Bd. of Trs. of Purdue Univ.*, 777 N.E.2d 1181, 1189 (Ind. Ct. App. 2002) ("the Eleventh Amendment does not apply in state courts"). *Texas A & M Univ. v. Thompson*, No. 03-03-00168-CV, 2003 WL 22964277, at *3 (Tex.

---

[2] *See e.g.*, Def. Mot. at 7-8 (accusing undersigned counsel of making "duplicitous" arguments).

5

App. Dec. 18, 2003) ("Because the Eleventh Amendment expressly restrains only '[t]he Judicial power of the *United States*,' however, this state-court suit presents no Eleventh Amendment question." (Emphasis original)).

**H.  Defendants' Vicarious Liability Arguments are Entirely Without Merit.**

The Opposition's "vicarious liability" discussion is likewise a nonstarter. Indeed, it gets pretty much everything wrong.

To start with, Plaintiff's Title VI claim has nothing to do with vicarious liability. That is because, under Title VI, CYFD is *directly* liable. Courts have "unanimously" held "that Title VI suits may only properly be brought against entities that receive federal funds, not against individual employees of such entities." *Sims v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan*., 120 F. Supp. 2d 938, 954 (D. Kan. 2000). Thus, the inquiry is whether *the agency* engaged in intentional discrimination. *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty., OK*, 334 F.3d 928, 929 (10th Cir. 2003).

Here, the Proposed SAC alleges "CYFD receives federal funds for its adoption and foster parent programs, and acting through its employees, intentionally discriminated against Plaintiffs[.]" Proposed SAC at ¶ 50. That is the exact situation Title VI is meant to address. See 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.")

The Opposition goes off the rails because it assumes state agencies cannot act through their employees. As CYFD puts it, "a governmental entity cannot be … liable unless the alleged [illegal] acts result from an official policy, or if an official with power to take corrective measures is deliberately indifferent to known acts of discrimination." Def. Mot. at 15. That contention is unsupported; state agencies act through their employees all the time. *See e.g., Singhas v. New Mexico State Highway Dep't*, 1995-NMCA-089, ¶ 10 (State employees "exercise authority delegated to them by the State as employer."). And as the Supreme Court has reaffirmed time and again, common law agency principles dictate whether an employee was acting in his or

6

her official capacity. *See e.g., Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281–82, 118 S. Ct. 1989, 1995, 141 L. Ed. 2d 277 (1998) ("when a teacher sexually harasses and abuses a student … courts to look to common law agency principles when assessing [the] employer's liability[.]"); *Staub v. Proctor Hosp.*, 562 U.S. 411, 421(2011) ("The employer is at fault because one of its agents committed an action based on discriminatory animus").

Tellingly, the Opposition relies almost entirely on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), a case dealing with municipal liability in Section 1983 cases. Yet as already discussed, while a municipality *can* be a "person" under Section 1983 in limited circumstances, a state agency like CYFD *never is*. In a Section 1983 case, whether a CYFD employee was acting within his or her delegated authority is *relevant only to determining the employee's liability under the statute*. When it comes to Section 1983, the Opposition is correct: CYFD can never face secondary (i.e., vicarious) liability for its employees' actions. But Title VI is the exact opposite—it makes state agencies *directly* liable for intentional discrimination that occurs in "activit[es] receiving Federal financial assistance[.]" 42 U.S.C. § 2000d.

In summary, the Proposed SAC alleges that CYFD receives federal funding for its foster placement and adoption programs. CYFD in turn delegated authority over those activities to employees within the agency. Those employes used that delegated authority to racially discriminate against Plaintiffs. That is state action, so the motion should be granted.

## I. Defendants Plausibility Arguments Fail.

Finally, Defendants contend that Proposed SAC's allegations are "insufficient to rise above the level of speculative." Def. Mot. at 16. A" And are thus subject to dismissal under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). But that makes no sense for multiple reasons.

*First*, Plaintiffs' allegations are not only plausible, but they were in fact substantiated by CYFD. *See* Proposed SAC at ¶ 47. That would survive dismissal even under *Twombly*'s heightened pleading standard.

