**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VALERIE DENTMAN, and
SCOTTIE SPILLMAN,

  Plaintiffs,

v.             No. 2:26-cv-02340-DLM-JMR

THE NEW MEXICO CHILDREN, YOUTH
& FAMILIES DEPARTMENT,
TAMARA LETCHER, in her individual capacity,
And DOE DEFENDANTS 1-10,

  Defendants.

**DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants New Mexico Children, Youth & Families Department ("CYFD") and Tamara

Fletcher, (collectively, "Defendants"), through their undersigned counsel, hereby submit their Motion

to Dismiss Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs are

seeking declaratory relief and compensatory damages for CYFD's foster placement in 2018 of

Plaintiff Dentman's infant first cousin, once removed with non-blood relatives.

**I.  Introduction**

Plaintiffs are attempting to circumvent the statute of limitations.  Plaintiffs filed a Complaint

in state court on December 10, 2024, and the First Amended Complaint on January 31, 2025.  After

all of Plaintiffs state law claims were deemed invalid after the completion of briefing at a motion to

dismiss hearing, Plaintiffs then filed the Second Amended Complaint on July 7, 2026, in New Mexico

State Court, alleging two new federal civil rights claims pursuant to 42 U.S.C. § 2000d and 42 U.S.C.

§ 1983.  Plaintiffs' federal claims alleged in the Second Amended Complaint were previously

dismissed by Plaintiffs, in a separate federal court action.  *See Spillman et al, v CYFD et al*, 2:25-cv-

000651-DLM-GBW. The Second Amended Complaint is a futile attempt to relate back to the date of

1

the filing of the initial Complaint in state court with two newly alleged federal claims. Plaintiffs' forum shopping and attempt to circumvent the statute of limitations is disingenuous and a waste of judicial resources. Therefore, the Court should dismiss the Second Amended Complaint with prejudice.

## II.    Legal Standard

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion to dismiss stage, the court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). To survive a motion to dismiss, the Complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Thomas*, 765 F.3d at 1190-1191 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A statute of limitations defense may be appropriately resolved on a Federal Rule of Civil Procedure 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished. *See Kolak v. Backerville*, 2025 U.S. App. LEXIS 10247 (10th Cir. April 29, 2025). No federal statute of limitations is expressly provided for civil rights claims brought under 42 U.S.C. §2000d or 42 U.S.C. § 1983. However, "[t]ypically, federal courts apply 'the state statute of limitations for personal injury claims.'" *Herrera v. City of Espanola*, 32 F.4th 980, 989 (10th Cir. 2022) (the limitations period for Section 1983 claims arising in New Mexico is three years); *see Baker v. Board of Regents*, 991 F.2d 628, 631 (10th Cir. 1993) (Title VI claims are generally characterized as actions for injury to personal rights). Therefore, in New Mexico, the statute of limitations for both Title VI and Section 1983 claims is three years. *See* N.M. Stat. Ann. §37-1-8.

### III.    Legal Argument

**A.    Plaintiffs' Second Amended Complaint Violates the Statute of Limitations.**

Plaintiffs' Second Amended Complaint was filed on July 7, 2026, which was after the three year statute of limitations had run.  Unless the Second Amended Complaint relates back to a timely filed complaint, it is time barred in its entirety.  In order to benefit from the relation back doctrine, the original complaint must have been timely filed. *See* Fed. Rule of Civ. Proc. 15(c); *Henderson v. Boland*, 253 F.3d 928, 931-932 (7th Cir. 2001). "An amended complaint does not relate back to the filing of the original complaint if the original complaint, itself, was filed after the expiration of the statute of limitations." *Id.* (*citing* 51 Am. Jur. 2d Limitation of Actions § 263 (2000)).  As will be fully explained herein, even if the Second Amended Complaint satisfied the requirements to relate back to the Complaint, the initial Complaint was also filed untimely.

**B.    Plaintiffs' First Cause of Action Title VI(c) Against CYFD Should be Dismissed.**

Plaintiffs' first cause of action is barred by the statute of limitations and should be dismissed. The New Mexico state statute of limitations of three years is applied by federal courts for civil rights claims.  *See* N.M. Stat. Ann. §37-1-8. However, federal law controls questions relating to accrual of federal claims. *See Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir. 1987).  Under federal law, a civil rights action accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated," *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998); *Baker*, 991 F.2d at 632, even if the full extent of the injury is not then known or predictable, *see Dirickson v. Bd of Cnty. Comm'rs of the Cnty. Of Otero*, 2026 U.S. Dist. LEXIS 34896 *16 (D. N.M. Ct. February 20, 2026), "or when the plaintiff's right to resort to federal court was perfected." *Herrera*, 32 F.4th at 990. Indeed, it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue. *See Baker*, 991 F.2d at 632.

