**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**VALERIE DENTMAN and**
**SCOTTIE SPILLMAN,**

**Plaintiffs,** **No. 2:26-cv-02340-DHU-JMR**

**v.**

**THE NEW MEXICO CHILDREN,**
**YOUTH & FAMILIES DEPARTMENT,**
**TAMARA LETCHER, in her**
**individual capacity, and DOE**
**DEFENDANTS 1-10,**

**Defendant.**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (DKT. 3)**

Plaintiffs Valerie Dentman and Scottie Spillman (collectively, "Plaintiffs") respond as follows to the Motion to Dismiss (Dkt. 3, the "MTD") filed by the New Mexico Children, Youth, & Families Department ("CYFD") and Tamara Letcher ("Letcher") (collectively, "Defendants").

## I. Introduction.

On December 10, 2024, Plaintiffs filed this lawsuit in state court (Dkt. 1-5, the "Original Complaint"). The Original Complaint laid out the basic facts of the case and brought claims under state law against CYFD and its Doe Defendant employees for racial discrimination.

Late last year, Plaintiffs filed a motion in New Mexico state court seeking leave to file a Second Amended Complaint (Dkt. 1-4 the "SAC") alleging federal causes of action. In response to that motion, Defendants filed a 16-page opposition that claimed

amendment was futile, in large part due to the statute of limitations—essentially the same arguments the MTD makes now. The state court judge held a hearing and then granted Plaintiff's motion. After Plaintiffs filed the SAC, Defendants filed a notice of removal, Defendants then removed the case and reasserted substantially the same arguments in the MTF. Against that procedural backdrop, Defendants now accuse Plaintiffs of "forum shopping" and "attempt[ing] to circumvent the statute of limitations[.]" MTD at 2.

Defendants' arguments were wrong before and are still wrong now.

***First***, Defendants racially discriminated against Plaintiffs within the statute of limitations. Defendants affirmatively consented to D.H.'s non-kinship adoption on or after December 17, 2021. Plaintiffs filed suit on December 10, 2024—less than three years later. Because the final action taken by Defendants in their discriminatory scheme occurred within the statute of limitations, Defendants' relation back arguments fail.

***Second***, Defendants are right that Federal Rule of Procedure 15(c)(1)(C)(ii) does not permit a named defendant to be substituted for a John Doe defendant outside the statute of limitations. But Defendants simply ignore Rule 15(c)(1)(A), which imports New Mexico law regarding John Doe defendants. Under published New Mexico precedent, the case against Letcher can proceed.

***Third***, Letcher's qualified immunity invocation lacks merit. The Constitution does not permit a state official to prevent African Americans from pursuing a kinship

adoption because they are African Americans. No reasonable social worker would think otherwise.

***Fourth and finally***, Doe Defendants 1-10 must actually appear in the case if they wish to raise qualified immunity as a defense. The law is settled on this issue.

## II. The SAC's Allegations

An African American baby, referred to here as D.H., was removed from his mother's house and taken into CYFD custody in 2018. SAC at ¶ 16. CYFD also took custody of D.H.'s five Hispanic half-siblings. *Id*. CYFD policy is to place children with blood relatives where possible. *Id*. at ¶ 21. Consistent with that policy, Defendants selected kin placements for the Hispanic children. *Id*. at ¶ 22. However, CYFD's Clovis office chose not to do so with D.H.

From 2018 to 2021, Plaintiffs and their two adult African American daughters made numerous efforts to foster (and ultimately adopt) D.H. *Id*. at ¶¶ 12, 14. But those efforts were thwarted by CYFD's office in Clovis. *Id*. at ¶¶ 14, 23-44. Time and again, CYFD's Clovis officials used arbitrary, weak justifications to block Plaintiffs, and instead advance their ultimate objective: adoption by non-relative, non-Black parents. *Id*. at ¶¶ 23-44. As County Office Manager for CYFD's Clovis office, Letcher supervised essentially everyone who worked there, and generally had final say for placement decisions. *Id*. at ¶ 24.