*Second*, New Mexico is a notice pleading state. *Twombly* has no application here. *Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 16 ("The policy behind notice pleading is to alert

7

potential parties to pending lawsuits, and general allegations of conduct are sufficient." (Quotation marks omitted)).

***Third and finally***, even if the Proposed SAC needs to allege more "specific facts[,]" (Def. Mot. at 16), that does not make amendment futile. As discussed above, Plaintiff's claims are legally cognizable. If they turn out to lack sufficient evidentiary support, Defendants are welcome to move for summary judgment.

### J. Conclusion

For the foregoing reasons the motion should be granted.

Respectfully submitted,

**WGLA, LLP**

By:_____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002s

### CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I served the foregoing on Defendant's counsel of record via the Court's efiling system.

*/s/ Benjamin Gubernick*
Benjamin Gubernick

8

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
12/16/2025 6:27 PM
KATHLEEN VIGIL CLERK OF THE COURT
Miquella M Martinez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE**
**SPILLMAN,**
**,**

      **Plaintiffs,**

**v.**                    **No. D-101-CV-2024-002973**

**THE NEW MEXICO CHILDREN,**
**YOUTH & FAMILIES DEPARTMENT**
**and DOE DEFENDANTS 1-10,**

      **Defendants.**

**NOTICE OF BRIEFING COMPLETION ON PLAINTIFFS'**
**MOTION FOR LEAVE TO AMEND**

Plaintiffs, through undersigned counsel, provide notice that briefing is complete on their

motion for leave to amend.


Respectfully submitted,


**WGLA, LLP**


By:_____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002s

1

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2025, I served the foregoing on Defendant's counsel of record via the Court's efiling system.

*/s/ Benjamin Gubernick*
Benjamin Gubernick

2

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
12/16/2025 6:27 PM
KATHLEEN VIGIL CLERK OF THE COURT
Miquella M Martinez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE**
**SPILLMAN,**
**,**

      **Plaintiffs,**

**v.**                   **No. D-101-CV-2024-002973**

**THE NEW MEXICO CHILDREN,**
**YOUTH & FAMILIES DEPARTMENT**
**and DOE DEFENDANTS 1-10,**

      **Defendants.**

### REQUEST FOR SETTING ON PLAINTIFFS'
### MOTION FOR LEAVE TO AMEND

Plaintiffs, through undersigned counsel, respectfully request that the Court schedule a hearing on their motion for leave to amend. Plaintiffs believe the motion will require 15 minutes to present and argue.

Respectfully submitted,

**WGLA, LLP**

By: _____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002s

1

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, I served the foregoing on Defendant's counsel of record via the Court's efiling system.

*/s/ Benjamin Gubernick*
Benjamin Gubernick

2

FILED  1st JUDICIAL DISTRICT COURT
Santa Fe County
2/27/2026 9:57 AM
KATHLEEN VIGIL CLERK OF THE COURT
Edith Suarez-Munoz

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

VALERIE DENTMAN, SCOTTIE SPILLMAN,

      Plaintiffs,

v.                                No. D-101-CV-2024-002973

CHILDREN, YOUTH, AND FAMILIES DEPARTMENT
OF THE STATE OF NEW MEXICO and EMPLOYEES DOES.

      Defendants.

## <u>NOTICE OF HEARING</u>

A hearing in this case is set before the Honorable Bryan Biedscheid as follows:

Date of Hearing:    <u>April 7, 2026</u>

Time of Hearing:    <u>11:30 am</u>

Length of Hearing:    <u>30 minutes</u>

Place of Hearing:    <u>GoogleMeet[1]</u>

**Remote Access** by Google Meet. The court requires counsel and parties to participate by video at https://meet.google.com/hdc-wqjx-wes

Matter to be Heard:    <u>Plaintiffs' Motion for Leave to Amend</u>

HONORABLE BRYAN BIEDSCHEID
FIRST JUDICIAL DISTRICT COURT JUDGE

By_____
      Monserrath Rodriguez, CCM

NOTICE MAILED OR DELIVERED ON DATE OF FILING TO PARTIES LISTED ON ATTACHED SHEET.