**1.   Plaintiffs' First Cause of Action Violates the Three Year Statute of Limitations.**

Plaintiffs' first cause of action pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. alleges that "CYFD … acting through its employees, intentionally discriminated against Plaintiffs based on race in **its licensing process and placement decisions**, violating §601 of Title VI." *See* SAC ¶50 (emphasis added).  D.H was a couple of months old when he was removed and placed with a foster family in June of 2018.  Complaint ¶¶16, 17; SAC at ¶16.  In January 2019, Plaintiffs began the process of obtaining foster parent licenses.  SAC at ¶26.  Plaintiffs alleged that the state of the home and several "minor criminal cases" were used as pretexts to prevent Plaintiffs from fostering D.H.  SAC at ¶30.  Plaintiffs further allege that CYFD did not want D.H. to be placed with African-Americans.  SAC ¶30.  Thus, Plaintiffs allege that adverse treatment based on their race began in 2019.  *See* SAC ¶30.  Plaintiffs allege that throughout the process of Plaintiffs attempting to become D.H.'s foster parents, Plaintiff Dentman contacted at least four Defendant CYFD Lea and Curry County employees and put them on notice of allegations of discriminatory conduct.  Complaint ¶35. Plaintiffs' application to be foster parents was denied in February of 2020, and their administrative appeal was denied on December 11, 2020. SAC at ¶¶35, 36. According to Plaintiffs' first cause of action, the alleged discriminatory acts by CYFD were the removal and placement of D.H. with non-blood relatives in June of 2018, the decision to deny Plaintiffs foster parent licenses in February of 2020, and the denial of their administrative appeal on December 11, 2020. *See* SAC at ¶¶16, 35, 36, 50.

Therefore, the cause of action accrued:  either (1) when the Plaintiffs knew their constitutional rights had been violated during the licensing process and they put CYFD on notice of allegations of discriminatory conduct; or (2) when their administrative appeal was denied on December 11, 2020. *See Baker*, 991 F.2d at 632 (concluding that the appellant knew or had reason to know of the injury

in early February when his application for admission had been rejected).  However, despite seeking legal advice and sending a compliant to CYFD in December of 2021, Plaintiffs did not file the Complaint at issue until December 10, 2024.  Taking the facts alleged in the Second Amended Complaint as true, the Complaint was filed at least four years after the Plaintiffs knew of the alleged adverse treatment violating the statute of limitations.

**2.    Principles of Equity Do Not Salvage Plaintiffs' First Cause of Action.**

Equity aids the vigilant, not the indolent.  This Court should not be persuaded by principles of equity in this case.  The dates given in the Complaint and Second Amended Compliant make clear that the rights sued upon have been extinguished.  Any attempt to argue that Plaintiffs did not know or should not have known of the violation of their constitutional rights is belied by the factual allegations on the face of the Complaint.  The party seeking tolling bears the burden of showing that he is entitled to such relief.  *Dirickson*, 2026 U.S. Dist. LEXIS 34896 at *24.  Plaintiffs bear the burden of establishing a factual basis for the use of any equitable grounds to "toll" the three year statute of limitations.  As will be discussed below, Plaintiffs cannot meet their burden.

**a.  Equitable Tolling of the Statute of Limitations for Plaintiffs is Unfounded.**

The length of the statute of limitations period and related questions of tolling and application are governed by state law.  *Baker*, 991 F.2d at 632-33.  In New Mexico, the only applicable tolling statutes that apply are based on minority, incapacity, and equitable grounds. *See R.P. v. Santa Fe Pub. Sch.*, 2020 U.S. Dist. LEXIS 14929, *4 (D.N.M., Jan. 28, 2020) (citing *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212-13 (10th Cir. 2014).  Plaintiffs have no grounds for tolling the statute of limitations based on minority, incapacity or equity.