On December 17, 2021, Plaintiffs were notified that CYFD intended to consent to D.H.'s adoption by non-relatives. *Id*. at ¶ 42. Plaintiffs responded on December 20, 2021, by submitting a complaint to CYFD alleging racial discrimination. *Id*. at ¶ 43.

However, Plaintiffs were unable to prevent CYFD's Clovis office from carrying out its plan. On December 21, 2021, D.H.'s adoption was approved on CYFD's recommendation. *Id.* at ¶ 44.

CYFD's Inspector General investigated the allegations in Plaintiffs' December 20 complaint. On January 25, 2023, then-cabinet secretary Barbara Vigil sent a letter to Plaintiffs, notifying them that CYFD had substantiated Plaintiffs complaint. *Id.* at ¶¶ 45-46. And on February 3, 2023, the Inspector General also sent a letter to Plaintiffs, stating again that the allegations of racial discrimination had been substantiated. *Id.* at ¶ 47. Both Vigil's letter and the Inspector General's letter, however, stated that all specifics of the investigation and its findings were confidential, and would not be disclosed to Plaintiffs. *Id.* at ¶¶ 46-47.

On December 10, 2024, Plaintiffs filed this lawsuit in state court the ("Original Complaint"). The Original Complaint laid out the basic facts of the case and brought claims against CYFD and its Doe Defendant employees. Specifically, Plaintiffs alleged violations of the New Mexico Civil Rights Act, New Mexico Human Rights Act, New Mexico Adoption Act, and New Mexico Tort Claims Act, and sought recovery on a common law negligence theory. On January 21, 2025, Plaintiffs filed a First Amended Complaint to add a claim under the New Mexico Declaratory Judgment Act.

## III. Legal Standard

A Rule 12(b)(6) motion tests whether the factual allegations in a plaintiff's complaint, accepted as true, "state a claim to relief that is plausible on its face." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To defeat a qualified immunity defense in a motion to dismiss, the "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). "This requires enough allegations to give the defendants notice of the theory under which their claim is made." *Id.* But "[t]his does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Id.* (citations omitted).

## IV. Argument

### A. Plaintiffs complied with the statute of limitations.

The SAC alleges that CYFD gave its consent to non-relative adoption no earlier than December 17, 2021, the day Plaintiffs were notified CYFD "was *going to* consent[.]" SAC at ¶ 42 (emphasis added). D.H.'s adoption was finalized by the Children's Court, on CYFD's recommendation, on December 21, 2021. *Id.* at ¶ 44. Drawing all reasonable inferences in Plaintiffs' favor, CYFD's consent and recommendation were driven by racial animus, and intended to prevent D.H. from

being adopted by Plaintiffs. And as Defendants concede, Plaintiffs filed suit on December 10, 2024. MTD at 5. Within the three-year statute of limitations.

Defendants attempt to avoid this obvious result by collapsing all discriminatory actions taken against Plaintiffs from 2019 to 2021 into a single course of conduct, and then arguing the clock starts to run at the beginning, rather than the end. Defendants' logic goes like this:

- "Under federal law, a civil rights action accrues when the plaintiff knows or should know that his or her constitutional rights have been violated." MTD at 3; AND
- "[A]dverse treatment based on [Plaintiffs'] race began in 2019 … and their administrative appeal was denied on December 11, 2020." *Id.* at 4; THEREFORE
- "the cause of action accrued … [no later than] December 11, 2020." *Id.*

But that position is refuted by the case law the MTD cites:

> To invoke the repeated violation doctrine, a plaintiff must identify a discrete act occurring within the statute of limitations period and not just the continuing effect of, or continuing harm from, a discrete act that occurred outside the limitations period. … Importantly, under the repeated violation doctrine, each new violation restarts the statute of limitations[.]

*Herrera v. City of Espanola*, 32 F.4th 980, 995 (10th Cir. 2022) (cited by MTD at 8). Applied here, when Defendants consented to and recommended non-kin adoption for D.H., those new violations restarted the statute of limitations.