---

[1] If the parties agree that this hearing should take place in person, please email Division 6 and request that the hearing be moved to an in-person hearing.

**PARTIES ENTITLED TO NOTICE**


*Attorney for Plaintiffs*
WEEMS HAZEN LAW
Bridget Hazen
Sarah K. Jaeger
106 Wellesley Dr. SE
Albuquerque, NM 87106
(505) 247-4700
sarah@weemshazenlaw.com


*Attorneys for Defendant CYFD*
Melendres & Melendres P.C.
Melissa Calderon
Paul Melendres
1017 5th St NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
melissa@melendreslaw.com
paul@melendreslaw.com

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
6/29/2026 10:27 AM
KATHLEEN VIGIL CLERK OF THE COURT
Miquella M Martinez

**STATE OF NEW MEXICO**
**COUNTY OF SANTA FE**
**FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE**
**SPILLMAN,**
**,**

      **Plaintiffs,**

**v.**                        **No. D-101-CV-2024-02973**

**THE NEW MEXICO CHILDREN,**
**YOUTH & FAMILIES DEPARTMENT**
**and DOE DEFENDANTS 1-10,**

      **Defendants.**

## ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND

This matter came on for hearing on Plaintiffs' motion for leave to file a second amended complaint. The Court having considered the motion, the opposition, the reply, and all arguments of counsel presented at the hearing, finds the motion is well-taken and will be GRANTED.

IT IS THEREFORE ORDERED that Plaintiffs may file their second amended complaint.

_____
District Court Judge

Submitted by:

/s/ Benjamin Gubernick
Benjamin Gubernick

Attorney for Plaintiffs

Approved as to form by:

/s/ Paul Melendres
Paul Melendres

Attorney for Defendant

1

FILED 1st JUDICIAL DISTRICT COURT
Santa Fe County
7/6/2026 9:35 AM
KATHLEEN VIGIL CLERK OF THE COURT
Michael A Sena

**STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT**

**VALERIE DENTMAN and SCOTTIE
SPILLMAN,
,**

      **Plaintiffs,**

**v.**                    **No. D-101-CV-2024-002973**

**THE NEW MEXICO CHILDREN, YOUTH
& FAMILIES DEPARTMENT, TAMARA
LETCHER in her individual capacity,
and DOE DEFENDANTS 1-10,**

      **Defendants.**

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Valerie Dentman ("Valerie") and Scottie Spillman ("Scottie") (collectively, "Plaintiffs"), through undersigned counsel, complain as follows against the New Mexico Children, Youth & Families Department ("CYFD"), Tamara Letcher ("Letcher"), and Doe Defendants 1-10 ("Doe Defendants") (collectively, "Defendants").

### INTRODUCTION

1.      This lawsuit seeks accountability for the systemic, race-based discrimination within CYFD that caused Plaintiffs—who are African-Americans—to be unjustly barred from adopting their grandson, D.H.[1]

2.      Despite Plaintiffs' prompt, diligent efforts to become licensed foster parents, and despite CYFD's purported preference for kinship placement, Defendants rigged the process to make sure Plaintiffs' infant relative would be adopted by unrelated, non-black foster parents.

3.      On February 3, 2023, CYFD's own Inspector General formally substantiated what Plaintiffs had suspected: Plaintiffs had been the victims of racial discrimination.

---

[1] D.H., a minor, is referred to by his initials in this Complaint.

1

4.      Plaintiffs bring this action pursuant to Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, seeking damages to redress CYFD's violations of federal law and the Equal Protection Clause of the Fourteenth Amendment.

## PARTIES

5.      Plaintiff Valerie Dentman is an African-American citizen of New Mexico. She resides in Curry County.

6.      Plaintiff Scottie Spillman is an African-American citizen of New Mexico. He resides in Curry County.

7.      Defendant New Mexico Children, Youth & Families Department is New Mexico's child protective services agency. It is headquartered in Santa Fe County, New Mexico.