Plaintiffs were neither minors nor incapacitated.  Furthermore, Plaintiffs cannot establish the two elements required for equitable tolling.  *See R.P. v. Santa Fe Pub. Sch.*, 2020 U.S. Dist. LEXIS 14929, *10 (D.N.M., Jan. 28, 2020). The two elements of equitable tolling are: "(1) that [plaintiff]

has been pursuing his rights **diligently**, and (2) that some **extraordinary circumstance** stood in his way", "which prevented [plaintiff] from filing suit '**throughout the entire length of the statutory period**.' *See R.P.,* 2020 U.S. Dist. LEXIS 14929, *10 (*citing Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (*citing Dirickson*, 2026 U.S. Dist. LEXIS 34896 at *25) (emphasis added).   An extraordinary circumstance is "where a party has '(1) made a statement or action that amounted to a false representation or concealment of material facts, or intended to convey facts that are inconsistent with those a party subsequently attempts to assert, with (2) the intent to deceive the other party, and (3) knowledge of the real facts other than conveyed' and the other party does '(1) not know the real facts, and (2) change[s] his or her position in reliance on the estopped party's representations.'" *See R.P.*, 2020 U.S. Dist. LEXIS 14929, *11 (*citing Blea*, 2005-NMSC-029 ¶20); *Lopez v. State*, 1996-NMSC-071, ¶18.

The Complaint demonstrates that Plaintiffs have not pursued their rights diligently or that there was an extraordinary circumstance standing in their way which prevented Plaintiffs from filing suit throughout the entire length of the statutory period.  Plaintiffs allege that throughout the process of Plaintiffs attempting to become D.H.'s foster parents in 2019 and 2020, Plaintiff Dentman contacted at least four Defendant CYFD Lea and Curry County employees and put them on notice of allegations of discriminatory conduct.  Complaint ¶35.  Plaintiffs' application to be foster parents was denied in February of 2020, and their administrative appeal was denied on December 11, 2020. SAC at ¶¶35, 36.  Plaintiffs even sought legal advice and on December 20, 2021, sent a complaint to CYFD alleging adverse treatments based on their race. *See Baker,* 991 F.2d at 633 (*citing Blumberg v. HCA Management Co*., 848 F.2d 642, 645 (5th Cir. 1988), cert. denied, 488 U.S. 1007, 102 L. Ed. 2d 781, 109 S. Ct. 789 (1989)).  There was no extraordinary circumstance that stood in their way preventing them from filing throughout the entire length of the statutory period.

6

Plaintiffs also allege that they were informed on January 25, 2023, of an investigation, and on February 3, 2023, notified of a suspicion of racism. SAC at ¶¶45, 47. These facts only further demonstrate that the Plaintiffs knew or had reason to know of the injury which formed the basis for this action, within the statute of limitations period, and did not diligently pursue their rights. Plaintiffs had the information, sought legal advice, and had the ability to bring a civil rights action within the three year statute of limitation period, but Plaintiffs chose not to. Plaintiffs cannot meet their burden for equitable tolling of the statute of limitations.

### b. Neither the Continuing Violation Doctrine nor the Repeated Violation Doctrine Apply.

Neither the continuing violation doctrine nor the repeated violation doctrine are applicable to save Plaintiffs' first cause of action from violating the statute of limitations. The continuing violation doctrine is an "equitable principle." *Herrera*, 32 F.4th at 993 (*citing Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 2022). The repeated violation doctrine is just a variation on the continuing violation doctrine. *See id*. at 995.

First, "the continuing violation doctrine applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act, as opposed to conduct that is a discrete unlawful act." *See Dirickson*, 2026 U.S. Dist. LEXIS 34896 at *18; *Herrera*, 32 F.4th at 993. Under this doctrine, a claim accrues on the date the last act in the series of unlawful acts occurred. *See id.* The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as **an injurious act falls within the statute of limitations period**. *See Burkley v. Corr. Healthcare Mgmt. of Oklahoma, Inc.*, 141 F. App'x 714, 716 (10th Cir. 2005). Thus, the only way to trigger the continuing violation doctrine is by continual unlawful acts, not by continual ill effects from the original violation. *Herrera*, 32 F.4th at 993.

Second, "[t]he repeated violation doctrine: 'divides what might otherwise represent a single, time-barred cause of action into several separate claims, at least one of which accrues within the limitations period prior to suit.' That division, in turn, 'allows recovery for only that part of the injury the plaintiff suffered during the limitations period'; recovery for the part of the injury suffered outside of the limitations period, however, remains unavailable." *Herrera*, 32 F.4th at 995. In order "[t]o invoke the repeated violation doctrine, a plaintiff must identify a discrete injurious act occurring within the statute of limitations period and not just the continuing effect of, or continuing harm from, a discrete act that occurred outside the limitations period. *Herrera*, 32 F.4th at 995. Under the repeated violation doctrine, each new violation restarts the statute of limitations, but damages are available only for the violations occurring within that limitations period. *See id.*

Plaintiffs attempt to salvage their first cause of action by alleging the adoption of D.H. by Clovis Children's Court on December 21, 2021, or the notification to Plaintiffs on December 17, 2021, are separate unlawful acts. However, neither CYFD's notification to Plaintiffs, nor D.H.'s adoption were in and of themselves unlawful acts. The adoption of D.H. was not even an "act" by CYFD, and mere notification by CYFD cannot be an unlawful act.