That approach is also consistent with *Chardon v. Fernandez*, 454 U.S. 6 (1981), another case Defendants cite but fail to understand. There, an employee alleged First

Amendment retaliation after being "notified by letter that his appointment would terminate at a specified date[.]" *Id.* at 7. The employee argued that the statute of limitations began to run when the specified termination date arrived, as opposed to when the employer decided to terminate him. *Id.* The Court disagreed because "there were no … allegations … of illegal acts subsequent to the date on which the decision[] to terminate w[as] made." *Id.* at 8. In other words, the constitutional injury occurred when the plaintiff switched the employee to a "terminal contract[.]" *Id.* (quotation marks omitted). In that way, when the employee lost his job on the date specified in the letter, he merely experienced a consequence of an earlier constitutional injury. *Id.* at 8 ("continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination").

Defendants think *Chardon* helps them because they see all the separate discriminatory actions they took as part of the "continuity of D.H.'s placement and adoption by his foster family[.]" MTD at 9. But *Chardon* is clear: the triggering event for the statute of limitations was the "date on which the decision[] to terminate w[as] made[.]" 454 U.S. at 8.

By analogy, say a Black driver is pulled over based on race by the same police officer ten days in a row. Under *Chardon*, each stop is a distinct (and actionable) constitutional violation. The limitations period for the tenth stop does not begin on the date of the first. And that makes sense: failure to sue over some racially motivated stops does not render future stops lawful.

Defendants' argument would do away with *Chardon* and convert the statute of limitations into a species of laches, under which an "indolent" (MTD at 5) [1] plaintiff's failure to sue over earlier discrimination would somehow immunize later discriminatory conduct. That doctrine does not (and never should) exist. Accordingly, the MTD should be denied.

**B. Plaintiffs' section 1983 claim relates back.**

Next, Defendants argue that the claim against Letcher individually should be dismissed because "there are no facts in the Complaint" that would put her "on notice" that, but for a mistake in [her] identity, the action would have been brought against [her]." MTD at 11. Here again though, Defendants overlook allegations in the SAC and misunderstand the law.

Defendants base their arguments entirely on Rule 15(c)(1)(C), which provides that "[a]n amendment to a pleading relates back to the date of the original pleading when:

[…]

C. …the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

[1] Defendants' characterization of Plaintiffs is unfortunate given the nature of the substantiated discrimination at issue.

Fed. R. Civ. P. 15(c)(1).[2]

The thrust of Defendants' argument is that identifying Letcher as a pseudonymous John Doe defendant in the Original Complaint was not a "mistake" as that term is used in the rule. And on that narrow point, Defendants are right. *Garrett v. Fleming*, 362 F.3d 692, 697 (10th Cir. 2004) ("A plaintiff's designation of an unknown defendant as 'John Doe' in the original complaint is not a formal defect of the type Rule 15(c)(3) was meant to address.").

The problem is Defendants skip Rule 15(c)(1)(A), which permits amendment when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. (15)(c)(1)(A). This provision exists to "make ... clear that [Rule 15] does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed. R. Civ. P. 15, Advisory Comm. Notes 1991. Courts are directed to look to the "controlling body of limitations law[.]" *Id.* And "if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *Id.* "Thus, under Rule 15(c)(1)(A), [the Court] must determine if [New Mexico] state law provides a more forgiving principle of relation back in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C)." *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

A more forgiving standard is found in *Macias v. Jaramillo*, 2000-NMCA-086, which expressly held that "a party who participated in conduct described in a

---

[2] Defendants do not argue that the SAC fails Rule 15(c)(1)(B)'s requirements for relation back. Nor could they, as the federal claims arise from the exact licensing-and-placement conduct alleged in the original complaint.

complaint should reasonably expect to be named regardless of whether the caption refers to that party as 'John Doe' or as an 'unnamed defendant.'" *Id.* at ¶ 30. That is because the "designation of the particular capacity of 'John Doe' ... provides the clarity required ... [to] reasonably forecast[] the plaintiff's intent to proceed to seek an amendment changing the party against whom a claim is asserted under Rule 1-015(C)." *Id.* at ¶ 32. Moreover, although New Mexico Rule of Civil Procedure Rule 1-015(C)(2) shares the same "mistake" language as Rule 15, *Macias* makes clear that New Mexico does not follow the federal interpretation. *Id.* at ("Application of the phrase in Rule 1-015(C)(2) 'but for a mistake concerning the identity of the proper party,' does not in our opinion change the result here.").