8.      Defendant Tamara Letcher is a former office manager for CYFD's Clovis office. On information and belief she resides in Eddy County, New Mexico. She is sued in her individual capacity.

9.      Doe Defendants 1-10 are CYFD employees who participated in the illegal conduct complained of herein. Plaintiffs will amend this complaint once their names are ascertained.

## JURISDICTION

10.     This Court has jurisdiction because the facts giving rise to Plaintiffs' claims occurred in New Mexico and all parties reside in New Mexico.

11.     Venue is proper because Defendant CYFD is headquartered in Santa Fe County, New Mexico.

## ALLEGATIONS

12.     Valerie and Scottie are married. They have two adult daughters, Jayde Spillman ("Jayde") and Zamuarie Spillman ("Zamuarie"). Valerie, Scottie, Jayde, and Zamuarie are African-American.

13.     D.H.'s father ("Father") and Valerie are cousins, though Valerie is several years older than Father. Valerie raised Father from the age of 16, after Father's mother died and there was not another suitable caregiver.

2

14.     D.H. was born around 2017 to Father and Latoya Gutierrez ("Mother").  This made D.H. Valerie's first cousin, once removed (*i.e.*, one generation removed).  D.H. was the second cousin of Jayde and Zamuarie.

15.     In addition, at the time of D.H.'s birth, due to her long-standing relationship with Father, Valerie effectively acted as D.H.'s grandmother.

16.     Around June 2018, CYFD removed D.H. from where he was living in Curry County, New Mexico, with five half-siblings, all of whom were Mother's children.

17.     Father and D.H. are African-American.

18.     Mother is Hispanic.

19.     D.H.'s half-siblings are all Hispanic.

20.     In October 2018, Jayde sought to obtain a foster parent license, so that D.H. could be placed with her.

21.     CYFD's official policy favors kinship foster placements and adoptions. Empirical evidence also shows that children placed with blood relatives tend to have better outcomes.

22.     D.H.'s five Hispanic half-siblings were all placed with kin.

23.     Jayde passed a background check and home inspection, but the Curry County CYFD office blocked D.H.'s placement with her on vague and frivolous grounds.

24.     At all relevant times, Letcher was the "Office Manager" for CYFD's Curry County office. In that role, she supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions.

25.     On information and belief, Letcher and the Doe Defendants blocked D.H.'s placement with Jayde because they did not want Jayde to be placed with African-Americans.

26.     In January 2019, Valerie and Scottie began the process of obtaining foster parent licenses, in hopes of becoming D.H.'s foster parents and, eventually, adoptive parents.

27.     Letcher assigned a CYFD employee to conduct a home inspection. The inspector stated that a pile of clothes on the floor in Valerie's bedroom would "hold things up" for "six months or more."

3

28.     There was clothing on the floor because, on the day of the inspection, Valerie was swapping out her wardrobe due to changing weather.

29.     Valerie and Scottie had several minor criminal cases years ago which they fully disclosed. Per CYFD's own guidelines, these cases were not disqualifying. Nonetheless, Letcher and the Doe Defendants used them as a basis to further delay Valerie and Scottie's licensure.

30.     On information and belief, Letcher and the Doe Defendants used the pile of clothing and minor criminal cases as pretexts to prevent Valerie and Scottie from fostering D.H., because they did not want D.H. to be placed with African-Americans.

31.     In January 2020, Zamaurie applied for a foster parent license so that D.H. could be placed with her.

32.     A meeting was held at the Curry County CYFD to discuss placing D.H. with Zamaurie. On information belief, Letcher and the Doe Defendants held the meeting to come up with a pretext for denying Zamaurie's request to foster D.H.

33.     Shortly after the meeting, Zamaurie's request to foster D.H. was denied for vague and frivolous reasons.

34.     On information and belief, Letcher and the Doe Defendants blocked Zamaurie's efforts to foster D.H. because they did not want D.H. to be placed with African-Americans.

35.     In February 2020, Valerie and Scottie's application to be foster parents for D.H. was denied by CYFD. On information and belief, the decision to deny their licenses was made by, or on the recommendation of, Letcher and the Doe Defendants.