As such, in both instances, neither the continuing violation doctrine nor the repeated violation doctrine are triggered by the Plaintiffs alleged continual ill effects from the original alleged violation of the placement of D.H. in 2018 or the denial of Plaintiffs application and administrative appeal in 2020. "[O]therwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of [limitations] in the sole hands of the party seeking relief." *See Dirickson*, 2026 U.S. Dist. LEXIS 34896 at *16 ("to the extent that [p]laintiff continued to suffer ill effects from Defendants' deliberate indifference to his gunshot wound through and beyond November 2020, this does not change the date on which his claims accrued.") (citing *Smith*, 149 F.3d at 1154. Moreover, the continuity of D.H.'s placement and adoption by his foster

family, without more, is insufficient to prolong the life of a claim for the alleged discrimination in "[CYFD's] licensing process and placement decisions."  SAC ¶50*; see Chardon v. Fernandez,* 454 U.S. 6, 8 (1981) ("continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination").

The Supreme Court in *Delaware State College v. Ricks*, 449 U.S.250 (1980) rejected a similar argument concluding that the cause of action had accrued when the plaintiff was notified of the denial of tenure not when he left the university. *See Chardon,* 454 U.S. at 11-12 (dissenting opinion). The Court held that the denial of tenure was the 'unlawful employment practice', and that the date of that action was therefore the beginning of the limitations period. *See id*. The Court found that the complaint was based on the denial of tenure, which was effective immediately; it followed, therefore, that the limitations period began as soon as plaintiff received notice of that action. *See id.*  Similarly, the alleged discriminatory acts are CYFD's licensing process and placement decisions in 2018 and the denial of Plaintiffs' application to be foster parents and their administrative appeal in 2020. Therefore, none of these equitable doctrines are applicable.

Under the applicable federal law to determine accrual of a cause of action, the Complaint was filed outside the statutory limitations period.  Plaintiffs cannot meet their burden for equitable tolling. Therefore, Plaintiffs' first cause of action is barred by the statute of limitations and should be dismissed.

    **C. Plaintiffs' Second Cause of Action Equal Protection (42 U.S.C. § 1983) Against Letcher and the Doe Defendants Should be Dismissed.**

        **1. Plaintiffs' Second Cause of Action Does Not Relate Back to the Complaint, and is thus Time Barred Against Letcher.**

When a plaintiff brings a Section 1983 claim against multiple defendants, the analysis for determining when the Plaintiffs' claim accrued as to each of those defendants is an individualized one.  *See Est. of Roemer v. Johnson*, 764 F. App'x 784, 792 (10th Cir. 2019). Plaintiffs' second

cause of action pursuant to 42 U.S.C. § 1983 alleges that "Defendants, under color of state law, intentionally treated Plaintiffs less favorably than similarly situated non-Black applicants, lacking any rational or compelling justification, thereby denying equal protection of the law." SAC ¶53. Plaintiffs are now seeking to add Tamara Letcher as a named defendant in her individual capacity, SAC ¶8, as a former office manager for CYFD's Clovis Office.  Plaintiffs allege that she supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions. SAC ¶¶8, 24. Ms. Tamara Letcher was not named as a defendant until July 7, 2026. Therefore, Ms. Letcher was not named as a defendant in this matter before the three year statute of limitations had run, and the claim against her is barred unless Plaintiffs' second cause of action relates back to a timely filed complaint.