The Original Complaint identified Doe Defendant employees, stated they participated in the challenged conduct, and stated that their names would be substituted once learned. And as alleged in the SAC, CYFD itself investigated and found that the Clovis office had engaged in racial discrimination. Drawing all reasonable inferences in Plaintiff's favor, "prior to the expiration of the limitation period, [Letcher] knew (or should have known) that [her] joinder was a distinct possibility." *Id.* at ¶ 30.

Letcher is welcome to raise A statute of limitations defense ON summary judgment. But "[t]ypically, facts must be developed to support dismissing a case based on the statute of limitations." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). This is simply not a situation where "the dates given in the complaint make clear that the right sued upon has been extinguished." *Id.* As the □ The

pleadings do not conclusively establish that Letcher lacked timely actual or imputed notice, the affirmative limitations defense cannot be resolved from the face of the pleadings. Accordingly, the MTD should be denied.

**C. Letcher is not entitled to qualified immunity.**

Turning to qualified immunity, Letcher puts forward two boilerplate arguments: (1) that Plaintiffs' equal protection claims is "patently inadequate" due to "the absence of any specific allegations of differential treatment" (MTD at 14); and (2) "there is also no clearly established law holding that the conduct allegedly [sic] violated Plaintiffs' constitutional rights." *Id.* at 13. Neither argument is persuasive.

***First***, the Fourteenth Amendment's Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (citing U.S. Const. amend. XIV, § 1). Accordingly, "[i]n order to state a claim based on the Equal Protection Clause, plaintiff must sufficiently allege that defendants were motivated by racial animus." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989). *See also*, *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.").

Here, the SAC does just that. Plaintiffs allege that:

- The Clovis CYFD office (which Letcher ran) "rigged the [adoption] process to make sure Plaintiffs' infant relative would be adopted by unrelated, non-black foster parents." SAC at ¶ 3;
- Unlike D.H.'s five Hispanic half-siblings, D.H. was denied placement with blood relatives. *Id.* at ¶¶ 22, 25;
- Letcher used pretexts to prevent Plaintiffs from fostering D.H. "because [she] did not want D.H. to be placed with African-Americans." *Id.* at ¶ 30;
- CYFD investigated and substantiated Plaintiffs' complaints "of racism at CYFD and racial discrimination against [Plaintiffs and their daughters].

Moreover, the SAC alleges that Letcher assigned the inspection, participated in using the purported deficiencies as pretexts, and possessed decision-making authority. *Id.* at ¶¶ 27-30. Defendants' assertion that the SAC contains "one conclusory allegation that [Plaintiffs] were treated less favorably than similarly situated non-Black applicants", MTD at 14, is just false.

The Constitution does not permit state officials to intentionally discriminate against Blacks based on their race. This is not a close question. *See e.g., Townsend-Johnson v. Cleveland*, 494 F. App'x 833, 837 at fn. 4 (10th Cir. 2012) ("Taking the facts of Plaintiff's complaint as true, Defendant failed to renew Plaintiff's contract because she is an African–American, which is a violation of a clearly established constitutional right."). The SAC alleges that Plaintiffs were treated less favorably than non-Black prospective foster and adoptive parents because of their race. Plaintiffs have adequately pled a violation of the Fourteenth Amendment.

***Second***, reasonable social workers could not possibly think that the Constitution permits African Americans to be treated worse than other races when it comes to foster-care placements and adoptions. That is because, for decades, "the general notion that one cannot discriminate on the basis of race or national origin is undoubtedly clearly established." *Ramirez v. Dep't of Corr., Colo.*, 222 F.3d 1238, 1243–44 (10th Cir. 2000) (quotation marks omitted).