36.     On December 11, 2020, Valerie and Scottie's administrative appeal was denied. On information and belief, the denial of their application and the appeal denial were racially motivated.

37.     In early 2021, Valerie and Scottie applied again to be D.H.'s foster parents. This time, the review process was handled by the Lea County CYFD office, not the Curry County CYFD office.

38.     In August 2021, Jayde applied again to be D.H.'s foster parent. However, the Curry County CYFD office stalled and hindered Jayde's application.

4

39.     The Lea County CYFD office moved Valerie and Scottie's application forward without issue. During this process, a Lea County CYFD employee told Valerie and Scottie that the Curry County CYFD office had acted improperly.

40.     In October 2021, Valerie and Scottie were approved as foster parents.

41.     Nonetheless, the Curry County CYFD office continued to insist on non-relative adoption for D.H.

42.     On December 17, 2021, Valerie and Scottie received notice from the Curry County CYFD office that it was going to consent to D.H.'s adoption by non-relatives.

43.     On December 20, 2021, Valerie, through an attorney, sent a complaint to CYFD about how D.H.'s case had been handled. Valerie suspected (though could not confirm) that her family had been targeted for adverse treatment based on their race.

44.     On December 21, 2021, D.H. was approved for non-relative adoption based on the recommendation of the Curry County CYFD office.

45.     On January 25, 2023, CYFD's then-cabinet secretary, Barbara Vigil ("Vigil") sent a letter to Valerie, Scottie, Jayde, and Zamaurie, notifying them that, following an investigation by CYFD's inspector general, systemic reforms were being implemented. Vigil attributed the lengthy delay in responding to the December 20, 2021 complaint was "necessitated by the scope of the investigation[.]"

46.     According to Vigil's letter, these reforms included mandatory "anti-racist" training for 500 CYFD employees. However, Vigil refused to disclose any information about which CYFD employees were specifically responsible for the violation of Plaintiffs' rights. Rather, Vigil insisted that CYFD "cannot share the findings with you as those findings are confidential pursuant to NMSA 1978, § 32A-4-33(A)."

47.     On February 3, 2023, CYFD's inspector general notified Valerie that the inspector general had substantiated Valerie's suspicion of racism at CYFD and racial discrimination against Valerie, Scottie, Jayde, and Zamaurie. The inspector general further stated that while she "cannot

5

disclose the details of the investigation due to confidentiality, I can assure you that all of the information that was collected as part of the investigation has been thoroughly documented."

48.     Defendants' actions have denied Plaintiffs the opportunity to raise D.H., and ensured that he will grow up with non-relative adoptive parents.

**First Cause of Action**
**Title VI (c)**
**Against CYFD**

49.     Plaintiffs incorporate all allegations in this complaint as if fully set forth in this paragraph.

50.     CYFD receives federal funds for its adoption and foster parent programs, and acting through its employees, intentionally discriminated against Plaintiffs based on race in its licensing process and placement decisions, violating § 601 of Title VI.

51.     Plaintiffs seek declaratory relief, compensatory damages, and attorneys' fees under 42 U.S.C. § 1988(b).

**Second Cause of Action**
**Equal Protection (42 U.S.C. § 1983)**
**Against Letcher and the Doe Defendants**

52.     Plaintiffs incorporate all allegations in this complaint as if fully set forth in this paragraph.

53.     Defendants, under color of state law, intentionally treated Plaintiffs less favorably than similarly situated non-Black applicants, lacking any rational or compelling justification, thereby denying equal protection of the laws.

54.     Plaintiffs seek declaratory relief, compensatory damages, and attorneys' fees.

55.     Defendants' actions were reckless or malicious, warranting punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

56.     A judgment requiring Defendants to pay actual damages, as well as reasonable attorney's fees, expenses, and costs of suit.

6

57.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

WGLA, LLP


By:_____
Benjamin Gubernick (SBN 145006)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002


## Certificate of Service

I certify the foregoing was served on all attorneys of record via the Court's efiling system.


By:_____
Benjamin Gubernick

7