Federal Rule of Civil Procedure 15(c) provides that "an amendment that adds a new party relates back to the complaint when the party to be brought in by amendment '(1) received such notice of the action such that it will not be prejudiced in defending on the merits; and (2) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Marquez-Duran v. Salt Lake Cnty.*, 2025 U.S. Dist. LEXIS 106084 *8.  (D. Utah June 3, 2025).  "Rule 15(c)(1)(C)(ii) asks what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing her original complaint." *Id.*

Identifying Tamara Letcher as a defendant is equivalent to naming a new party.  *See Harrison v. Wellpath, LLC.*, 2024 U.S. Dist. LEXIS 40509 at *17 (D. N.M. March 6, 2024) (motion to add six officers as defendants was denied because plaintiff's previously asserted claims against John or Jane Doe employees of Curry County as defendants did not relate back to the original complaint).  The 'substitution of named defendants for the original unknown "John Doe" defendants amount[s] to adding a new party. . . Thus, all requirements of Rule 15(c)(3) must be met in order for [plaintiff's]

10

amended pleadings to relate back to the date of the original." *Marquez-Duran*, 2025 U.S. Dist. LEXIS 106084 at *8.   "[A] 'plaintiff's designation of an unknown defendant. . . in the original complaint is not a formal defect of the type [the rule] was meant to address,' and a later amendment that specifically names that defendant does not relate back to the original complaint." *Id*. at *8-9.

First, based on the allegations in the Complaint, there is no reason that Tamara Letcher "knew or should have known" that the action would have been brought against her, but for a mistake concerning her identity. *Harrison at* *18.   Specifically, as in *Harrison*, there are no facts in the Complaint which would alert her that the action would have been filed against her if Plaintiffs had known her name.   *See id*; *see also Marquez-Duran*, 2025 U.S. Dist. LEXIS 106084 at *10 (finding where the complaint named Salt Lake County and unknown jail staff as defendants, defendants were not on notice that the claims should have been brought against them, but for a mistake about their identity). Moreover, naming an employer as a defendant does not put individual employees on notice that, but for a mistake in their identity, the action would have been brought against them. *Marquez-Duran*, 2025 U.S. Dist. LEXIS 106084 at *10 (*citing Trujillo v. City & Cnty. Of Denver*, 2016 U.S. Dist. LEXIS 175388 *8 (D. Colo September 7, 2016) (holding that possible "talk around the jail about the suit," with nothing else showing that the added defendants knew of the suit, was insufficient to put added defendants on notice).

Second, lack of knowledge of the intended defendant is not a mistake. *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004); *see also Hogan v. Fischer,* 738 F.3d 509 (2d Cir. 2013) (precluding the ability to relate back when defendants were not named originally because the plaintiff did not know their identities).   Thus, if a plaintiff attempts to add or replace John Doe defendants, the plaintiff cannot rely on "mistake" as a vehicle to relate back to the original pleadings. *George on Behalf of Est. of Bradshaw v. Beaver Cnty. by & Through Beaver Cnty. of Commissioners*, 2019 U.S. Dist. LEXIS 5807 *2 (D. Utah January 11, 2019). John Doe pleading cannot circumvent the statute of

11

limitations.  *Id.; see, e.g.*, *Hegland v. Aitkin Cnty.*, 871 F.3d 572 (8th Cir. 2017); *Hogan v. Fischer*, 738 F.3d 509 (2d Cir. 2013); *Smith v. City Akron*, 476 F. App'x 67 (6th Cir. 2012); *Herrera v. Cleveland*, 8 F.4th 493 (7th Cir. 2021), cert denied, 142 S. Ct. 1414 (2022).

Therefore, Plaintiffs' second cause of action against Defendant Letcher does not relate back to the original filing date of the Complaint and is barred by the statute of limitations violation.

**2.  The individual Defendants are entitled to qualified immunity regarding the claims against them in their individual capacities.**

Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss on the basis of qualified immunity.  *Thomas*, 765 F.3d at 1194.  The issue of qualified immunity is a legal issue that is to be decided prior to trial so that the immunity, which is an immunity from suit, is not lost.  *Yount v. Millington*, 117 N.M. 95, 98 (Ct. App. 1993).  The defendant's conduct as alleged in the complaint is scrutinized for objective legal reasonableness.  *See Thomas,* 765 F.3d at 1194 *(citing Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).  Bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.  *See Harlow v. Fitzgerald,* 457 U.S. 800, 817-818 (1982); SAC at ¶55 ("Defendants' actions were reckless or malicious, warranting punitive damages"). Generally, public officials performing discretionary functions are shielded from liability for civil damages.  *Harlow,* 457 U.S. at 818.