Nonetheless, Defendants suggest that discriminating against Blacks may be "objectively reasonable" in some situations, MTD at 12, and may not amount to a "constitutional violations[] in a particularized sense[.]" *Id.* at 13.

But ten days before the MTD was filed, the Tenth Circuit surveyed decades of Equal Protection Clause precedent and found it to be incompatible with Defendants' position. *Wilson v. Stoltenberg*, No. 25-3139, --- F.4th ----, 2026 WL 2066343 (10th Cir. July 17, 2026), addressed whether "a school official's deliberate indifference to racial harassment would violate the Equal Protection Clause of the Fourteenth Amendment." *Id.* at *5. The court denied qualified immunity, holding that "the constitutional violation alleged by [the plaintiff] was clear beyond debate." *Id.*[3]

The court reached that conclusion even in the absence of factually similar published Tenth Circuit or Supreme Court opinions. As the court explained, the clearly established law "analysis is not a scavenger hunt for prior cases with precisely the same facts, and a prior case need not be exactly parallel to the conduct here for

[3] Of course, Plaintiffs do not contend that *Wilson*, a 2026 case, placed Letcher on notice that her 2019-2021 conduct was illegal. Rather, *Wilson* is helpful as an authoritative summarization of long-existing law.

the officials to have been on notice of clearly established law. … Rather, a general constitutional rule can put officials on notice if it applies with obvious clarity to the specific conduct in question[.]" *Id.* at *8 (quotation marks omitted). *See also*, *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("general statements of the law" that "giv[e] fair and clear warning" that the particular conduct at issue is unconstitutional suffice for clearly established law).

The court further stated that the adequacy of general statements of law has "particular purchase in the Equal Protection context" because:

> The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike, and 'keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike. … The clearly established standard for determining whether an official has violated a plaintiff's right to equal protection under the law is not extremely abstract or imprecise[,] but rather is relatively straightforward and not difficult to apply.

*Id.* at 8 (citations and quotation marks omitted).

That describes the present matter exactly. As alleged in the SAC, Letcher "not only intentionally discriminated against [Plaintiffs' race], but also did so with animus. And where governmental bodies discriminate out of 'animus' against particular [races], such decisions are plainly unconstitutional." *Ashaheed v. Currington*, 7 F.4th 1236, 1248 (10th Cir. 2021). Qualified immunity provides no quarter to public officials "who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

**D. No Doe Defendants have invoked qualified immunity.**

Finally, the MTD purports to seek qualified immunity for Doe Defendants 1-10. But those individuals are unserved and have not appeared. Letcher and CYFD's counsel cannot meaningfully establish that she represents unidentified people, much less invoke a personal immunity belonging to each individual official on their behalf. Only if "the [individual] defendants do in fact assert the defense of qualified immunity, … [does the] burden of showing that there was a violation of clearly established legal rights … shift[] to the plaintiff." *Gagan v. Norton*, 35 F.3d 1473, 1477 (10th Cir. 1994). Accordingly, "[t]he Court cannot make a finding … on qualified immunity …unless and until they are added as party Defendants to this action." *Brown v. Montoya,* 45 F. Supp. 3d 1294, 1298 (D.N.M. 2014). If Doe Defendants 1-10 wish, they may make their identities known so Plaintiffs can sue them; "then they can raise the qualified immunity defense themselves." *Id. See also*, *Herrera*, 32 F.4th at 1001 (dismissal of Doe Defendants improper where "[a]t the time of the dismissal, Appellants had not identified or served the individual defendants. Thus, the individual defendants had not filed a Rule 12(b)(6) motion to dismiss.").

**V. Conclusion**

For the foregoing reasons the MTD should be denied.

Respectfully submitted,

WGLA, LLP

*/s/ Benjamin Gubernick*___
Benjamin Gubernick
Curtis Waldo
717 Texas Ave. Suite 1200

Houston, TX 77002
ben@wglawllp.com
curtis@wglawllp.com
(346) 277-0287
(713) 306-0512

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused this document to be served on counsel for Defendants on August 10, 2026.

*/s/ Benjamin Gubernick*
Benjamin Gubernick