Qualified immunity protects government officials if they violate a plaintiff's federally protected rights, as long as, the official did not violate clearly established law, *see Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987), provided that their actions are objectively reasonable. *See United States v. Lanier,* 520 U.S. 259, 270 (1997). When a defendant asserts qualified immunity, the burden of proving that the public official violated a federally protected right that was clearly established shifts to the plaintiff.  *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Plaintiffs must show that the allegedly violated right is not simply a generalized right but is "clearly

12

established in a 'particularized' sense, so that the 'contour of the right' are clear enough for any reasonable official in the [defendant's] position to know that what the official is doing violates that right." *Yount*, 117 N.M. 95 at 102.  To meet this burden Plaintiffs must do more than allege racial discrimination as a broad and general proposition; rather, a plaintiff must point to clearly established law that holds the alleged conduct was unlawful "in light of the specific context of the case, not as a broad general proposition." *Fisher v. City of Las Cruces,* 584 F.3d 888, 900 (10th Cir. 2009).

The Court must also look for plausibility in the complaint, meaning a complaint must include factual allegations sufficient to raise a right to relief above the line of conceivable to plausible. *See Twombly*, 550 U.S. at 570.  Although there is not a heightened pleading standard, when a qualified immunity defense is raised there is a greater likelihood of failure in notice and plausibility because constitutional claims are typically complex claims. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The *Twombly* standard may have greater bite in this context, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity 'at the earliest possible stage of a litigation.' *Id.*

As set forth herein, the Complaint does not establish any constitutional violations in a particularized sense, which alone entitles the individual Defendants to qualified immunity.  SAC at ¶¶53 ("Defendants, under the color of state law, intentionally treated Plaintiffs less favorably … denying equal protection of the laws").  Further, there is also no clearly established law holding that the conduct allegedly violated Plaintiffs' constitutional rights. Plaintiffs allege that Defendant Letcher supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions.  *See* SAC at ¶24.  The Complaint further alleged that the state of the home of Plaintiffs, and Plaintiffs "minor criminal cases" were used as **a pretext** for preventing foster placement.  *See* SAC at ¶30.  Plaintiffs' application to be foster parents was denied and the

denial of their administrative appeal for foster parent licenses as racially motivated. SAC at ¶¶35, 36. Plaintiffs allege that the non-relative adoption of D.H was approved based on the Defendants' recommendation.  SAC at ¶44. Plaintiffs must do more than allege in a conclusory fashion that they had been targeted for adverse treatment based on their race, in order to overcome a qualified immunity defense. Plaintiff cannot meet this burden. Therefore, the Court should dismiss the individual capacity claims against Defendant Tamara Fletcher and Defendants Doe 1-10 based on the qualified immunity doctrine.

**3.    Plaintiffs' Second Cause of Action: Equal Protection (42 U.S.C. § 1983) Against Letcher and the Doe Defendant fails to state a claim upon which relief may be granted.**

In addition to qualified immunity, Defendant Letcher cannot be held liable in her individual capacity under section 1983 based on a violation of equal protection. "In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Sturdivant v. Blue Valley Unified Sch. Dist.,* 2019 U.S. Dist. LEXIS 90205 at *15 (D. Ct. Kan. May 30, 2019) (*citing Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998)).  Thus, Plaintiffs must allege specific facts that Defendant Letcher treated Plaintiffs differently than other similarly situated individuals.  Plaintiffs' one conclusory allegation that they were treated less favorably than similarly situated non-Black applicants is insufficient to rise above the level of speculative.  *See* SAC ¶53; *see also Twombly*, 550 U.S. at 570.  In the absence of any specific allegations of differential treatment, an Equal Protection claim is patently inadequate and is properly dismissed. *Farris v. Stepp*, 2021 U.S. Dist. LEXIS 216297 *35 (November 9, 2021) (*citing Matelsky v. Gunn*, 15 F.App'x 686, 689 (10th Cir. 2001)).  Therefore, Plaintiffs' second cause of action should be dismissed based on Plaintiffs violation of the statute of limitations, Defendants qualified immunity defense and for failure to state a claim upon which relief can be granted.

## IV.    Conclusion

14

The Court should dismiss with prejudice all claims based upon the defenses of statute of limitations, qualified immunity, and failure to state a claim. Plaintiffs' claims in the Complaint cannot stand as a matter of law.  Therefore, for all of the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss Plaintiffs' Second Amended Complaint, award Defendants' attorneys' fees, and grant such other relief that it deems proper.

Respectfully submitted,

Melendres & Melendres P.C.
Attorneys for Defendants

/s/ Paul Melendres, Attorney at Law
1017 5th Street NW
Albuquerque, NM  87102
(505) 243-8310 / fax 243-9271
paul@melendreslaw.com

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 27, 2026, the foregoing Motion to Dismiss was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Melendres & Melendres P.C.


By____/s/ Paul Melendres, Attorney at Law_____
        Paul Melendres